UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------ x

KENNETH KRYS and CHRISTOPHER STRIDE as
Joint Official Liquidators of SPHINX LTD., *et al.*,

                      Plaintiffs,

        -against-

CHRISTOPHER SUGRUE, *et al.*,

                 Defendants.

------------------------------------------------ x

Index No. 08 Civ. 3065

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANT BAWAG'S MOTION TO REFER
## COUNTS XXIV, XXV, AND XXVII OF THE COMPLAINT
## AS ALLEGED AGAINST BAWAG TO BANKRUPTCY COURT

DECHERT LLP
30 Rockefeller Plaza
New York, New York 10112
(212) 698-3500

*Attorneys for Bank für Arbeit und
Wirtschaft und Österreichische
Postsparkasse Aktiengesellschaft*

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................. ii

PRELIMINARY STATEMENT ........................................................................................... 1

STATEMENT OF FACTS .................................................................................................... 4

    A.    The Refco Bankruptcy Cases ............................................................................ 4

    B.    The BAWAG Settlement .................................................................................... 5

    C.    The Refco Plan And The Confirmation Order ................................................... 7

    D.    The SPhinX Action ............................................................................................ 9

ARGUMENT ......................................................................................................................... 11

I.     PLAINTIFFS' CLAIMS ARE CORE MATTERS BECAUSE THEY
      ARISE UNDER TITLE 11 OR ARISE IN A CASE UNDER TITLE 11 ...................... 11

    A.    BAWAG's Right To Protection From "Claims Over" Is A Core Matter .............. 13

    B.    Plaintiffs' Claims Against BAWAG Are Property Of The Refco Estates ............ 14

           1.    The Nature Of Plaintiffs' Claims Demonstrates That They
               Are Property Of The Refco Estates ............................................................. 15

           2.    The "Alter Ego" Nature Of The Claims Makes Them
               Property Of The Refco Estates .................................................................... 17

    C.    The BAWAG Settlement, The Plan, And The Confirmation Order
         Bar Plaintiffs' Claims ....................................................................................... 18

II.    PLAINTIFFS' CLAIMS AGAINST BAWAG ARE RELATED TO
      THE REFCO BANKRUPTCY CASES ............................................................................ 19

CONCLUSION ...................................................................................................................... 21

## <u>TABLE OF AUTHORITIES</u>

<u>Page</u>

### CASES

*Alliance Commc'ns Group, Inc. v. Northern Telecom, Inc.,*
    65 B.R. 581 (S.D.N.Y. 1986)...........................................................................12

*In re Betty Owens Schs., Inc.,*
    No. 96-3576, 1997 U.S. Dist. LEXIS 5877 (S.D.N.Y. Apr. 17, 1997) ...........14

*Centennial & Allegheny Univ. Hosps.-East Tenet Healthsystem Phila., Inc. v.*
    *Nat'l Union of Hosp. & Health Care Employees,*
    383 F.3d 169 (3d Cir. 2004).............................................................................14

*Central Vt. P.S.C. v. Herbert,*
    341 F.3d 186 (2d Cir. 2003).......................................................15, 17, 18, 20

*Certain Underwriters at Lloyd's v. ABB Lummus Global, Inc.,*
    No. 03-7248, 2004 U.S. Dist. LEXIS 1486 (S.D.N.Y. Feb. 5, 2004)...............20

*In re Colonial Realty Co.,*
    980 F.2d 125 (2d Cir. 1992)............................................................................15

*Drexel Burnham Lambert Group, Inc. v. Vigilant Ins. Co.,*
    130 B.R. 405 (S.D.N.Y. 1991).........................................................................11

*Harlow v. Palouse Producers, Inc.,*
    56 B.R. 794 (B.A.P. 9th Cir. 1985)..................................................................14

*Jamaica Shipping Co. v. Orient Shipping Rotterdam, B.V.,*
    No. 04-6482, 2005 U.S. Dist. LEXIS 21553 (S.D.N.Y. Sept. 30, 2005)..........14

*Kalb, Voorhis & Co. v. American Fin. Corp.,*
    8 F.3d 130 (2d Cir. 1993)...............................................................................17

*Luan Inv. S.E. v. Franklin 145 Corp.,*
    304 F.3d 223 (2d Cir. 2002)......................................................................12, 14

*In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.,*
    341 F. Supp. 2d 386 (S.D.N.Y. 2004)..............................................................11

*Nat'l Am. Ins. Co. v. Ruppert Landscaping Co.,*
    187 F.3d 439 (4th Cir. 1999) .........................................................................16

*Orion Pictures Corp. v. Showtime Networks Inc.,*
    139 B.R. 785 (S.D.N.Y. 1992).................................................................12

*Osanitsch v. Marconi PLC,*
    363 B.R. 361 (S.D.N.Y. 2007) (Lynch, J.) .................................................11, 14

*Rahl v. Bande,*
    316 B.R. 127 (S.D.N.Y. 2004)...............................................................20

*St. Paul Fire & Marine Ins. Co. v. PepsiCo, Inc.,*
    884 F.2d 688 (2d Cir. 1989)...............................................................16, 17

*Sobchack v. Am. Nat'l Bank & Trust Co.,*
    17 F.3d 600 (2d Cir. 1994).................................................................16

*Tenn. Student Assistance Corp. v. Hood,*
    541 U.S. 440 (2004).......................................................................11

*Tortogs, Inc. v. Ins. Co. of N. Am.,*
    No. 93-1739, 1993 U.S. Dist. LEXIS 12134 (S.D.N.Y. Sept. 1, 1993)...........................12

*U.S. v. Whiting Pools, Inc.,*
    462 U.S. 198 (1983).......................................................................14

*Universal Oil Ltd. v. Allfirst Bank,*
    419 F.3d 83 (2d Cir. 2005).............................................................11, 14, 19

*Winstar Holdings, LLC v. Blackstone Group L.P.,*
    No. 07-4634, 2007 U S. Dist. LEXIS 90482
    (S.D.N.Y. Dec. 10, 2007) (Lynch, J.) .....................................................19


**DOCKETED CASES**

*BAWAG v. Refco Inc., et al. (In re Refco Inc.),*
    Adv. Pro. No. 05-03161 (RDD) (Bankr. S.D.N.Y.) (Drain, J.) .................................5

