David Molton (DM 1106)
Andrew Dash (AD 7913)
**BROWN RUDNICK BERLACK ISRAELS LLP**
Seven Times Square
New York, New York 10036
Telephone: (212) 209-4800

Leo R. Beus
Dennis K. Blackhurst
**BEUS GILBERT PLLC**
4800 North Scottsdale Road, Suite 6000
Scottsdale, Arizona 85251
Telephone: (480) 429-3000

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------X
                                               :

In re REFCO INC. SECURITIES LITIGATION   :   Case No. 07-md-1902 (GEL)

                                               :
-----------------------------------------------------------------X

This Document Relates to:

-----------------------------------------------------------------X
KENNETH M. KRYS and CHRISTOPHER   :
STRIDE, as JOINT OFFICIAL LIQUIDATORS   :
of SPHINX LTD., SPHINX STRATEGY FUND   :   Case No. 08-cv-3065 (GEL)
LTD.;   :   ECF Case
SPHINX PLUS SPC LTD., SPHINX   :
DISTRESSED LTD., SPHINX MERGER   :
ARBITRAGE LTD.; SPHINX SPECIAL   :   **PLAINTIFFS'**
SITUATIONS LTD., SPHINX MACRO LTD.;   :   **MEMORANDUM OF LAW**
SPHINX LONG/SHORT EQUITY LTD.;   :   **IN OPPOSITION TO DEFENDANT**
SPHINX MANAGED FUTURES LTD.; SPHINX   :   **BAWAG'S MOTION TO REFER**
EQUITY MARKET NEUTRAL LTD.; SPHINX   :   **COUNTS XXIV, XXV, AND XXVII**
CONVERTIBLE ARBITRAGE LTD.; SPHINX   :   **OF THE COMPLAINT AS ALLEGED**
FIXED INCOME ARBITRAGE LTD.; SPHINX   :   **AGAINST BAWAG TO THE**
DISTRESSED FUND SPC; SPHINX MERGER   :   **BANKRUPTCY COURT**
ARBITRAGE FUND SPC; SPHINX SPECIAL   :
SITUATIONS FUND SPC; SPHINX MACRO   :
FUND SPC; SPHINX LONG/SHORT EQUITY   :
FUND SPC; SPHINX MANAGED FUTURES   :
FUND SPC; SPHINX EQUITY MARKET   :

NEUTRAL FUND SPC; SPHINX                          :
CONVERTIBLE ARBITRAGE FUND SPC;                   :
SPHINX FIXED INCOME ARBITRAGE FUND                :
SPC; PLUSFUNDS MANAGED ACCESS FUND                :
SPC LTD.; KENNETH M. KRYS and                     :
CHRISTOPHER STRIDE as assignees of claims         :
assigned by MIAMI CHILDREN'S HOSPITAL             :
FOUNDATION, OFI, GREEN & SMITH                    :
INVESTMENT MANAGEMENT LLC, THALES                 :
FUND MANAGEMENT LLC, KELLNER                      :
DILEO & CO., LLC, MARTINGALE ASSET                :
MANAGEMENT LP, LONGACRE FUND                      :
MANAGEMENT LLC, ARNHOLD & S.                      :
BLEICHROEDER ADVISERS LLC, PICTET &               :
CIE, RGA AMERICA REINSURANCE                      :
COMPANY, DEUTSCHE BANK (SUISSE) SA,               :
ARAB MONETARY FUND, HANSARD                       :
INTERNATIONAL LTD., CONCORDIA                     :
ADVISORS LLC, GABELLI SECURITIES, INC.,           :
CITCO GLOBAL CUSTODY; and JAMES                   :
P. SINCLAIR as Trustee of the SPHINX TRUST,       :
                                                  :
                            Plaintiffs,           :
                                                  :
                -against-                         :
                                                  :
CHRISTOPHER SUGRUE; MARK                          :
KAVANAGH; BRIAN OWENS;                            :
PRICEWATERHOUSECOOPERS L.L.P.; MARI               :
FERRIS; PRICEWATERHOUSECOOPERS                    :
CAYMAN ISLANDS; GIBSON, DUNN &                    :
CRUTCHER LLP; REFCO ALTERNATIVE                   :
INVESTMENTS LLC; GRANT THORNTON                   :
LLP; MARK RAMLER; ERNST & YOUNG U.S.              :
LLP; MAYER BROWN LLP f/k/a MAYER                  :
BROWN ROWE & MAW LLP; JOSEPH                      :
COLLINS; EDWARD S. BEST; PAUL KOURY;              :
PHILLIP R. BENNETT; ROBERT C. TROSTEN;            :
TONE GRANT; SANTO MAGGIO; THOMAS                  :
HACKL; DENNIS KLEJNA; BAWAG P.S.K.                :
BANK FUR ARBEIT UND WIRTSCHAFT UND                :
OSTERREICHISCHE POSTPARKASSE                      :
AKTIENGESELLSEHAFT; JP MORGAN                     :
CHASE & CO.;                                      :
CREDIT SUISSE SECURITIES                          :
(USA) LLC f/k/a CREDIT SUISSE FIRST               :

BOSTON LLC; BANC OF AMERICA                       :
SECURITIES LLC; THOMAS H. LEE                     :
PARTNERS, L.P.; THOMAS H. LEE                     :
ADVISORS, LLC; THL MANAGERS V, LLC;               :
THL EQUITY ADVISORS V, L.P.; THOMAS H.            :
LEE EQUITY FUND V, L.P.; THOMAS H. LEE            :
PARALLEL FUND V, L.P.; THOMAS H. LEE              :
EQUITY (CAYMAN) FUND V, L.P.; THOMAS              :
H. LEE INVESTORS LIMITED PARTNERSHIP;             :
1997 THOMAS H. LEE NOMINEE TRUST;                 :
THOMAS H. LEE; DAVID V. HARKINS;                  :
SCOTT L. JAECKEL; SCOTT A. SCHOEN;                :
WILLIAM T. PIGOTT; LIBERTY CORNER                 :
CAPITAL STRATEGIES, LLC; EMF                      :
FINANCIAL PRODUCTS LLC; EMF CORE                  :
FUND LTD.; DELTA FLYER FUND LLC; ERIC             :
M. FLANAGAN; INGRAM MICRO, INC.; CIM              :
VENTURES, INC.; BECKENHAM TRADING                 :
CO., INC.; ANDREW KRIEGER; COAST                  :
ASSET MANAGEMENT, LLC, f/k/a COAST                :
ASSET MANAGEMENT LP; CS LAND                      :
MANAGEMENT LLC; CHRISTOPHER                       :
PETTIT; and REFCO GROUP HOLDINGS,                 :
INC.; and REFCO ASSOCIATES, INC.,                 :
                                                  :
          Defendants                              :
-------------------------------------------------------------------X

**<u>TABLE OF CONTENTS</u>**

<u>Page</u>

TABLE OF AUTHORITIES ...................................................................................................ii

INTRODUCTION ..............................................................................................................1

ARGUMENT ....................................................................................................................3

I.     THE BANKRUPTCY COURT DOES NOT HAVE CORE
JURISDICTION OVER PLAINTIFFS' BAWAG CLAIMS...................................3

     A     BAWAG'S Assertions Regarding the "Claim Over" Provisions
of the BAWAG Settlement Cannot Convert Plaintiffs' State Law
Claims Into Core Matters...................................................................6

          (i)     Bankruptcy Court Involvement Not Required to Interpret The
"Claim Over" Provision..........................................................6

          (ii)    BAWAG Misconstrues Reach of BAWAG Settlement's
"Claim Over Protection"........................................................8

          (iii)   The "Claim Over" Protection Cannot Apply to PlusFunds'
Injury......................................................................................9

          (iv)   The BAWAG Settlement's Retention of Jurisdiction
Provision Does Not Bind Plaintiffs or Otherwise Require
Referral to the Bankruptcy Court..........................................10

     B.    Plaintiffs' Claims Are Not Property of the Refco Bankruptcy Estates..........12

          (i)     Plaintiffs Have Not Asserted Alter Ego Claims. .................12

          (ii)    Plaintiffs' Claims Are Distinct From Claims Brought by Refco
Creditors' Committee.............................................................13