*Krys, et al. v. Sugrue, et al.,*
    No. 08 Civ. 3086 (S.D.N.Y.) ..............................................................10

*In re Refco Inc., et al.,*
    Case No. 05-60006 (RDD) (Jointly Administered)
    (Bankr. S.D.N.Y.) (Drain, J.).............................................................1

## STATUTES AND RULES

11 U.S.C. § 362.................................................................................................8, 15, 18

11 U.S.C. § 541(a)(1)...................................................................................................14

11 U.S.C. § 1123(a)(5)..................................................................................................20

11 U.S.C. § 1141............................................................................................................7

28 U.S.C. § 157..............................................................................................................1

28 U.S.C. § 157(a)........................................................................................................12

28 U.S.C. § 157(b)........................................................................................................11

28 U.S.C. § 157(b)(2).................................................................................................3, 13

28 U.S.C. § 157(b)(2)(A)..............................................................................................13

28 U.S.C. § 157(b)(2)(E)..............................................................................................13

28 U.S.C. § 157(b)(2)(O)..............................................................................................13

28 U.S.C. § 157(b)(3).................................................................................................3, 13

28 U.S.C. § 1334...........................................................................................................11

28 U.S.C. § 1334(a)......................................................................................................11

28 U.S.C. § 1334(b)..................................................................................................11, 19

28 U.S.C. § 1334(e)(1)..................................................................................................11

28 U.S.C. § 1452(a)...................................................................................................3, 10

Federal Rules of Bankruptcy Procedure Rule 9019.......................................................7

## OTHER AUTHORITIES

July 10, 1984 standing order of reference to bankruptcy judges
    signed by then-Acting Chief Judge Robert J. Ward ...........................................1, 12

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------ x
KENNETH KRYS and CHRISTOPHER STRIDE as
Joint Official Liquidators of SPHINX LTD., *et al.*,

                    Plaintiffs,

        -against-


CHRISTOPHER SUGRUE, *et al.*,

                    Defendants.
------------------------------------------------ x

Index No. 08 Civ. 3065

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT BAWAG'S MOTION TO REFER COUNTS XXIV, XXV, AND XXVII OF THE COMPLAINT AS ALLEGED AGAINST BAWAG TO BANKRUPTCY COURT

Defendant Bank für Arbeit und Wirtschaft und Österreichische Postsparkasse

Aktiengesellschaft ("BAWAG"), by and through its attorneys, Dechert LLP, respectfully submits

this memorandum of law in support of its motion for an order, pursuant to 28 U.S.C. § 157 and

the July 10, 1984 standing order of reference to bankruptcy judges of then-Acting Chief Judge

Robert J. Ward (the "Standing Order of Reference"), referring Counts XXIV, XXV, and XXVII

of the complaint in this action as alleged against BAWAG to the United States Bankruptcy Court

for the Southern District of New York (Drain, J.) (the "Bankruptcy Court").

## PRELIMINARY STATEMENT

This case arises from the well-publicized collapse of Refco Inc. and its affiliates

(collectively, "Refco"), and their subsequent chapter 11 filings. *See In re Refco Inc., et al.*, Case

No. 05-60006 (RDD) (Jointly Administered) (Bankr. S.D.N.Y.) (the "Refco Bankruptcy Cases").

Because the claims asserted against BAWAG by plaintiffs Kenneth Krys and

Christopher Stride, as Joint Official Liquidators of the SPhinX family of funds and a number of

other affiliated entities (collectively, "SPhinX") implicate core matters of bankruptcy jurisdiction relating to the enforcement and interpretation of Bankruptcy Court orders entered in connection with the Refco Bankruptcy Cases, this case should be referred to the Bankruptcy Court for adjudication.

As detailed below, in May 2006, BAWAG paid the Official Committee of Unsecured Creditors of Refco (the "Committee") in excess of $400 million and waived its claim for €350 million (approximately $470 million) as part of a comprehensive settlement of all claims and potential claims asserted in an adversary proceeding arising out of BAWAG's former management's dealings with Refco (the "BAWAG Settlement"). An essential part of the bargained for consideration in the BAWAG Settlement was a comprehensive and global release of all claims against BAWAG, as well as "Claim Over" protection from potential claims for contribution or reimbursement from third parties who had settled or who might settle in the future with Refco. The BAWAG Settlement was so ordered by the Bankruptcy Court (Drain, J.), and its terms were incorporated into Refco's confirmed chapter 11 plan of reorganization (the "Plan") and the December 15, 2006 order confirming the Plan (the "Confirmation Order"). The BAWAG Settlement affords BAWAG "exclusive jurisdiction" in the bankruptcy court for any action seeking to enforce or to interpret its terms, "including any issues relating to Claims Over." Brick Aff. Exh. A.[1]

In direct contravention of the "so ordered" BAWAG Settlement, including its "Claim Over" ban, SPhinX commenced this action against BAWAG (and more than fifty other defendants) in New York State Supreme Court (the "Supreme Court") in an attempt to recover the $263 million it voluntarily paid to the Refco bankruptcy estates (the "Refco Estates") to settle

---

[1]    "Brick Affidavit" or "Brick Aff." refers to the Affidavit of Brian H. Brick, sworn to April 2, 2008, and submitted herewith in support of BAWAG's motion.

a preference action brought by the Committee against SPhinX shortly after the commencement of the Refco Bankruptcy Cases (the "Preference Action"). On March 26, 2008, BAWAG removed those claims asserted against it by SPhinX to the United States District Court for the Southern District of New York pursuant to 28 U.S.C. §1452(a), and now seeks to refer such claims to the Bankruptcy Court. Because SPhinX's attempt to recover from BAWAG the amount it paid the Refco Estates to settle the Preference Action constitutes a "Claim Over" – in direct violation of the BAWAG Settlement, as well as the Plan and the Confirmation Order – plaintiffs' claims against BAWAG implicate core bankruptcy jurisdiction and must properly be adjudicated by the Bankruptcy Court. *See* 28 U.S.C. § 157(b)(2). (Point I.A.) Referral of the claims against BAWAG to the same Bankruptcy Court judge before whom the Refco Bankruptcy Cases are pending is proper because, *inter alia*, it is the bankruptcy judge who is directed to determine whether proceedings are core or non-core. *See* 28 U.S.C. § 157(b)(3).