     C.    The Releases Granted BAWAG Under the BAWAG Settlement and
the Refco Plan Do Not Convert Plaintiffs' BAWAG Claims into
Core Matters.....................................................................................16

          (i)     The BAWAG Settlement's Release Provision Is Not
Binding on Plaintiffs. ...........................................................16

          (ii)    The Refco Plan Release in Favor of BAWAG Is Not Binding
on Plaintiffs ..........................................................................17

          (iii)   The Refco Plan Confirmation Order Does Not Bar Plaintiffs'
BAWAG Claims. ..................................................................19

II.    THE BANKRUPTCY COURT DOES NOT HAVE "RELATED TO"
JURISDICTION OVER PLAINTIFFS' BAWAG CLAIMS ...................................19

III.   IN THE ALTERNATIVE, SHOULD THE COURT DETERMINE THAT
BANRKUTPCY JURISDICTION IS PRESENT WITH RESPECT TO
PLAINTIFFS' BAWAG CLAIMS, THE COURT SHOULD
NONETHELESS WITHDRAW THE REFERENCE ...............................................21

CONCLUSION................................................................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

Anderson v. Simchon (In re S. Textile Knitters, Inc.),
  236 B.R. 207 (Bankr. D.S.C. 1999)........................................................23

Bogdan and Faist, P.C. v. Wireless Sys., Inc.,
  295 A.D.2d 849, 745 N.Y.S.2d 92 (3d Dep't 2002) ...................................7

Celotex Corp. v. Edwards,
  514 U.S. 300 (1995)...........................................................................19

Deutsche Bank AG v. Metromedia Fiber Network, Inc.
  (In re Metromedia Fiber Network, Inc.), 416 F.3d 136 (2d Cir. 2005) .......9

E.E.O.C. v. Wassle House, Inc.,
  534 U.S. 279 (2002)...........................................................................11

Enron Power Mktg. v. City of Santa Clara (In re Enron Power Marketing, Inc.), 02 Civ.
  7694, 2003 U.S. Dist. LEXIS 189 (S.D.N.Y. Jan. 8, 2003) ......................22

Fallick v. Kehr,
  369 F.2d 899 (2d Cir. 1966) ...............................................................7

Feltner v. Columbia Pictures Television, Inc.,
  523 U.S. 340 (1998)...........................................................................23

Gassman v. Gassman, Griper & Golodny,
  97 Civ. 0093, 1997 U.S. Dist. LEXIS 14850 (S.D.N.Y. Sept. 25, 1997)...................................5

Germain v. Connecticut Nat'l Bank,
  988 F.2d 1323 (2d Cir. 1993) ............................................................23

Granfinanciera, S.A. v. Nordberg,
  492 U.S. 33 (1989)............................................................................23

Hackling v. Kahn (In re Luis Elec. Contracting Corp.),
  100 B.R. 155 (E.D.N.Y. 1989) ...........................................................5

Harlow v. Palouse Producers, Inc. (In re Harlow Prods., Inc.),
  56 B.R. 794 (9th Cir. B.A.P. 1985) .....................................................12

ICCO Design/Build, Inc. v. Sunbrite Cleaners
  (In re Sunbrite Cleaners, Inc.), 284 B.R. 336 (N.D.N.Y. 2002) ...........7, 21

IIG Capital LLC v. Wollmuth Maher & Deutsch, LLP (In re Amanat),
   338 B.R. 574 (Bankr. S.D.N.Y. 2005)...................................................................6, 19

In re Altchek,
   119 B.R. 31 (Bankr. S.D.N.Y 1990)...........................................................................5

In re Crown Vantage, Inc.,
   No. 02-03836, 2002 WL 32872440 (N.D. Cal. Dec. 16, 2002)..................................23

Interconnect Tel. Servs., Inc. v. Farren,
   59 B.R. 397 (S.D.N.Y. 1986)..................................................................................5, 6

Jamaica Shipping Co. v. Orient Shipping Rotterdam, B.V. (In re Millenium Seacarriers,
   Inc.), 04 Civ. 6482, 05 Civ. 2711,
   2005 U.S. Dist. LEXIS 21553 (S.D.N.Y. Sept 28, 2005),
   aff'd and remanded on other grounds, 458 F.3d 92 (2d Cir. 2006)............................12

JMB Capital Partners, L.P. v. CRT Capital Group LLC (In re NTL, Inc.), 295 B.R. 706
   (Bankr. S.D.N.Y. 2003) .............................................................................................7

Liberty Mut. Ins. Co. v. Lone Star Indus., Inc.,
   313 B.R. 9 (D. Conn. 2004).......................................................................................7

Luan Inv. S.E. v. Franklin 145 Corp. (In re Petrie Retail, Inc.),
   304 F.3d 223 (2d Cir. 2002) .........................................................................11, 12, 22

MacArthur Co. v. Johns Manville Corp.,
   837 F.2d 89 (2d Cir. 1988) .........................................................................................9

New York City Employees' Retirement Sys. v. Ebbers (In re Worldcom Inc. Sec.
   Litigation), 293 B.R. 308 (S.D.N.Y. 2003) ...............................................................20

Orion Pictures Corp. v. Showtime Network, Inc.
   (In re Orion Pictures Corp.), 4 F.3d 1095 (2d Cir. 1993) ...............................11, 21, 22

Osanitsch v. Marconi PLC (In re Marconi PLC),
   363 B.R. 361 (S.D.N.Y. 2007).............................................................................4, 5, 12

Publicker Indus., Inc. v. United States (In re Cuyohoga Equip. Corp.),
   980 F.2d 110 (2d Cir. 1992) .....................................................................................19

Rednel Tower, Ltd. v. Riverside Nursing Home
   (In re Riverside Nursing Home), 144 B.R. 951 (S.D.N.Y. 1992) ..................................4

Sobchak v. Am. Nat'l Bank & Trust Co. of Chicago (In re Ionosphere Clubs, Inc.), 17 F.3d
   600 (2d Cir. 1994)....................................................................................................15

St. Paul Fire & Marine Ins. Co. v. PepsiCo, Inc.,
   884 F.2d 688 (2d Cir. 1989) ...................................................................................13, 15

Tenet Health Sys. Philadelphia, Inc. v. Nat'l Union of Hosp. & Health
   Care Employees (In re Allegheny Health Educ. & Research Found.),
   383 F.3d 169 (3d Cir. 2004) ...........................................................................................11

Universal Oil Ltd. v. Allfirst Bank (In re Millenium SeaCarriers, Inc.,
   419 F.3d 83 (2d Cir. 2005) ..............................................................................................11

Wechsler v. Squadron, Ellenoff Plesent & Sheinfeld, LLP,
   201 B.R. 635 (S.D.N.Y. 1996)...........................................................................................5

Winstar Holdings, LLC v. Blackstone Group L.P., No. 07 Civ 4634, 2007
   WL 4323003 (S.D.N.Y. Dec. 10, 2007) ...............................................................4, 6, 11, 22

## **Statutes**

28 U.S.C. § 157........................................................................................................4, 22, 23

28 U.S.C. § 1334.........................................................................................................1, 4, 6

28 U.S.C. § 1452.................................................................................................................1

Plaintiffs,[1] by and through their undersigned counsel, respectfully submit this memorandum of law in opposition to the Motion (the "Motion") of Defendant Bank fur Arbeit Und Wirtschaft Und Österreichische Postsparkasse Aktiengesellschaft ("BAWAG") to Refer Counts XXIV, XXV and XXVII of the Complaint (the "Complaint"), as alleged against BAWAG, to the United States Bankruptcy Court for the Southern District of New York (Drain, J.) (the "Bankruptcy Court").   In opposition to the Motion, Plaintiffs respectfully state as follows:

## INTRODUCTION

Plaintiffs commenced this action in the Supreme Court of the State of New York, New York County, on March 5, 2008.  BAWAG thereafter removed the action to this Court pursuant to 28 U.S.C. §§ 1334 and 1452.  (Certain other defendants also filed a separate notice of removal.  Concurrently with the filing of this opposition to the Motion, Plaintiffs are moving to remand and/or for abstention in response to each of these notices of removal, including BAWAG's notice of removal.)  The Plaintiffs are comprised of three distinct groups:  (1) Kenneth Krys and Christopher Stride, the Joint Official Liquidators (the "JOLs") of the SPhinX Funds, a family of hedge funds organized under Cayman Islands law; (2) Messrs. Krys and