Alternatively, even were SPhinX's claims not a disguised "Claim Over" against BAWAG within the meaning of the BAWAG Settlement, those claims are nonetheless property of the Refco Estates and, as such, are plainly within the core jurisdiction of the Bankruptcy Court. None of the claims asserted by SPhinX against BAWAG are specific to SPhinX, and the alleged injuries SPhinX suffered were no different than the injuries suffered by Refco's numerous other creditors. Moreover, SPhinX's claims are very similar to the claims that were asserted and settled by the Committee against BAWAG. And, to the extent SPhinX has alleged that BAWAG is responsible for Refco's wrongdoing because BAWAG controlled Refco or was its "alter ego," it is well settled that such claims belong to the Refco Estates and not to individual creditors. (Point I.B.)

In addition, plaintiffs' attempt to prosecute claims that are the property of the Refco Estates runs afoul of the explicit release and injunction provisions of the BAWAG Settlement, the Plan, and the Confirmation Order, which, *inter alia*, release BAWAG from all claims belonging to Refco and from all claims relating to Refco that could have been asserted by or on behalf of Refco – including pursuant to principles of *alter ego* – and enjoin prosecution of any action asserting claims or liabilities released pursuant to the Plan. For this reason too, plaintiffs' claims constitute core matters appropriately within the Bankruptcy Court's jurisdiction. (Point I.C.)

Finally, and in the alternative, even were this Court not to find core bankruptcy jurisdiction, plaintiffs' claims are indisputably "related to" the Refco Bankruptcy Cases. The outcome of this proceeding will likely have a direct and substantial effect on the Refco Bankruptcy Cases insofar as questions concerning the interpretation and enforcement of the BAWAG Settlement, the Plan, and the Confirmation Order are directly relevant to – and will directly impact – the debtors' rights and the administration of the Refco Estates. (Point II.) For all of these reasons, and as set forth herein, plaintiffs' claims against BAWAG should be referred to the Bankruptcy Court.

## STATEMENT OF FACTS

### A.    The Refco Bankruptcy Cases

Shortly after Refco's August 2005 initial public offering, certain Refco employees discovered a $430 million inter-company receivable that had been improperly disguised during the ends of Refco's fiscal reporting periods to look like a receivable owed by an unrelated third party (the "RGHI Receivable"). In reality, the receivable was owed by an unconsolidated but *affiliated* entity, Refco Group Holdings, Inc. ("RGHI"), which was controlled by Phillip Bennett,

4

Refco's chief executive officer ("Bennett"). When the receivable was discovered, Bennett sought – and received – a loan from BAWAG for €350 million in an attempt to repay the receivable.

Despite Bennett's efforts, Refco quickly spiraled toward collapse, and on October 15, 2005, Refco filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code in the Bankruptcy Court.

On November 16, 2005, BAWAG commenced an adversary proceeding in the Refco Bankruptcy Cases, Adv. Pro. No. 05-03161 (RDD) (the "Adversary Proceeding"), against Refco and other parties alleging that Refco and Bennett had fraudulently procured the €350 million loan from BAWAG. On April 17, 2006, the Committee intervened in the Adversary Proceeding and asserted counter-claims against BAWAG *on behalf of the Refco Estates* seeking to recover (i) allegedly fraudulent transfers totaling at least $1.325 billion that had been transferred to BAWAG from various Refco entities in the pre-petition period, and (ii) damages arising out of BAWAG's alleged aiding and abetting of breaches of fiduciary duty by Bennett. Brick Aff. Exh. G; *see also BAWAG v. Refco Inc., et al.,* Adv. Pro. No. 05-03161 (RDD) (Bankr. S.D.N.Y.).

## B.    The BAWAG Settlement

The Committee and BAWAG entered into a comprehensive settlement that included a resolution of all of their respective claims and potential claims in the Adversary Proceeding in May 2006. The BAWAG Settlement, executed by the parties on June 2, 2006 in the form of a stipulation, was approved by Judge Drain of the Bankruptcy Court in a July 6, 2006 Order.[2]

---

[2]    Judge Drain's July 6, 2006 order approved the BAWAG Settlement "as if entered by the Court" but made a few changes to the terms of the settlement that are not relevant here. Thus, all terms of the BAWAG Settlement material to the issues set forth herein were adopted by the Bankruptcy Court as set forth in the BAWAG Settlement. Brick Aff. Exh. B.

Pursuant to the BAWAG Settlement, BAWAG agreed to pay approximately $437.5 million for the benefit of the Refco Estates and to waive its claims against Refco (including its claims related to the €350 million loan procured by Bennett) in exchange for broad releases from all debtor and non-debtor affiliates of Refco, the Committee, and their respective successors (among other parties).[3]  Specifically, pursuant to Paragraph 4(a) of the BAWAG Settlement, BAWAG was released:

> from and against any and all claims or actions belonging to Refco . . . including, but not limited to (i) all claims relating or related to the allegations contained in the Complaint and the Counterclaim [in the Adversary Proceeding], (ii) all claims that could have been asserted in the Adversary Proceeding or any other claim that could have been brought by or on behalf of Refco or the Committee, (iii) all claims that would be barred by principles of *res judicata* or other similar preclusive principles had the claims and defenses asserted or that could have been asserted in the Adversary Proceeding been fully litigated and resulted in a final judgment or order . . . .

Brick Aff. Exh. A ¶ 4(a).  Significantly, as part of the BAWAG Settlement, BAWAG also bargained for and obtained "Claim Over" protection against claims for:

> *contribution, indemnification or reimbursement by any third party not party to this Stipulation and Order* (an "Unnamed Party" and, collectively, the "Unnamed Parties") . . . *against the BAWAG Parties that (i) directly or indirectly arises out of or is based upon, related to, or connected with the relationship between the BAWAG Parties and Refco . . . and (ii) is for recovery of amounts that such Unnamed Party paid or owes to the Refco or the Debtors' estates pursuant to a judgment or award . . . or settlement.*

*Id.* ¶ 6(a) (emphasis added).  Thus, BAWAG was also given explicit protection from liability "to any Unnamed party on any Claim Over amounts owed or paid by such Unnamed Party to Refco or the Debtors' estates, which shall include, for purposes of this provision, the Committee." *Id.* ¶ 6(b).