---

[1]   The Plaintiffs are:  Kenneth M. Krys and Christopher Stride as Joint Official Liquidators (the "JOLs") of SPhinX, Ltd., SPhinX Macro Fund SPC, SPhinX Macro, Ltd., SPhinX Managed Futures Fund SPC, SPhinX Long/Short Equity Fund SPC, SPhinX Convertible Arbitrage Fund SPC, SPhinX Fixed Income Arbitrage Fund SPC, SPhinX Distressed Fund SPC, SPhinX Merger Arbitrage Fund SPC, SPhinX Special Situations Fund SPC, SPhinX Equity Market Neutral Fund SPC, SPhinX Strategy Fund, Ltd., SPhinX Plus SPC, Ltd., SPhinX Managed Futures, Ltd., SPhinX Long/Short Equity, Ltd., SPhinX Convertible Arbitrage, Ltd., SPhinX Fixed Income Arbitrage, Ltd., SPhinX Distressed, Ltd., SPhinX Merger Arbitrage, Ltd., SPhinX Special Situations, Ltd., SPhinX Equity Market Neutral, Ltd., and PlusFunds Managed Access Fund SPC, Ltd. (collectively, "SPhinX" or the "SPhinX Funds"), Kenneth M. Krys and Christopher Stride as assignees of claims assigned by Miami Children's Hospital Foundation, OFI, Green & Smith Investment Management LLC, Thales Fund Management LLC, Kellner Dileo & Co., LLC, Martingale Asset Management LP, Longacre Fund Management LLC, Arnhold & S. Bleichroeder Advisers LLC, PicTet & Cie, RGA America Reinsurance Company, Deutsche Bank (Suisse) SA, Arab Monetary Fund, Hansard International Ltd., Concordia Advisors LLC, Gabelli Securities, Inc., Citco Global Custody (the "SPhinX investors") and James P. Sinclair, as Trustee of the SPhinX Trust (the "Trustee") created by the Fifth Amended Plan of Liquidation of PlusFunds Group, Inc.

Stride, as assignees of claims from a number of investors in the SPhinX Funds; and (3) James Sinclair, the Trustee of the SPhinX Trust, which was assigned claims formerly belonging to the estate of PlusFunds Group, Inc. ("PlusFunds"), the SPhinX Funds' former investment manager. The causes of action alleged against BAWAG in the Complaint -- aiding and abetting fraud, conspiracy, and interference with contract ("Plaintiffs' BAWAG Claims") -- are all common law causes of action under state law. Through these common law tort claims, Plaintiffs seek damages arising from the loss of SPhinX customer assets ($263 million plus interest) and the collapse of the business of PlusFunds, SPhinX's investment manager.

As alleged in the Complaint, BAWAG actively participated in, and materially facilitated, a massive fraud that caused Plaintiffs to sustain devastating losses. In this fraud, hundreds of millions of dollars in uncollectible receivables at Refco were hidden in order to enrich Refco insiders and others. As a central component of the scheme, BAWAG knowingly assisted in the concealment of these worthless debts by facilitating and participating, inter alia, in certain "round trip loans." BAWAG's participation in, and facilitation of, the "round trip loans," materially assisted in the concealment of Refco's insolvency until October 2005.[2]

Refco's fraud was disclosed to the public in October 2005, when Refco issued press releases regarding an undisclosed $430 million receivable owed Refco by an entity controlled by Refco's CEO, Phillip Bennett, and which had been fraudulently concealed by Bennett and others through, inter alia, the wrongful "round trip loans." At the time of the disclosure of the Refco fraud, some $312 million of SMFF's cash was held at RCM (see note 2, supra), approximately

---

[2]    Moreover, certain agents of SPhinX and PlusFunds, who are also liable along with BAWAG, wrongfully allowed excess cash of one of the SPhinX Funds, SPhinX Managed Futures Fund SPC ("SMFF"), to be moved from protected, customer segregated accounts at Refco LLC, Refco's regulated affiliate, to non-regulated, commingled accounts at Refco Capital Markets Ltd. ("RCM"), a non-regulated Bermuda entity. SPhinX customer assets (including SMFF cash) in the custody of RCM then became enmeshed and utilized in Refco's fraudulent business operations.

$263 million of which was ultimately lost in the Refco scandal. The JOLs seek to recover those amounts and amounts lost by SPhinX investors from (i) parties responsible for placing SMFF's excess cash at RCM, and (ii) parties responsible or involved in the Refco fraud, including BAWAG. The SPhinX Trustee seeks to recover damages suffered by PlusFunds, SPhinX's investment manager, whose business, which was worth hundreds of millions of dollars, collapsed as a direct consequence of the Refco fraud.

Through its Motion, BAWAG seeks to have Plaintiffs' BAWAG Claims referred to the Bankruptcy Court for adjudication. BAWAG intends to argue that Plaintiffs' BAWAG Claims were precluded by a settlement (not involving SPhinX) reached during the Refco bankruptcy proceedings (the "BAWAG Settlement") and extinguished by releases granted in the Refco plan (the "Refco Plan"). However, Plaintiffs' BAWAG Claims were neither enjoined nor extinguished in the Refco bankruptcy and no particular expertise by any specific court is required to interpret the release provisions of the BAWAG Settlement and the Refco Plan. The requested referral of Plaintiffs' BAWAG Claims to the Bankruptcy Court would also create obvious judicial inefficiencies resulting from the splitting of these claims from the remainder of Plaintiffs' action and requiring their litigation in a parallel proceeding. The Court should reject BAWAG's attempt to manufacture bankruptcy jurisdiction, with its obvious implication of forum shopping. BAWAG's Motion should be denied.

## ARGUMENT

### I.

### THE BANKRUPTCY COURT DOES NOT HAVE CORE JURISDICTION OVER PLAINTIFFS' BAWAG CLAIMS

BAWAG asserts that Plaintiffs' BAWAG Claims fall within the core jurisdiction of the Bankruptcy Court. BAWAG is wrong.

Pursuant to 28 U.S.C. § 1334(b), "the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to a case under title 11." Bankruptcy judges may hear and determine any "core proceeding" that "arises under" or "arises in" an action under title 11, and may only hear a non-core proceeding if such proceeding is "related to" a bankruptcy action. See 28 U.S.C. § 157(b)-(c).

"Arising in" and "arising under" proceedings "depend upon the application or construction of bankruptcy law as expressed in title 11." Osanitsch v. Marconi PLC (In re Marconi PLC), 363 B.R. 361, 366 (S.D.N.Y. 2007) (Lynch, J.) (citations omitted) (plaintiff's complaint was not core because it raised no claims created by or unique to bankruptcy law but only ordinary state law contract and tort claims). "To be a core proceeding, an action must have as its foundation the creation, recognition or adjudication of rights which would not exist independent of a bankruptcy environment." Id. (citation omitted); see also Rednel Tower, Ltd. v. Riverside Nursing Home (In re Riverside Nursing Home), 144 B.R. 951, 955 (S.D.N.Y. 1992) (an action "arises under" if the relief sought is based on a right specifically created by title 11 and "arises in" if, by its very nature, the claim could only be brought in a bankruptcy action because it has no existence outside of bankruptcy). Only four months ago, this Court held that "when a cause of action is one which is created by title 11, then that civil proceeding is one arising under title 11". Winstar Holdings, LLC v. Blackstone Group L.P., No. 07 Civ. 4634, 2007 WL 4323003, at *2 (S.D.N.Y. Dec. 10, 2007) (emphasis added, internal quotations and citation omitted) . Clearly, this case does not "arise under" title 11.

The adjudication of state law causes of action generally does not constitute a core proceeding; such causes of action arise under traditional state law, must be determined by state law, and, in the absence of the petition in bankruptcy, could have been brought in a federal or

state court. See Interconnect Tel. Servs., Inc. v. Farren, 59 B.R. 397, 400 (S.D.N.Y. 1986)

(complaint alleging unfair competition, misappropriation of trade secrets, and other violations of

New York corporate law was not a core proceeding); see also Gassman v. Gassman, Griper &

Golodny, 97 Civ. 0093, 1997 U.S. Dist. LEXIS 14850, at *1, *8-*9 (S.D.N.Y. Sept. 25, 1997)

(state court actions for breach of contract and breach of fiduciary duty were non-core

proceedings as they were not central to the administration of the bankruptcy estate); Wechsler v.