---

[3]    BAWAG did not waive its claims against Bennett and his affiliated entities.

In addition, the BAWAG Settlement provides that, during the pendency of the Refco Bankruptcy Cases, the Bankruptcy Court shall be the "exclusive jurisdiction for any action seeking to enforce or interpret the terms of this Stipulation and Order, *including any issues relating to Claims Over.*" *Id.* ¶ 17 (emphasis added).

## C.    The Refco Plan And The Confirmation Order

The BAWAG Settlement, upon being "so ordered" by the Bankruptcy Court, was expressly referenced and implemented in the Plan[4] pursuant to Bankruptcy Code Section 1141 (11 U.S.C. § 1141) and Federal Rules of Bankruptcy Procedure Rule 9019, and pursuant to the Confirmation Order.[5]  Brick Aff. Exh. C §§ 1.29, 5.18, 10.2(e); Exh. D at 18-19 ¶ DD and at 30-31 ¶ 22.  The Plan became effective on or about December 26, 2006.

The Plan also contains broad releases by the Refco Estates that include "all claims . . . based in whole or part on any act omission, transaction, event, or other occurrences taking place on or prior to the Effective Date in any way relating to [Refco], the Chapter 11 Cases [or] this Plan . . . and that could have been asserted by or on behalf of [Refco], *including pursuant to principles of . . . alter ego [or] domination . . . .*" Brick Aff. Exh. C § 10.2(a) (emphasis added). As Judge Drain noted in the Court's findings of fact in the Confirmation Order, each of these releases falls within federal bankruptcy jurisdiction, is essential to the Plan's implementation, "is an integral element of the Settlements embodied in the Plan" (which expressly includes the BAWAG Settlement), and "is important to the overall objectives of the Plan . . . ." Brick Aff. Exh. D at 19 ¶ DD.

---

[4]    A copy of the Plan is annexed to the Brick Affidavit as Exhibit C.

[5]    A copy of the Confirmation Order is annexed to the Brick Affidavit as Exhibit D.

In addition, the Confirmation Order provides that "all Persons who have held, hold, or may hold Claims against or Interests in [Refco] are (i) permanently enjoined from taking any of the following actions against the Estate(s) . . . or any of their property on account of any such Claims or Interests . . . (A) commencing or continuing, in any manner or in any place, any action or other proceeding . . . or (D) commencing or continuing, in any manner or in any place, any action that does not comply with or is inconsistent with the provisions of the Plan." Brick Aff. Exh. D at 26 ¶ 15. The Confirmation Order also provides for the continuation of the automatic stay under § 362 of the Bankruptcy Code (11 U.S.C. § 362) because the Refco Estates and their property have not yet been fully administered. *Id.* at 30 ¶ 20; *see also* Brick Aff. Exh. C § 10.5.

Significantly, both the Plan and the Confirmation Order give the Bankruptcy Court *exclusive* jurisdiction (unless otherwise indicated) over "all matters arising out of, and related to" the Refco Bankruptcy Cases and the Plan, and specifically provide jurisdiction to:

- "[r]esolve any cases, controversies, suits, or disputes that may arise in connection with the . . . *interpretation, or enforcement of this Plan* . . . or any *contract, instrument, release*, or other agreement or document that is executed or created pursuant to this Plan . . . or any entity's rights arising from or obligations incurred in connection with this Plan";

- "[i]ssue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by *any entity* with consummation, implementation, or *enforcement* of this Plan or the Confirmation Order";

- "[h]ear and determine causes of action by or on behalf of [Refco or] the Litigation Trustee";

- "[e]nforce all *orders*, judgments, injunctions, *releases* . . . and rulings entered in connection with the [Refco Bankruptcy Cases]" (which shall be non-exclusive);

- "[h]ear and determine *all* matters related to (i) the property of the [Refco estate]"; and

- "[h]ear and determine such other matters as may be provided in the Confirmation Order or as may be authorized under the Bankruptcy Code."

Brick Aff. Exh. C §§ 11.1(g), (j), (k), (o), (p), and (r) (emphasis added); *see also id.* Exh. D at 18

¶ CC and at 39-40 ¶ 37. The Refco Bankruptcy Cases remain pending before the Bankruptcy

Court.

**D.    The SPhinX Action**

On or about March 5, 2008, SPhinX commenced this action in the Supreme Court

against BAWAG (and more than fifty other defendants) (the "SPhinX Action"). SPhinX alleges

in its complaint (the "Complaint") that it and its investment manager, PlusFunds Group, Inc.

("PlusFunds"), suffered damages arising from the "diversion" of SPhinX's cash from "protected,

customer-segregated accounts" at Refco LLC to "unprotected offshore accounts" at Refco

Capital Markets, Ltd. ("RCM"), where those assets were ultimately lost in the wake of the

disclosure of the Refco fraud and the commencement of the Refco Bankruptcy Cases. Brick Aff.

Exh. E ¶ 1. SPhinX seeks recovery of the $263 million settlement amount SPhinX subsequently

paid to Refco to settle the Preference Action brought by the Committee. *Id.* ¶ 16.

Significantly, SPhinX concedes in the Complaint that the funds in question were

diverted from Refco LLC to RCM *at the explicit direction of a SPhinX director, Robert Aaron,*

by letter dated July 31, 2002. *Id.* ¶ 165. Moreover, "just days before Refco's bankruptcy

petition" was filed, defendant Christopher Sugrue, another SPhinX fiduciary and then-Chairman

of the Board and director of PlusFunds, is alleged to have demanded the return of $312 million

of SPhinX's cash held at RCM to SPhinX's segregated accounts at Refco LLC. *Id.* ¶ 12.

Thereafter, the Committee commenced the Preference Action and obtained a temporary

restraining order freezing SPhinX's $312 million in assets, which precipitated a "flood of

redemptions by SPhinX investors." *Id.* The Preference Action, which culminated in the filing of

PlusFunds' chapter 11 bankruptcy petition in the Bankruptcy Court and SPhinX's placement into

voluntary liquidation in the Cayman Islands, was ultimately resolved by a $263 million payment by SPhinX to RCM and a release of all claims against the Refco Estates. *Id.* ¶¶ 14-16. As clearly alleged in the Complaint, it is this $263 million settlement payment that SPhinX seeks to recover against BAWAG as its primary measure of damages. *Id.* ¶ 16.