Squadron, Ellenoff Plesent & Sheinfeld, LLP, 201 B.R. 635, 639 (S.D.N.Y. 1996) (state law

breach of contract claim is non-core because it could "exist independent of the bankruptcy

case"); In re Altchek, 119 B.R. 31, 34 (Bankr. S.D.N.Y 1990) (debtor's state law actions for

indemnification and collection of accounts receivable were not core because they did not invoke

a right under title 11 and were not central to the administration of the case); Hackling v. Kahn (In

re Luis Elec. Contracting Corp.), 100 B.R. 155, 156 (E.D.N.Y. 1989) (action for negligence and

malpractice was a non-core proceeding as it was based entirely on state law and involved a right

created by law independent of, and antecedent to, the petition for bankruptcy).

Plaintiffs have asserted three claims against BAWAG in the Complaint:  aiding and

abetting fraud, conspiracy, and interference with contract or prospective contract.[3] These are

precisely the types of state law tort claims that courts have found to be non-core matters.

Plaintiffs' BAWAG Claims do not depend on the construction or application of bankruptcy law,

and have not been created by, nor are they unique to, bankruptcy law.  Accordingly, Plaintiffs'

BAWAG Claims are not proceedings "arising under" title 11.  See Marconi, 363 B.R. at 366.

Moreover, Plaintiffs' BAWAG Claims are not the sort of claims that could only be brought in a

bankruptcy environment and obviously do have an independent existence outside of bankruptcy.

---

[3]     Plaintiffs anticipate filing an amended Complaint that will, inter alia, add a cause of action against
BAWAG for aiding and abetting breaches of fiduciary duty.

See Winstar, 2007 WL 4323003, at *3.  Therefore, Plaintiffs' BAWAG Claims clearly do not "arise under" or "arise in" a case under title 11 and thus are not core matters.  See Interconnect Tel., 59 B.R. at 400; IIG Capital LLC v. Wollmuth Maher & Deutsch, LLP (In re Amanat), 338 B.R. 574, 579 (Bankr. S.D.N.Y. 2005).

### A.    BAWAG'S Assertions Regarding the "Claim Over" Provisions of the BAWAG Settlement Cannot Convert Plaintiffs' State Law Claims Into Core Matters

BAWAG argues that the "claim over" provisions of the BAWAG Settlement approved in the Refco bankruptcy cases somehow convert Plaintiffs' BAWAG Claims into core matters. This contention is without merit.

### (i)    Bankruptcy Court Involvement Is Not Required to Interpret the "Claim Over" Provision

BAWAG relies on the "claim over" provision of the BAWAG Settlement in an unsustainable effort to manufacture Bankruptcy Court jurisdiction.  Asserting that Plaintiffs' right to sue BAWAG somehow was vitiated by the BAWAG Settlement, BAWAG attempts to construct upon this faulty foundation an argument that the Bankruptcy Court must interpret its own order.  However, the assertion of the "claim over" provision as a defense is insufficient to create the bankruptcy jurisdiction BAWAG seeks.  See Winstar, 2007 WL 4323003 at *2-*3 (applying the "well pleaded complaint" rule to Section 1334(b) "arising under" and "arising in" determinations; the fact that provisions of sale agreement and Bankruptcy Court order approving it will be relevant to outcome of case is insufficient to confer "arising under" jurisdiction, and the fact that a cause of action would never have arisen but for the occurrence of a particular bankruptcy case not sufficient to confer "arising in" jurisdiction).

Further, any court -- including the Commercial Division of the New York Supreme Court, where this case belongs (see accompanying remand/abstention motion) -- can review the

BAWAG Settlement and determine whether the "claim over" protection granted therein extends to the Plaintiffs' BAWAG Claims (and it does not). "State courts are fully capable of interpreting a confirmed plan to determine whether a particular claim has been discharged." ICCO Design/Build, Inc. v. Sunbrite Cleaners, Inc. (In re Sunbrite Cleaners, Inc.), 284 B.R. 336, 342 (N.D.N.Y. 2002). "Under the Bankruptcy Code, a confirmed plan of reorganization acts like a contract that is binding on all of the parties, debtor and creditor alike. Because contract interpretation is an issue of state law . . . the state courts are perfectly well-suited to interpret the . . . Plan. Moreover, whether a claim has been discharged is a defense that can be raised in post-bankruptcy litigation, whether before a federal district court or a state court." Id. (citations omitted); see also Fallick v. Kehr, 369 F.2d 899, 902 (2d Cir. 1966) (state courts routinely determine whether bankruptcy discharge extends to claim); Liberty Mut. Ins. Co. v. Lone Star Indus., Inc., 313 B.R. 9, 20 (D. Conn. 2004) (rejecting assertion by the debtor that "federal jurisdiction exists simply by virtue of the necessity of interpreting the Settlement Agreement and/or Plan of Reorganization"; interpreting the agreement or plan was not based on substantive federal law and state courts had the ability to interpret a bankruptcy plan); JMB Capital Partners, L.P. v. CRT Capital Group LLC (In re NTL, Inc.), 295 B.R. 706, 717 (Bankr. S.D.N.Y. 2003) (state court could hear a plan-related matter; "[T]he fact that a plan or bankruptcy court order is involved in a controversy does not mean that State law is superseded. Confirmed plans of reorganization are judgments of Federal court, but they are construed in accordance with State law."); Bogdan and Faist, P.C. v. CAI Wireless Sys., Inc., 295 A.D.2d 849, 852, 745 N.Y.S.2d 92, 95 (3d Dep't. 2002) (New York court determines that bankruptcy plan did not discharge claim).

**(ii)    BAWAG Misconstrues the Reach of the BAWAG Settlement's "Claim Over" Protection**

In any event, BAWAG's reliance on the BAWAG "claim over" provision of the BAWAG Settlement as a defense to Plaintiffs' claims is substantively meritless.  By selective quotation, BAWAG attempts to remold the BAWAG Settlement into a blanket bar of all suits that might be deemed actions for contribution, indemnification, or reimbursement against BAWAG by parties who were strangers to the BAWAG Settlement (an "Unnamed Party" or the "Unnamed Parties").  Significantly, Plaintiffs' Complaint makes no claim against BAWAG for contribution, indemnification, or reimbursement.  See Complaint ¶¶ 794-846, 1169-84, 1195-1219.

Even apart from this, as BAWAG would have it, the alleged bar on suits against it would apply even if the Unnamed Party received no benefit from the BAWAG Settlement.  However, the actual terms of the BAWAG Settlement carefully limit the scope and effect of the "claim over" protection afforded BAWAG:

> To effectuate this ["claim over"] protection of the BAWAG Parties, the Court orders that any judgment obtained by Refco or the Debtors' estates against an Unnamed Party (a "Judgment") that awards damages or other monetary relief for which the BAWAG Parties may also bear responsibility in whole or in part ("Common Damages") shall be reduced by the greater of (x) the percentage that reflects the proportionate responsibility of the BAWAG Parties, if any, for the Common Damages, and (y) the portion, if any, of the aggregate consideration provided to Refco or the Debtors' estates by the BAWAG Parties pursuant to this stipulation and order determined to be attributable to Common Damages (the greater of (x) and (y) the "Judgment Reduction").

BAWAG Settlement ¶ 6(b)(i) (as modified pursuant to the Order Approving and Clarifying Stipulation and Order of Settlement and Resolving Certain Objections, dated July 6, 2006, ¶ 4).

Thus, the BAWAG Settlement conditioned the prospective "claim over" protection afforded to BAWAG on a benefit that would be provided to any Unnamed Parties should they be

stripped of their right to seek contribution from BAWAG: any liability of such Unnamed Parties to Refco for damages would be correspondingly reduced according to BAWAG's share of the responsibility for such damages. See id. The reason for conditioning the "claim over" protection is obvious. Otherwise, the deprivation without compensation of a property right (the cause of action against BAWAG for contribution) belonging to non-consenting, unnamed third parties would have been unlawful. See Deutsche Bank AG v. Metromedia Fiber Network, Inc. (In re Metromedia Fiber Network, Inc.), 416 F.3d 136, 141 (2d Cir. 2005) (broad non-debtor releases are proper only in rare cases with circumstances not present here); MacArthur Co. v. Johns Manville, Corp., 837 F.2d 89, 93 (2d Cir. 1988) (non-debtor releases approved where enjoined claims are "channeled" to a fund).