Of the twenty-seven counts alleged in total in the Complaint, only three counts are alleged against BAWAG:  Count XXIV (Conspiracy), Count XXV (Aiding and Abetting Fraud) and Count XXVII (Interference with Contract/Prospective Contract).  Each of these claims is premised on allegations that BAWAG participated in round trip loan transactions at Refco's fiscal year end in order to assist Bennett in hiding the RGHI Receivable and in fraudulently misrepresenting Refco's financial condition.  The Complaint further alleges that BAWAG, directly or indirectly, exerted control over Refco, *i.e.*, that BAWAG was an "alter ego" of Refco. Brick Aff. Exh. E ¶¶ 26, 149, 209, 254, 798, 801-03.

On March 26, 2008, BAWAG removed to this Court those claims in the Complaint that plaintiffs alleged against BAWAG,[6] pursuant to 28 U.S.C. § 1452(a), on the basis that SPhinX's claims raise questions of federal bankruptcy jurisdiction and constitute core bankruptcy matters arising in or under title 11 of the Bankruptcy Code.[7]  BAWAG now seeks the referral of SPhinX's claims against it to the Bankruptcy Court, where the Refco Bankruptcy Cases are pending.

---

[6]   Shortly after BAWAG filed its notice of removal, a number of other defendants in the SPhinX Action filed their notice of removal of the action to this Court on the basis of "related to" federal bankruptcy jurisdiction.  *See Krys, et al. v. Sugrue, et al.*, No. 08 Civ. 3086 (S.D.N.Y.).

[7]   In the alternative, BAWAG asserted that to the extent core jurisdiction did not exist, the claims against it were "related to" the Refco Bankruptcy Cases.

**ARGUMENT**

**I.**

**PLAINTIFFS' CLAIMS ARE CORE MATTERS BECAUSE THEY
ARISE UNDER TITLE 11 OR ARISE IN A CASE UNDER TITLE 11**

Federal bankruptcy jurisdiction is governed by 28 U.S.C. § 1334, which vests district

courts with original jurisdiction of "all cases under title 11" as well as "all civil proceedings

arising under title 11, or arising in or related to cases under title 11." *Id.* § 1334(a), (b).  In

addition, the district court in which a case under title 11 was commenced or is pending has

"*exclusive* jurisdiction [] of *all* the property, wherever located, of the debtor . . . and of property

of the estate." *Id.* § 1334(e)(1) (emphasis added); *see also Universal Oil Ltd. v. Allfirst Bank*,

419 F.3d 83, 96 (2d Cir. 2005).  Indeed, a bankruptcy court is vested with *in rem* jurisdiction

over a debtor's estate and may determine "all claims that 'anyone whether named in the action or

not, has to the property in question.'" *Universal Oil Ltd.*, 419 F.3d at 92 (quoting *Tenn. Student*

*Assistance Corp. v. Hood*, 541 U.S. 440, 448 (2004)).  Thus, bankruptcy jurisdiction "is very

broad." *Osanitsch v. Marconi PLC*, 363 B.R. 361, 366 (S.D.N.Y. 2007) (Lynch, J.).

A proceeding "arises under" title 11 if it is predicated on a right created by a

provision of title 11, while "arising in" proceedings are those that are not based on any right

expressly created by title 11 but, nevertheless, would have no existence outside of the bankruptcy

case. *See, e.g., In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.*, 341 F. Supp. 2d 386, 411

(S.D.N.Y. 2004); *see also Drexel Burnham Lambert Group, Inc. v. Vigilant Ins. Co.*, 130 B.R.

405, 407 (S.D.N.Y. 1991); *and see* 28 U.S.C. § 157(b).  Such proceedings are collectively

referred to as "core" bankruptcy proceedings. *In re Methyl Tertiary Butyl Ether Prods. Liab.*

*Litig.*, 341 F. Supp. at 411.  Core jurisdiction of bankruptcy courts is construed as broadly as

possible to promote efficient administration of bankruptcy proceedings. *See Luan Inv. S.E. v. Franklin 145 Corp.*, 304 F.3d 223, 229 (2d Cir. 2002).

The Standing Order of Reference – issued under the authority granted to district courts by 28 U.S.C. § 157(a) – directs the Court to refer to the Bankruptcy Court all matters that are subject to federal bankruptcy jurisdiction:

> Pursuant to Section 157(a) of the Bankruptcy Amendments and Federal Judgeship Act of 1984, *any or all* cases under title 11 and *any or all* proceedings arising under title 11 or arising in or related to a case under title 11 *are referred* to the bankruptcy judges for this district.

Brick Aff. Exh. F (emphasis added); *see also* 28 U.S.C. § 157(a). Several decisions of this Court have described referrals to the Bankruptcy Court under the Standing Order of Reference as "automatic." *Tortogs, Inc. v. Ins. Co. of N. Am.*, No. 93-1739, 1993 U.S. Dist. LEXIS 12134, at *5 (S.D.N.Y. Sept. 1, 1993) (McKenna, J.) (granting motion to refer case); *Orion Pictures Corp. v. Showtime Networks Inc.*, 139 B.R. 785, 787 (S.D.N.Y. 1992) (Keenan, J.) (noting "[c]ases or proceedings arising under title 11 are referred automatically to the United States Bankruptcy Court" and denying motion to withdraw reference); *Alliance Communications Group, Inc. v. Northern Telecom, Inc.*, 65 B.R. 581, 585 (S.D.N.Y. 1986) (Sweet, J.) (explaining referral as "immediate and automatic" and granting motion to refer).