As BAWAG notes, certain of the SPhinX funds settled the preference action brought on behalf of the Refco estates against the SPhinX entities. This settlement was entered into April 2006 prior to the July 2006 BAWAG Settlement. See Stipulation and Order of Settlement, Official Comm. of Unsecured Creditors v. SPhinX Managed Futures Fund SPC (In re Refco), Case No. 05-60006, Adv. Proc. No. 05-3331, Docket No. 66 (Bankr. S.D.N.Y. June 9, 2006) (copy annexed as Exhibit A to the Declaration of David J. Molton, Esq. in Opposition to Motion to Refer, submitted herewith (the "Molton Referral Opp. Decl.")) . Plaintiffs were not a party to the BAWAG Settlement, did not elect to release BAWAG, did not -- and could not -- receive any benefit from the BAWAG Settlement, and did not receive any consideration under the Refco plan. Accordingly, the BAWAG Settlement did not -- and lawfully could not -- strip Plaintiffs of any rights including, without limitation, the right to assert state law claims against BAWAG.

### (iii)    The "Claim Over" Protection Cannot Apply to PlusFunds' Injury

In the Motion, BAWAG characterizes Plaintiffs' BAWAG Claims as solely seeking contribution from BAWAG for the $263 million preference settlement payment made by SPhinX

to the Refco estates.  However, as is clear from a review of the Complaint, material damages are also sought for the harm done to PlusFunds by BAWAG's misconduct.  See, e.g., Complaint ¶¶ 1182-84, 1200, 1207, 1209, 1211, 1213-19.  Such damages flow from the destruction of the enterprise value of PlusFunds when the SPhinX funds, which PlusFunds managed, collapsed due to the Refco fraud aided and facilitated by BAWAG.

These damages are entirely unrelated to any judgment "obtained by Refco or the Debtors' estates against [PlusFunds] that awards damages or other monetary relief for which the BAWAG Parties may also bear responsibility in whole or in part . . . ."  BAWAG Settlement ¶ 6(b)(1).  Nor do they arise from any "amounts that [PlusFunds] paid or owes to Refco or the Debtors' estates . . . ."  BAWAG Settlement ¶ 6(a).  Accordingly, no contribution, indemnification, or reimbursement claim against BAWAG could ever arise.  Therefore, the very terms of the BAWAG Settlement make any "claim over" protection is wholly inapplicable to Plaintiffs' BAWAG Claims as they relate to the injury done to PlusFunds, and there is no basis for alleged core jurisdiction with respect to this claim.

> **(iv)    The BAWAG Settlement's Retention of Jurisdiction Provision Does Not Bind Plaintiffs or Otherwise Require Referral to the Bankruptcy Court**

BAWAG broadly overstates the reach of the BAWAG Settlement by asserting that resolution of Plaintiffs' BAWAG Claims is within the exclusive jurisdiction of the Bankruptcy Court by virtue of the retention of jurisdiction provision therein.  On the contrary, the BAWAG Settlement provides that "[t]he Parties hereby consent to the jurisdiction of the [Bankruptcy] Court . . . and agree that this shall be the exclusive jurisdiction for any action seeking to enforce or interpret the terms of this Stipulation and Order, including any issues relating to Claims Over."  BAWAG Settlement ¶ 17 (emphasis added).  Thus, only the "Parties" to the BAWAG

Settlement consented to such exclusive jurisdiction. The Plaintiffs, as non-consenting, unnamed third parties, provided no such consent and cannot be bound by the arrangement reached by other parties. See, e.g., E.E.O.C. v. Waffle House, Inc., 534 U.S. 279, 294 (2002) ("It goes without saying that a contract cannot bind a nonparty.").

Moreover, Plaintiffs' BAWAG Claims do not seek to enforce or interpret the BAWAG Settlement. Instead, BAWAG has asserted an unsustainable extension of the "claim over" protection provisions of the BAWAG Settlement as a defense to Plaintiffs' BAWAG Claims in an attempt to manufacture Bankruptcy Court jurisdiction. See Winstar, 2007 WL 4323003 at *2-*3 (applying the "well pleaded complaint" rule to core jurisdiction determinations). Courts disapprove of such strategems. See Orion Pictures Corp. v. Showtime Network, Inc. (In re Orion Pictures Corp.), 4 F.3d 1095, 1101 (2d Cir. 1993) (prevention of forum shopping is an important consideration when determining cause for withdrawing reference to bankruptcy court).

BAWAG has cited to a number of cases generally for the proposition that a bankruptcy court retains post-confirmation jurisdiction to interpret and enforce its own orders. However, in each of these cases, the central authority of the bankruptcy court was challenged. None of these cases involved -- as is the situation here -- the simple interpretation of release provisions in a settlement or plan. See Universal Oil Ltd. v. Allfirst Bank (In re Millenium SeaCarriers, Inc.), 419 F.3d 83, 96-97 (2d Cir. 2005) (bankruptcy court has jurisdiction to adjudicate maritime liens, to sell shipping assets free and clear of such liens over lienors' objections and to prioritize such liens); Tenet Health Sys. Philadelphia, Inc. v. Nat'l Union of Hosp. & Health Care Employees (In re Allegheny Health Educ. & Research Found.), 383 F.3d 169, 175-76 (3d Cir. 2004) (bankruptcy court has jurisdiction to determine which assets and liabilities were transferred pursuant to its own order approving asset purchase agreement); Luan Inv. S.E. v. Franklin 145

Corp. (In re Petrie Retail, Inc.), 304 F.3d 223, 227-30 (2d Cir. 2002) (bankruptcy court had jurisdiction to enforce its sale order and confirmation order by enjoining lessor from attempting to collect prepetition rent from assignee of lease under sale order and plan); Marconi, 363 B.R. at 368 (Bankruptcy Court had jurisdiction to determine plaintiff's request that it modify its own broad discharge injunction pursuant to former Section 304 in support of a United Kingdom scheme of arrangement to allow plaintiff's breach of employment contract action to proceed); Jamaica Shipping Co. v. Orient Shipping Rotterdam, B.V. (In re Millenium Seacarriers, Inc.), 04 Civ. 6482, 05 Civ. 2711, 2005 U.S. Dist. LEXIS 21553, at *20-22 (S.D.N.Y. Sept 28, 2005) (bankruptcy court retains jurisdiction to determine which contracts were assigned pursuant to its own judicial sale order), aff'd and remanded on other grounds, 458 F.3d 92 (2d Cir. 2006); Harlow v. Palouse Producers, Inc. (In re Harlow Prods. Inc.), 56 B.R. 794, 797-98 (9th Cir. B.A.P. 1985) (bankruptcy court has jurisdiction to hear a motion ordering a sale in accordance with a provision of its own plan confirmation order).

### B.    Plaintiffs' Claims Are Not Property of the Refco Bankruptcy Estates

BAWAG also argues that Plaintiffs' BAWAG Claims are, somehow, property of the Refco bankruptcy estates and that Plaintiffs' pursuit of their claims is allegedly in violation of the automatic stay.  BAWAG is wrong again.

#### (i)    Plaintiffs Have Not Asserted Alter Ego Claims

BAWAG incorrectly asserts that Plaintiffs' BAWAG Claims are "alter ego" claims because Plaintiffs allege that BAWAG controlled Refco.  Because alter ego claims are generally considered property of a debtor's estate, BAWAG asserts that Plaintiffs' BAWAG Claims must also be property of the Refco estates.

On the contrary, Plaintiffs have brought no alter ego claims against BAWAG.  Plaintiffs' BAWAG Claims are for aiding and abetting fraud, conspiracy, and interference with contract.