As set forth in greater detail herein, plaintiffs' claims – which directly implicate the "Claim Over" and numerous other provisions of at least two Bankruptcy Court orders as well as the Plan in the Refco Bankruptcy Cases – fall squarely within both categories of bankruptcy jurisdiction ("arising under" and "arising in") and are, therefore, core matters. Referral of the claims against BAWAG to the same Bankruptcy Court judge before whom the Refco

Bankruptcy Cases are pending is proper because, *inter alia*, it is the bankruptcy judge who is directed to determine whether proceedings are core or non-core. 28 U.S.C. § 157(b)(3).[8]

### A.    BAWAG's Right To Protection From "Claims Over" Is A Core Matter

As described above, the BAWAG Settlement – which was "so ordered" by the Bankruptcy Court and incorporated into the Plan and the Confirmation Order – provides BAWAG with important "Claim Over" protection from precisely the types of claims plaintiffs now assert against BAWAG. *See* Brick Aff. Exh. A ¶¶ 6(a) - (c) (providing BAWAG is not liable for claims for "reimbursement" or "contribution" by any third party arising from BAWAG's relationship with Refco and for recovery of amounts paid or owed by such third party to Refco "*pursuant to a settlement*") (emphasis added). Moreover, referral of plaintiffs' claims to the Bankruptcy Court is required by paragraph 17 of the BAWAG Settlement, which vests in the Bankruptcy Court "*exclusive* jurisdiction for any action seeking to enforce or interpret the terms of this Stipulation and Order, *including any issues relating to Claims Over.*" *Id.* ¶ 17 (emphasis added).

As is clear from the face of the Complaint, plaintiffs seek recovery of the $263 million that was paid to the Refco Estates to settle the Preference Action. *See* Brick Aff. Exh. E ¶ 16. SPhinX's $263 million payment falls squarely within the "Claim Over" provisions of the BAWAG Settlement because it is (a) an amount paid by a third party to the Refco Estates, (b) pursuant to a settlement, and (c) plaintiffs' own allegations repeatedly assert the close connection between Refco and BAWAG as the basis for plaintiffs' claims against BAWAG.

---

[8]    The core nature of plaintiffs' claims is also supported by several provisions of the non-exhaustive list of core matters contained in 28 U.S.C. § 157(b)(2) including, without limitation:  § 157(b)(2)(A) (matters concerning the administration of the estate); § 157(b)(2)(E) (orders to turn over property of the estate); and § 157(b)(2)(O) (other proceedings affecting the liquidation of assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship).

*See, e.g.*, Brick Aff. Exh. E ¶¶ 26, 149, 209, 254, 798, 801-03. As such, plaintiffs are

"permanently barred and enjoined" by the BAWAG Settlement from proceeding with their

claims against BAWAG. Brick Aff. Exh. A ¶ 6(c). Because plaintiffs' claims against BAWAG

require the interpretation and enforcement of the BAWAG Settlement and corresponding

Bankruptcy Court orders, they are within the *exclusive* jurisdiction of the Bankruptcy Court and

are core matters. *Id.* ¶ 17; *see also Universal Oil Ltd.*, 419 F.3d at 96 (explaining "[a]

bankruptcy court retains post-confirmation jurisdiction to interpret and enforce its own orders")

(citation omitted); *Luan Inv. S.E.*, 304 F.3d at 230; *Osanitsch*, 363 B.R. at 368 (noting court's

reservation of jurisdiction over the very power invoked).[9] Moreover, the Bankruptcy Court's

express reservation of exclusive jurisdiction is a statement that it views itself as the best (and

certainly the proper) forum to adjudicate the implication of BAWAG's "Claim Over" rights.

**B.    Plaintiffs' Claims Against BAWAG
       Are Property Of The Refco Estates**

Alternatively, plaintiffs' claims against BAWAG are core matters because they are

property of the Refco Estates, and plaintiffs' prosecution of such claims would violate not only

the BAWAG Settlement, but the Plan and the Confirmation Order as well.[10] The nature of the

---

[9]    *See also Jamaica Shipping Co. v. Orient Shipping Rotterdam, B.V.*, No. 04-6482, 2005 U.S. Dist. LEXIS 21553, at *20-22 (S.D.N.Y. Sept. 30, 2005) (bankruptcy court has jurisdiction to enforce and interpret its own orders concerning a matter when it has core jurisdiction over that matter; determining proceeding to be core because it was based on rights established in bankruptcy court order); *Centennial & Allegheny Univ. Hosps.-East Tenet Healthsystem Phila., Inc. v. Nat'l Union of Hosp. & Health Care Employees*, 383 F.3d 169, 176 (3d Cir. 2004) (holding "bankruptcy court correctly determined that the suit was a core proceeding because it required the court to interpret and give effect to its previous sale orders"); *Harlow v. Palouse Producers, Inc.*, 56 B.R. 794, 798 (B.A.P. 9th Cir. 1985) (finding "orders enforcing the provisions of a confirmed plan fall within § 157(b)(2)'s flexible compass").

[10]   A cause of action is a form of property of a bankruptcy estate under 11 U.S.C. § 541(a)(1). *See also U.S. v. Whiting Pools, Inc.*, 462 U.S. 198, 205 n.9 (1983); *In re Betty Owens Schs., Inc.*, No. 96-3576, 1997 U.S. Dist. LEXIS 5877, at *4-5 (S.D.N.Y. Apr. 17, 1997) (citations omitted).

claims asserted by plaintiffs demonstrates that they are property of the Refco Estates because, *inter alia*, plaintiffs assert claims that affect *all* creditors of the Refco Estates, not just SPhinX, and the claims are the same as or similar to those asserted and settled by the Committee against BAWAG. Moreover, plaintiffs' allegations that BAWAG is an "*alter ego*" of Refco and "vicariously liable" for Refco's actions are quintessential claims belonging to the Refco Estates rather than to individual creditors. *See, e.g., Central Vt. P.S.C. v. Herbert*, 341 F.3d 186, 192 (2d Cir. 2003). It is a violation of the Bankruptcy Code's automatic stay (11 U.S.C. § 362) – which was extended indefinitely under the Plan until, *inter alia*, all of the property of the Refco Estates is distributed or otherwise fully administered (*see* Brick Aff. Exh. C § 10.5; Exh. D at 30 ¶ 20) – for any party other than the debtors' Estates or an official representative thereof to assert a claim that is property of the Refco Estates. *See, e.g., In re Colonial Realty Co.*, 980 F.2d 125, 132 (2d Cir. 1992). Because the BAWAG Settlement, the Plan, and the Confirmation Order preclude third parties like plaintiffs from bringing claims that were brought, or that could have been brought, by representatives of the Refco Estates in connection with the fraud at Refco, plaintiffs' claims are core matters and should be adjudicated by the Bankruptcy Court.