Plaintiffs have not tried to pierce Refco's corporate shield to reach BAWAG; nor have Plaintiffs attempted to make BAWAG liable for Refco's debts. See St. Paul Fire & Marine Ins. Co. v. PepsiCo, Inc., 884 F.2d 688, 702-03 (2d Cir. 1989) (although domination is an element of an alter ego claim, the crux of the action is the elimination of the separateness of the corporation and its alter ego). Instead, Plaintiffs' Complaint alleges that BAWAG is accountable for the damages to the SPhinX entities and PlusFunds caused by BAWAG's own misconduct. BAWAG's self-serving characterization of Plaintiffs' BAWAG Claims as "alter ego" claims cannot transform them into property of the Refco bankruptcy estates.

### (ii) Plaintiffs' Claims Are Distinct From Claims Brought by Refco Creditors' Committee

BAWAG further contends that, because Plaintiffs' BAWAG Claims are premised on BAWAG's participation in the "round trip loans," Plaintiffs' injuries do not differ from those of any other Refco creditor. Because Plaintiffs' injuries allegedly do not differ from those of other Refco creditors, BAWAG contends that Plaintiffs' BAWAG Claims must be property of the Refco estates. BAWAG is wrong on the law and the facts.

First, Plaintiffs do not seek to recover damages resulting from "generalized harm to all [of] Refco's creditors." BAWAG Notice of Removal, at 8. Plaintiffs seek to recover damages resulting from the theft of their money and the destruction of their business by Refco insiders, materially assisted by BAWAG and other defendants. Also, BAWAG assumes, without any meaningful analysis or support, that all claims against BAWAG based on BAWAG's participation in the Refco fraud, even if brought by third parties, are property of the Refco estates. However, if all claims based on BAWAG's participation in the Refco fraud had been property of the Refco estates, it would not have been necessary to provide BAWAG prospectively with "claim over" protection against contribution claims based on such

misconduct. <u>See</u> BAWAG Settlement ¶ 6(a)-(b). Indeed, if suits between non-debtor third parties had been property of the estates, the releases provided in the Refco plan in favor of BAWAG on behalf of the Refco estates would have been sufficient to immunize BAWAG from further suit based on BAWAG's participation in the Refco fraud.

Still more, the obviously heavily negotiated releases of BAWAG in the BAWAG Settlement and the Refco plan (discussed below) demonstrate that the rights of non-consenting, uncompensated third parties against BAWAG, such as Plaintiffs, belong to such creditors and are not property of the estate. These two documents carefully maintain the rights of action of third parties against BAWAG without consent or, in the alternative, compensation. The "Electing Creditor Release" in the BAWAG Settlement provided BAWAG with a comprehensive release, but applied only to creditors who or which accepted plan distributions from payments to Refco by BAWAG. <u>See</u> BAWAG Settlement ¶ 3. Similarly, the comprehensive release in favor of BAWAG pursuant to the Refco plan applied <u>only</u> to creditors who or which chose to accept a <u>pro rata</u> share of the settlement consideration paid by BAWAG. <u>See</u>, <u>e.g.</u>, Refco plan ¶ 10.2(e). The SPhinX funds made no such election and provided BAWAG with no such release. <u>See</u> Molton Referral Opp. Decl. Exhibit B.[4] The rights of creditors, such as Plaintiffs, that did not elect to release BAWAG or receive plan distributions based on BAWAG proceeds, were clearly preserved. These preserved claims belong to such creditors and are not property of the estate.

The cases cited by BAWAG are inapposite. They stand for the proposition, <u>in the context of claims that are indubitably property of the estate</u> (such as alter ego claims or

---

[4]    Indeed, Plaintiffs' right to assert claims against third parties was specifically preserved in the stipulation and order of settlement resolving the preference action brought by the Refco creditors' committee against the various SPhinX funds. This stipulation was so-ordered by the Bankruptcy Court on June 9, 2006. As set forth therein: "For the further avoidance of doubt, SPhinX does not release any claims or actions against any party <u>other than Refco</u>." Stipulation and Order of Settlement, (Molton Referral Opp. Decl. Exhibit A) (emphasis added). Although this stipulation provides that the Bankruptcy Court shall have exclusive jurisdiction to "enforce" its terms, <u>see id</u>. ¶ 9, BAWAG was not a party to that stipulation and its enforcement is not an issue here.

derivative claims against directors and officers), that a creditor may only assert claims against third parties that are direct (i.e., the creditor has suffered a unique injury at the hands of the third party) and may not assert claims that are derivative of the debtor's estates.  See Sobchak v. Am. Nat'l Bank & Trust Co. of Chicago (In re Ionosphere Clubs, Inc.), 17 F.3d 600, 605-07 (2d Cir. 1994) (preferred shareholders not allowed to bring derivative claims against debtor's directors and officers where such claims had been litigated and settled by trustee); St. Paul Fire & Marine Ins., 884 F. 2d at 701 (creditor seeks to hold debtor's principal liable for claim).  Given that here Plaintiffs' BAWAG Claims are not alter ego claims or claims against directors and officers, and that BAWAG has only assumed, but not established, that Plaintiffs' BAWAG Claims are property of the estate, these cases are simply inapposite.

    In any event, Plaintiffs' injuries are distinct.  BAWAG asserts that Plaintiffs' BAWAG Claims are similar in object and purpose to claims the Refco creditors' committee brought against BAWAG on behalf of the Refco estates and that this similarity somehow converts Plaintiffs' BAWAG Claims into property of the Refco estates.  This is unsustainable.  The only claim brought by the Refco creditors' committee that is even remotely similar to Plaintiffs' BAWAG Claims is a count for aiding and abetting breach of fiduciary duty.  The gravamen of the count is that certain defendants, with the assistance of BAWAG, committed improper acts, including fraud, that hid Refco's insolvency, thereby allowing a leveraged recapitalization to proceed and causing damages to Refco of $1.4 billion.  See Amended Answer, Affirmative Defenses and Counterclaims of Refco Creditors' Committee (Brick Aff. Exh. G) ¶¶ 135-40.  In contrast, the gravamen of Plaintiffs' BAWAG Claims is that, owing to BAWAG's material assistance and participation in fraudulently disguising Refco's insolvency, the SPhinX entities and PlusFunds entrusted investor funds to Refco's custody and, as a result, $263 million in

investor funds were lost, and PlusFunds' business was destroyed.  See Complaint ¶¶ 1169-84, 1195-1219.  These damages are unique to Plaintiffs.

In sum, Plaintiffs' BAWAG Claims and the claims brought by the Refco creditors' committee share no common causes of action and no common injuries.  The only common thread is BAWAG's misconduct.  They are not similar claims such that the pursuit of Plaintiffs' BAWAG Claims would constitute relitigating the claims of the Refco creditors' committee.

### C.    The Releases Granted BAWAG Under the BAWAG Settlement and the Refco Plan Do Not Convert Plaintiffs' BAWAG Claims into Core Matters

#### (i)    The BAWAG Settlement's Release Provision is Not Binding on Plaintiffs

Contrary to BAWAG's assertions, the BAWAG Settlement does not grant BAWAG a third-party release that would encompass Plaintiffs' BAWAG Claims.  BAWAG selectively quotes from the Refco parties' release in the BAWAG Settlement, which releases claims or causes of action belonging to Refco, to argue that the pursuit of Plaintiffs' BAWAG Claims implicates this provision and, therefore, creates grounds for Bankruptcy Court jurisdiction to interpret and enforce such provision.  The underpinning of BAWAG's argument is its faulty presumption that Plaintiffs' BAWAG Claims are property of the Refco estates.  They are not.

BAWAG, in making this argument, is forced to ignore the specific terms of the Electing Creditor Release in the BAWAG Settlement:

> Condition to Distribution of RGL Payments.  Any creditor of the Debtors electing or deemed to have elected by failing to opt out of a deemed election (each, an "Electing Creditor") to receive any portion of the Initial Payment, the Deferred Payment, the Contingent Payment, or the USAO Distribution (collectively, the "RGL Payments"), whether pursuant to a plan of reorganization, liquidation, or otherwise, shall be required to provide to the BAWAG Parties (as defined below) a release of all claims or actions arising from or related to Refco or the RGHI Entities, and any transactions involving such parties, including but not limited to claims or actions arising from or related to (a) the allegations set forth in the Complaint and the Counterclaim, (b) the allegations set forth in the Adversary Proceeding, or (c) any allegations that could have been made by any of the Refco

Parties, which release may be provided, among other methods, by making an election (or failing to opt out of a deemed election) on the ballot in respect of an plan of reorganization or liquidation proposed in any of the Debtors' chapter 11 cases (a "Plan") or in such other document as may be approved by the Court, or upon such other means as is necessary to accomplish the same result in the event one or more of the Debtors' bankruptcy cases is or becomes a case under chapter 7 of the Bankruptcy Code or is dismissed (the "Electing Creditor Release"); and any portion of the RGL Payments that would have been made to creditors but for their election not to receive their share of the RGL Payments shall be returned to BAWAG.