1. **The Nature Of Plaintiffs' Claims Demonstrates**
**That They Are Property Of The Refco Estates**

Plaintiffs' claims of conspiracy (Count XXIV), aiding and abetting fraud (Count XXV), and Interference with Contract/Prospective Contract (Count XXVII) are all premised on BAWAG's alleged participation in the round trip loans at Refco's fiscal year end to fraudulently misrepresent Refco's financial condition. *See* Brick Aff. Exh. E ¶¶ 801, 804-09, 1170-74, 1178-81. These claims are general in nature, and the alleged injuries SPhinX suffered were no different than the injuries suffered by Refco's numerous other creditors. The mere fact that SPhinX has alleged it suffered individual harm is not enough. SPhinX must show that the harm

it suffered "differs in kind from the harm suffered by any other creditor" of the debtor. *St. Paul Fire & Marine Ins. Co. v. PepsiCo, Inc.*, 884 F.2d 688, 701 (2d Cir. 1989); *Sobchack v. Am. Nat'l Bank & Trust Co.*, 17 F.3d 600, 604 (2d Cir. 1994). SPhinX does not – and cannot – show such individual harm.

In addition, where a creditor's causes of action are "so similar in object and purpose to claims that the trustee could bring in bankruptcy court," the creditor lacks the right to pursue those claims unless and until the trustee has "abandoned" the claims. *Nat'l Am. Ins. Co. v. Ruppert Landscaping Co.*, 187 F.3d 439, 441 (4th Cir. 1999). SPhinX's claims against BAWAG are undeniably similar in object and purpose to those asserted and settled by the Committee in the BAWAG Settlement, and are claims that the Committee could have brought. For example, SPhinX's conspiracy and aiding and abetting fraud claims against BAWAG are based on the same allegations that underpin the Committee's counter-claims against BAWAG for aiding and abetting breach of fiduciary duty – namely, that Bennett and other Refco officers misstated Refco's true financial condition, committed fraud, and engaged in other wrongful acts, all of which SPhinX alleges BAWAG aided and abetted. *Compare* Brick Aff. Exh. G (Committee's counter-claims against BAWAG) ¶¶ 1-6, 8, 13-14, 28-29, 33-45, 87, 119-20, 135-40 *with* Brick Aff. Exh. E (SPhinX's Complaint) ¶¶ 795, 798, 801-06, 1170-84. Indeed, this comparison shows that the Committee's counter-claims asserted in the Adversary Proceeding and plaintiffs' claims asserted here share an *identical* nucleus of operative facts. And, far from abandoning these claims, the Committee pursued these claims against BAWAG and settled them for hundreds of millions of dollars for the benefit of the Refco Estates. Where, as here, an authorized representative of the Refco Estates is the proper person to assert the claims, all creditors –

16

including SPhinX – are bound by the outcome of that action. *See Kalb, Voorhis & Co. v. Am. Fin. Corp.*, 8 F.3d 130, 132 (2d Cir. 1993); *St. Paul Fire & Marine Ins. Co.*, 884 F.2d at 700.

### 2.   The "Alter Ego" Nature Of The Claims Makes Them Property Of The Refco Estates

In addition, all of SPhinX's claims against BAWAG are premised on the allegation that BAWAG "controlled" Refco. *See, e.g.*, Brick Aff. Exh. E ¶¶ 209, 798, 801-03. Even if this allegation were true (and it is not), it is well settled that any claim relating to BAWAG serving as an "alter ego" of Refco can only be asserted by an official representative of the Refco Estates. *See Central Vt. P.S.C.*, 341 F.3d at 192 ("[T]he trustee is the proper person to assert claims . . . against the debtor's alter-ego or others who have misused the debtors' property in some fashion . . . As long as state law permits alter ego tort claims or similar action, *such actions are core proceedings because they relate[] to the property of the estate, and bring[] property into the estate of the debtor*") (internal quotations and citations omitted) (emphasis added).[11]

---

[11]   A further basis for the Bankruptcy Court's core jurisdiction is SPhinX's filing of a proof of claim in the Refco Bankruptcy Cases. *See Central Vt. P.S.C.*, 341 F.3d at 191 ("[o]ur cases have upheld bankruptcy jurisdiction in what would otherwise be non-core proceedings where the party opposing the finding of jurisdiction has filed a proof of claim. In doing so, we have relied on two theories: (1) the proof of claim transforms litigation into a core proceeding; and (2) by filing the proof of claim, the creditor consents to the bankruptcy court's broad equitable jurisdiction"). SPhinX's proof of claim included amounts it paid to the Refco Estates in settlement of the Preference Action, which is exactly what SPhinX now seeks to recover from BAWAG. By filing a claim with the Bankruptcy Court, SPhinX has subjected itself to that court's broad equitable jurisdiction. SPhinX should therefore not be heard to object to the Bankruptcy Court's exercise of jurisdiction over SPhinX's claims against BAWAG, especially because those claims are based on the allegation that BAWAG is the alter ego of Refco. *See id.* at 192 (holding that the bankruptcy court had jurisdiction to enjoin creditor from pursing alter ego claims against shareholder of debtor).

**C.    The BAWAG Settlement, The Plan, And**
**The Confirmation Order Bar Plaintiffs' Claims**

Plaintiffs' attempt to assert against BAWAG claims that are property of the Refco

Estates in violation of existing orders of the Bankruptcy Court entered in the Refco Bankruptcy

Cases also points decisively to the existence of core bankruptcy jurisdiction over this dispute.

As detailed above (and in addition to the Claim Over provision discussed *supra* at 6,

13-14), there are a number of provisions of the BAWAG Settlement, the Plan, and the

Confirmation Order that are directly implicated by plaintiffs' action against BAWAG and that

must be interpreted and enforced, including:

- The BAWAG Settlement's comprehensive release of "all claims or actions belonging to Refco" including, but not limited to, all claims relating to the allegations brought by the Committee against BAWAG in the Adversary Proceeding "*or any other claim that could have been brought by or on behalf of Refco or the Committee.*" Brick Aff. Exh. A¶ 4(a) (emphasis added). As discussed *supra* at 16-17, the claims asserted by the Committee against BAWAG (i) were very similar to those claims asserted by SPhinX here, (ii) could have been brought by the Committee, and (iii) are all based on BAWAG's alleged actions in assisting Bennett and Refco to misrepresent Refco's financial condition *to the detriment of all of Refco's creditors*.