BAWAG Settlement ¶ 3.

Under this governing provision of the BAWAG Settlement, creditors granted BAWAG a comprehensive release only if they elected to accept plan distributions based on payments from BAWAG. Plaintiffs, as creditors who did not receive any Refco plan distributions from BAWAG, did not provide the "Electing Creditor Release." See Molton Referral Opp. Decl. Exhibit B. The releases in favor of BAWAG in the BAWAG Settlement accordingly do not apply to Plaintiffs' BAWAG Claims and do not in any way require that the Bankruptcy Court hear Plaintiffs' BAWAG Claims.

### (ii)    The Refco Plan Release in Favor of BAWAG Is Not Binding on Plaintiffs

The Refco plan also does not provide a broad release in favor of BAWAG that would bar Plaintiffs' BAWAG Claims. As in its contentions regarding the BAWAG Settlement, BAWAG is forced to rely on misleadingly selective quotations in an effort to support its arguments. In particular, BAWAG relies on language releasing claims that could have been asserted by or on behalf of Refco. Instead, BAWAG should have quoted the Refco plan provision specifically concerning releases in favor of BAWAG.

Releases by Recipients of BAWAG Proceeds. On the Effective Date, or in the case of Holders of RCM Securities Customer Claims and RCM FX/Unsecured Claims, the later of the Effective Date and the date at which an RCM Related Claim Subordination Form is provided (i) each Holder of a Secured Lender Claim, (ii) each Holder, that has not

affirmatively exercised its option to be excluded from any Distribution of BAWAG Proceeds prior to the Voting Deadline, of (A) a Senior Subordinated Note Claim, or (B) a Contributing Debtors General Unsecured Claim, or (iii) each Holder, that has provided an RCM Related Claim Subordination form electing to receive RCM BAWAG Proceeds, of (A) an RCM Securities Customer Claim or (B) an RCM FX/Unsecured Claim, shall be deemed to forever release, waive, and discharge all claims, demands, debts, rights, causes of action, or liabilities against BAWAG, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity, or otherwise that are based in whole or in part on any act or omission, transaction, event or other occurrence taking place on or prior to the Effective Date in any way arising from or relating to Refco or the RGHI Entities (each as defined in the BAWAG Settlement), and any transactions involving such parties, including, but not limited to, claims or actions arising from or related to (a) the allegations set forth in the Complaint and the Counterclaim (each as defined in the BAWAG Settlement), (b) the allegations set forth in the Adversary Proceeding (as defined in the BAWAG Settlement), or (c) any allegations that could have been made by any of the Refco Parties (as defined in the BAWAG Settlement).

Refco plan ¶ 10.2(e).

It is clear from this provision of the Refco plan that only creditors that received proceeds from the BAWAG Settlement are deemed to have provided a general release to BAWAG. Because Plaintiffs elected not to receive and did not receive any proceeds from the BAWAG Settlement, they are not deemed to have released BAWAG. See Molton Referral Opp. Decl. Exhibit B. Significantly, any court can interpret this plan provision (or, for that matter, other plan provisions or related settlement documents on which BAWAG relies). Simply put, BAWAG's self-serving assertions regarding the scope of the release and the provisions of the Refco plan are without merit and certainly do not support its assertion that the Bankruptcy Court has core jurisdiction over Plaintiffs' BAWAG Claims.

      **(iii)**    **The Refco Plan Confirmation Order Does Not Bar Plaintiffs'
BAWAG Claims**

BAWAG also argues that the Refco plan confirmation order enjoins Plaintiffs' BAWAG

Claims.  However, the Refco plan confirmation order only enjoins actions by creditors that are

inconsistent with the Refco plan.  <u>See</u> Findings of Fact, Conclusions of Law, and Order

Confirming the Modified Joint Chapter 11 Plan of Refco Inc. and Certain of its Direct and

Indirect Subsidiaries (Brick Aff. Exh. D) ¶ 15.  Because the BAWAG releases in the Refco plan

do not reach Plaintiffs' BAWAG Claims, the Refco plan confirmation order also does not bar

Plaintiffs' BAWAG Claims.

## II.

## THE BANKRUPTCY COURT DOES NOT HAVE "RELATED TO" JURISDICTION OVER PLAINTIFFS' BAWAG CLAIMS

Plaintiffs' BAWAG Claims can have no conceivable effect on and, therefore, are not

related to the Refco bankruptcy cases.[5]  The test for determining whether a proceeding is "related

to" a bankruptcy case is whether its outcome could have any "conceivable effect" on the

bankruptcy estate.  <u>See</u> <u>Publicker Indus., Inc. v. United States (In re Cuyohoga Equip. Corp.)</u>,

980 F.2d 110, 114 (2d Cir. 1992); <u>Amanat</u>, 338 B.R. at 579 .  While "related to" jurisdiction may

be broad, it is not limitless.  <u>See</u> <u>Celotex Corp. v. Edwards</u>, 514 U.S. 300, 398 (1995).

Plaintiffs' BAWAG Claims have been lodged against a third party, BAWAG, and not

against the Refco debtors.  Moreover, BAWAG and its affiliates <u>have</u> <u>released</u> <u>all</u> <u>claims</u> <u>against</u>

<u>the</u> <u>Refco</u> <u>debtors</u> <u>pursuant</u> <u>to</u> <u>the</u> <u>BAWAG</u> <u>Settlement</u> -- <u>including</u> <u>those</u> <u>for</u> <u>contribution</u> <u>or</u>

<u>indemnification</u>.  As the BAWAG Settlement provides:

        <u>BAWAG Parties Release</u>.  Upon occurrence of the Initial Payment Date,
        the BAWAG Parties, including any successors in interest, hereby forever

---

[5]      In this regard, Plaintiffs respectfully refer the Court to, and incorporate herein, their arguments in support
of their motion for remand/abstention that is being filed contemporaneously herewith.

release, acquit, and discharge Refco, the Committee and its members solely in their capacities as Committee members, and any of Refco's current officers and directors (to the extent listed on Attachment "B"), advisors, attorneys, and representatives, and all of their respective successors (excluding the RGHI Entities, if any, each, a "Refco Party" and, collectively, the "Refco Parties") from and against any and all claims or actions, whether direct, derivative, or otherwise, and whether known or unknown, secured or unsecured, contingent or absolute, liquidated or unliquidated, perfected or unperfected, choate or inchoate, filed or unfilled, noticed or unnoticed, or recorded or unrecorded, including, but not limited to (i) all claims relating or related to the allegations contained in the Complaint and the Counterclaim; (ii) all claims that could have been asserted in the Adversary Proceeding or any other claim that could have been brought by or on behalf of the BAWAG Parties; (iii) all claims that would be barred by principles of *res judicata* or similar preclusive principles had the claims and defenses asserted or that could have been asserted in the Adversary Proceeding been fully litigated and resulted in a final judgment or order; and (iv) all claims relating or related to the payment in the approximate amount of $50 million made by BAWAG under a guaranty issued on or about June 5, 2005 to satisfy the obligations of Refco Capital Markets, Ltd. to Rietumu Bank with respect to a certain reverse repurchase transactions (the "RB Claims") (the "BAWAG Parties Release").

BAWAG Settlement ¶ 4(b).  Accordingly, Plaintiffs' BAWAG Claims, which are not directed at the Refco debtors, will and can have no effect of any sort on the Refco debtors' estates, because BAWAG has waived any contribution or indemnification rights against the Refco debtors that might have otherwise arisen as a result of Plaintiffs' action against BAWAG.  See New York City Employees' Retirement Sys. v. Ebbers (In re Worldcom, Inc. Sec. Litig.), 293 B.R. 308, 318 (S.D.N.Y. 2003) (only those contribution or indemnification claims having a reasonable legal basis may constitute grounds for related to jurisdiction).[6]  Thus, the pursuit of Plaintiffs' BAWAG Claims will have no effect on distributions to other creditors of the Refco debtors.