- The Plan's broad releases by the Refco Estates of all claims relating to Refco that could have been asserted by or on behalf of [Refco], *including pursuant to principles of . . . alter ego [or] domination . . . .*" Brick Aff. Exh. C § 10.2(a) (emphasis added). As discussed *supra* at 14-17, these claims are property of the Refco Estates that may be pursued – if at all – *only* by a representative of the Estates. *See Central Vt. P.S.C.*, 341 F.3d at 186.

- The Confirmation Order's broad injunction prohibiting "all Persons who have held, hold or may hold Claims against or Interests in [Refco]" from "(A) commencing or continuing, in any manner or in any place, any action or other proceeding . . . or (D) commencing or continuing, in any manner or in any place, any action that does not comply with or is inconsistent with the provisions of the Plan." Brick Aff. Exh. D at 26 ¶ 15. The Confirmation Order further continues the automatic stay under § 362 of the Bankruptcy Code because the Refco Estates and their property have not yet been fully administered. *Id.* at 30 ¶ 20. Because the instant action against BAWAG is plainly inconsistent with – and indeed violates – the Plan, SPhinX should be enjoined from asserting its claims against BAWAG.

Each of these provisions bars plaintiffs' claims against BAWAG. At a minimum, they create serious issues regarding the interpretation and enforcement of the orders entered by the Bankruptcy Court (Judge Drain) after open and full hearings on the merits.

Moreover, the Bankruptcy Court's express reservation of *exclusive* jurisdiction (except in limited instances) over "all matters arising out of, and related to" the Refco Bankruptcy Cases, the Plan, and the Confirmation Order (*see* Brick Aff. Exh. C §§ 11.1 (g), (j), (k), (o), (p), (r); Exh. D at 18 ¶ CC and at 39-40 ¶ 37; Exh. A ¶ 17) further demonstrates that the Bankruptcy Court is the appropriate forum to adjudicate plaintiffs' claims against BAWAG. *See, e.g., Universal Oil Ltd.*, 419 F.3d at 96 ("[a] bankruptcy court retains post-confirmation jurisdiction to interpret and enforce its own orders") (citation omitted); *see also supra* n.9.

For all of the reasons set forth above, the Bankruptcy Court has core jurisdiction over plaintiffs' claims against BAWAG.

## II.

### PLAINTIFFS' CLAIMS AGAINST BAWAG ARE RELATED TO THE REFCO BANKRUPTCY CASES

Even if plaintiffs' claims did not arise under title 11 or arise in a case under title 11, they are nonetheless "related to" the Refco Bankruptcy Cases and are still within federal bankruptcy jurisdiction. *See* 28 U.S.C. 1334(b). "Related to" jurisdiction exists when "the outcome of [the] proceeding could conceivably have any effect on the estate being administered in bankruptcy." *Winstar Holdings LLC v. Blackstone Group, L.P.*, No. 07-4634, 2007 U.S. Dist. LEXIS 90482, at *5-6 (S.D.N.Y. Dec. 10, 2007) (Lynch, J.) (denying plaintiffs' motion to remand and granting transfer of action in anticipation of referral to bankruptcy court) (citation omitted).

"Related to" jurisdiction easily exists here. The same provisions of the BAWAG Settlement, the Plan, and the Confirmation Order referenced above in support of core jurisdiction also provide the required nexus to the Refco Bankruptcy Cases for "related to" jurisdiction. Indeed, plaintiffs' alter ego claims against BAWAG could "conceivably" impact the Refco Estates because alter ego claims belong to the Refco Estates, and any such prosecution by plaintiffs – a usurpation of the Refco Estates' authorized representative's exclusive authority under the Bankruptcy Code – would substantially affect the debtors' rights and the administration of the Refco Estates. *See Central Vt. P.S.C.*, 341 F.3d at 192 ("the trustee is the proper person to assert claims . . . against the debtor's alter ego or others who have misused the debtor's property in some fashion") (citation omitted); *Rahl v. Bande*, 316 B.R. 127, 132-33 (S.D.N.Y. 2004) (denying plaintiff's motion to remand to New York Supreme Court). This is particularly true where such alter ego and aiding and abetting claims have already been settled and released before the Bankruptcy Court. The BAWAG Settlement and releases were expressly incorporated into the Plan and the Confirmation Order, and plaintiffs' claims thus will require interpretation of the Plan and other Bankruptcy Court-issued or approved documents, including the accompanying releases. *See Certain Underwriters at Lloyd's v. ABB Lummus Global, Inc.*, No. 03-7248, 2004 U.S. Dist. LEXIS 1486, at *16 (S.D.N.Y. Feb. 5, 2004).

In fact, as noted above, the Bankruptcy Court expressly found that each release contained in or incorporated into the Plan is "an essential means of implementing the Plan pursuant to section 1123(a)(5) of the Bankruptcy Code; . . . [is] an integral element of the Settlements embodied in the Plan; . . . confers material benefit on, and is in the best interest of, the Debtors, their Estates and creditors; [and] . . . is important to the overall objectives of the Plan to finally resolve all Claims among or against the parties in interest in the Chapter 11 Cases

with respect to the Debtors, their organization, capitalization, operation and reorganization to the extent provided in the Plan . . . ."  Brick Aff. Exh. D at 19 ¶ DD.  Thus, the Bankruptcy Court has implicitly recognized the substantial impact that claims such as those raised by plaintiffs would likely have on the Refco Estates.

## **CONCLUSION**

For the foregoing reasons, and for the reasons set forth in its Notice of Removal previously filed with the Court, defendant BAWAG respectfully requests that the Court grant its motion for an order referring Counts XXIV, XXV, and XXVII of the complaint as alleged against BAWAG to the Bankruptcy Court (Drain, J).

Dated:   New York, New York
         April 2, 2008

                                        DECHERT LLP


                                        By:____/s/   Nicolle L. Jacoby_____
                                             Nicolle L. Jacoby
                                             Joel H. Levitin
                                             Brian H. Brick
                                             30 Rockefeller Plaza
                                             New York, New York  10112
                                             (212) 698-3500
                                             nicolle.jacoby@dechert.com

                                             *Attorneys for Bank für Arbeit und*
                                             *Wirtschaft und Österreichische*
                                             *Postsparkasse Aktiengesellschaft*