---

[6]      Nor has BAWAG asserted as a basis for "related to" jurisdiction a purported contribution or indemnification right against Refco, as have some of the other removing defendants.  Plaintiffs show in their contemporaneous remand/abstention motion that such a purported indemnification or contribution right cannot form the basis of "related to" jurisdiction.  But, BAWAG never even asserts such a right.

Also, the only possible administrative effect on the Refco bankruptcy cases of Plaintiffs' BAWAG Claims would arise only if BAWAG were to succeed in requiring the Bankruptcy Court to adjudicate its meritless assertions regarding the release and related provisions of the BAWAG Settlement and the Refco plan, but this cannot form a legitimate basis for related to jurisdiction.  See Orion, 4 F.3d at 1101 (avoidance of forum shopping an important consideration in jurisdictional determinations); Sunbrite Cleaners, 284 B.R. at 342  (state courts are perfectly well suited to interpret plan).

Moreover, BAWAG effectively concedes that "related to" jurisdiction is not present.  In its Motion, BAWAG has not identified, let alone demonstrated, a single impact on the Refco bankruptcy cases.  In place of actual effects, BAWAG has simply reiterated its arguments in support of core jurisdiction – that Plaintiffs' BAWAG Claims call into question provisions of the BAWAG Settlement and Refco plan that will require interpretation by the Bankruptcy Court and that Plaintiffs' BAWAG Claims are, somehow, property of the Refco estates.   Plaintiffs' BAWAG Claims can have no effect on the Refco bankruptcy cases.  "Related to" jurisdiction is simply not present.

## III.

### IN THE ALTERNATIVE, SHOULD THE COURT DETERMINE THAT BANKRUPTCY JURISDICTION IS PRESENT WITH RESPECT TO PLAINTIFFS' BAWAG CLAIMS, THE COURT SHOULD NONETHELESS WITHDRAW THE REFERENCE

In the alternative, and without prejudice to Plaintiff's motion to remand and/or for abstention, in the event that this Court determines that the Bankruptcy Court has jurisdiction over

the Plaintiffs' BAWAG Claims, the Court should nonetheless withdraw the reference.[7] "The district court may withdraw, in whole or in part, any case or proceeding referred under this section [157], on its own motion or on timely motion of any party, for cause shown."  28 U.S.C. § 157(d).  Under the circumstances, there is ample, indeed compelling, cause for permissive withdrawal of the reference.

Cause for withdrawal of the reference is not defined in the Bankruptcy Code; however, courts in the Second Circuit consider the following factors in making the necessary determination: (i) whether the claim is core or non-core; (ii) whether the claim is legal or equitable in nature; and (iii) considerations of efficiency, prevention of forum shopping, and uniformity in the administration of bankruptcy law.  See Orion, 4 F.3d at 1101.  The determination should be a two-step process, with determination of the core/non-core issue as the first step, because the result weighs on the consideration of efficiency.  See id.; Enron Power Mktg. v. City of Santa Clara (In re Enron Power Mktg, Inc.), 02 Civ. 7694, 2003 U.S. Dist. LEXIS 189, at *20 (S.D.N.Y. Jan 8, 2003)  If the claim is non-core, the Bankruptcy Court will not be able to conduct a jury trial.  See Orion, 4 F.3d at 1101 (noting that the Constitution prohibits bankruptcy courts from holding jury trials in non-core matters).  Also, the Bankruptcy Court's rulings will be subject to de novo review by the District Court pursuant to Section 157(c).  See id.

First, as discussed above, Plaintiffs' BAWAG Claims are clearly not core matters.  Plaintiffs' BAWAG Claims are all state common law torts.  These claims neither "arise under" nor "arise in" a bankruptcy case.  See Winstar, 2007 WL 4323003, at *2; cf. Luan Inv., 304 F.3d at 229-30 (contract dispute between third parties determined to be core because litigant defied

---

[7]    At the Court's direction, and to the extent necessary, Plaintiffs will file a formal motion for withdrawal of the reference with respect to Plaintiffs' BAWAG Claims should they be referred to the Bankruptcy Court.

bankruptcy court sale order and litigant's action had direct impact on adjudication of litigant's claim before bankruptcy court).

Second, Plaintiffs' BAWAG Claims do not seek equitable relief. Plaintiffs' have demanded a jury trial, as is their right, given that the Complaint asserts causes of action that (i) historically could have been brought in a court of law, (ii) are legal and not equitable in nature, and (iii) involve private as opposed to public rights. See Granfinanciera, S.A. v. Nordberg, 492 U.S. 33, 42, 51 (1989); Germain v. Connecticut Nat'l Bank, 988 F.2d 1323, 1328 (2d Cir. 1993) (tortious interference claims have historically been tried in common law courts); In re Crown Vantage, Inc., No. 02-03836, 2002 WL 32872440, at *2-3 (N.D. Cal. Dec. 16, 2002) (claim for aiding and abetting fraud historically tried in common law court and is legal in nature); Anderson v. Simchon (In re S. Textile Knitters, Inc.), 236 B.R. 207, 212 (Bankr. D.S.C. 1999) (jury trial right attaches to claim for civil conspiracy); see also Feltner v. Columbia Pictures Television, Inc., 523 U.S. 340, 352 (1998) (claim for money damages is legal rather than equitable in nature).

Third, because (i) Plaintiffs' BAWAG Claims are non-core matters for which a jury trial will need to be conducted[8] and (ii) final determinations of the Bankruptcy Court will be subject to de novo review by the District Court, withdrawal of the reference would be in the interest of judicial efficiency.[9] Moreover, Plaintiffs' BAWAG Claims are ordinary state common law tort claims, and BAWAG's anticipated defenses based on the BAWAG Settlement and the Refco plan are ordinary matters of contract interpretation. Accordingly, the special expertise of the

---

[8]    Even if Plaintiffs' BAWAG Claims were deemed to be core matters, the analysis is the same. Plaintiffs do not consent to the conduct of a jury trial before the Bankruptcy Court. See 28 U.S.C. § 157(e) ("[T]he bankruptcy court may conduct the jury trial . . . with the consent of all parties.").

[9]    Moreover, even if core, the interests of judicial economy will not be served by referring Plaintiffs' BAWAG Claims to the Bankruptcy Court for resolution separate from the proceedings against the other defendants.

- 23 -

Bankruptcy Court is not called for.  Further, the avoidance of forum shopping factor also weighs in favor of withdrawing the reference.  BAWAG has put a strained interpretation on the provisions of the BAWAG Settlement and the Refco plan in an apparent hope to find a more favorable reception to its contentions in the Bankruptcy Court.  Such an attempt at forum shopping should be resisted.  Finally, adjudication of Plaintiffs' BAWAG Claims in the Bankruptcy Court will not promote uniformity in the administration of bankruptcy law.  Plaintiffs' BAWAG Claims raise no issues of bankruptcy law.

## CONCLUSION

For the reasons set forth herein, BAWAG'S Motion to refer Plaintiffs' BAWAG Claims

to the Bankruptcy Court is without merit and should be denied.

Dated: New York, New York
        April 25, 2008

                                    BROWN RUDNICK BERLACK ISRAELS LLP

                                    By: /s/ David Molton
                                        David Molton (DM-1106)
                                        Andrew Dash (AD-7913)

                                    7 Times Square
                                    New York, New York 10036
                                    Tel.: (212) 209-4800
                                    Fax: (212) 209-4801
                                    dmolton@brownrudnick.com
                                    adash@brownrudnick.com

                                                and

                                    BEUS GILBERT PLLC
                                    Leo Beus
                                    Dennis Blackhurst
                                    4800 North Scottsdale Road
                                    Suite 6000
                                    Scottsdale, AZ  85251
                                    Telephone: (480) 429-3000
                                    Facsimile: (480) 429-3100
                                    lbeus@beusgilbert.com
                                    dblackhurst@beusgilbert.com

                                    Attorneys for Plaintiffs

8181808v4

- 25 -