David Molton, Esq. (DM 1106)
Andrew Dash, Esq. (AD 7913)
**BROWN RUDNICK LLP**
Seven Times Square
New York, New York 10036
Telephone: (212) 209-4800

Leo R. Beus, Esq. *pro hac vice*
Dennis K. Blackhurst, Esq. *pro hac vice*
**BEUS GILBERT PLLC**
4800 North Scottsdale Road, Suite 6000
Scottsdale, Arizona 85251
Telephone: (480) 429-3000

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------X
                      :
In re REFCO INC. SECURITIES LITIGATION   :   Case No. 07-md-1902 (GEL)
                      :
-------------------------------------------------------------------X

This Document Relates to:

-------------------------------------------------------------------X
KENNETH M. KRYS and CHRISTOPHER   :
STRIDE, as JOINT OFFICIAL LIQUIDATORS   :
of SPHINX LTD., SPHINX STRATEGY FUND   :   Case No. 08-cv-3065 (GEL)
LTD.;   :   Case No. 08-cv-3086 (GEL)
SPHINX PLUS SPC LTD., SPHINX   :   ECF Case
DISTRESSED LTD., SPHINX MERGER   :
ARBITRAGE LTD.; SPHINX SPECIAL   :   **PLAINTIFFS' REPLY**
SITUATIONS LTD., SPHINX MACRO LTD.;   :   **MEMORANDUM OF LAW**
SPHINX LONG/SHORT EQUITY LTD.;   :   **IN FURTHER SUPPORT OF**
SPHINX MANAGED FUTURES LTD.; SPHINX   :   **MOTION FOR REMAND**
EQUITY MARKET NEUTRAL LTD.; SPHINX   :   **AND/OR ABSTENTION**
CONVERTIBLE ARBITRAGE LTD.; SPHINX   :
FIXED INCOME ARBITRAGE LTD.; SPHINX   :
DISTRESSED FUND SPC; SPHINX MERGER   :
ARBITRAGE FUND SPC; SPHINX SPECIAL   :
SITUATIONS FUND SPC; SPHINX MACRO   :
FUND SPC; SPHINX LONG/SHORT EQUITY   :
FUND SPC; SPHINX MANAGED FUTURES   :
FUND SPC; SPHINX EQUITY MARKET   :
NEUTRAL FUND SPC; SPHINX   :
CONVERTIBLE ARBITRAGE FUND SPC;   :
SPHINX FIXED INCOME ARBITRAGE FUND   :
SPC; PLUSFUNDS MANAGED ACCESS FUND   :
SPC LTD.; KENNETH M. KRYS and   :

CHRISTOPHER STRIDE as assignees of claims         :
assigned by MIAMI CHILDREN'S HOSPITAL             :
FOUNDATION, OFI, GREEN & SMITH                    :
INVESTMENT MANAGEMENT LLC, THALES                 :
FUND MANAGEMENT LLC, KELLNER                      :
DILEO & CO., LLC, MARTINGALE ASSET                :
MANAGEMENT LP, LONGACRE FUND                      :
MANAGEMENT LLC, ARNHOLD & S.                      :
BLEICHROEDER ADVISERS LLC, PICTET &               :
CIE, RGA AMERICA REINSURANCE                      :
COMPANY, DEUTSCHE BANK (SUISSE) SA,               :
ARAB MONETARY FUND, HANSARD                       :
INTERNATIONAL LTD., CONCORDIA                     :
ADVISORS LLC, GABELLI SECURITIES, INC.,           :
CITCO GLOBAL CUSTODY; and JAMES                   :
P. SINCLAIR as Trustee of the SPHINX TRUST,       :
                                                  :
                    Plaintiffs,                   :
                                                  :
                  -against-                       :
                                                  :
CHRISTOPHER SUGRUE; MARK                          :
KAVANAGH; BRIAN OWENS;                            :
PRICEWATERHOUSECOOPERS L.L.P.; MARI               :
FERRIS; PRICEWATERHOUSECOOPERS                    :
CAYMAN ISLANDS; GIBSON, DUNN &                    :
CRUTCHER LLP; REFCO ALTERNATIVE                   :
INVESTMENTS LLC; GRANT THORNTON                   :
LLP; MARK RAMLER; ERNST & YOUNG U.S.              :
LLP; MAYER BROWN LLP f/k/a MAYER                  :
BROWN ROWE & MAW LLP; JOSEPH                      :
COLLINS; EDWARD S. BEST; PAUL KOURY;              :
PHILLIP R. BENNETT; ROBERT C. TROSTEN;            :
TONE GRANT; SANTO MAGGIO; THOMAS                  :
HACKL; DENNIS KLEJNA; BAWAG P.S.K.                :
BANK FUR ARBEIT UND WIRTSCHAFT UND                :
OSTERREICHISCHE POSTPARKASSE                      :
AKTIENGESELLSEHAFT; JP MORGAN                     :
CHASE & CO.;                                      :
CREDIT SUISSE SECURITIES                          :
(USA) LLC f/k/a CREDIT SUISSE FIRST               :
BOSTON LLC; BANC OF AMERICA                       :
SECURITIES LLC; THOMAS H. LEE                     :
PARTNERS, L.P.; THOMAS H. LEE                     :
ADVISORS, LLC; THL MANAGERS V, LLC;               :
THL EQUITY ADVISORS V, L.P.; THOMAS H.            :
LEE EQUITY FUND V, L.P.; THOMAS H. LEE            :
PARALLEL FUND V, L.P.; THOMAS H. LEE              :
EQUITY (CAYMAN) FUND V, L.P.; THOMAS              :

H. LEE INVESTORS LIMITED PARTNERSHIP;          :
1997 THOMAS H. LEE NOMINEE TRUST;              :
THOMAS H. LEE; DAVID V. HARKINS;              :
SCOTT L. JAECKEL; SCOTT A. SCHOEN;            :
WILLIAM T. PIGOTT; LIBERTY CORNER             :
CAPITAL STRATEGIES, LLC; EMF                  :
FINANCIAL PRODUCTS LLC; EMF CORE              :
FUND LTD.; DELTA FLYER FUND LLC; ERIC         :
M. FLANAGAN; INGRAM MICRO, INC.; CIM          :
VENTURES, INC.; BECKENHAM TRADING             :
CO., INC.; ANDREW KRIEGER; COAST              :
ASSET MANAGEMENT, LLC, f/k/a COAST            :
ASSET MANAGEMENT LP; CS LAND                  :
MANAGEMENT LLC; CHRISTOPHER                   :
PETTIT; and REFCO GROUP HOLDINGS,             :
INC.; and REFCO ASSOCIATES, INC.,             :
                                              :
        Defendants                            :
-----------------------------------------------------------------X

## TABLE OF CONTENTS

                                                                                                                    **Page**

TABLE OF AUTHORITIES ...................................................................................... ii

I.     THE COURT DOES NOT HAVE SUBJECT MATTER JURISDICTION
       OVER PLAINTIFFS' COMPLAINT .................................................................1

       A.     Plaintiffs' Complaint Is Not Related To The PlusFunds' Bankruptcy ..................2

              1.     The PlusFunds Plan Did Not Retain Jurisdiction over Plaintiffs'
                     Causes of Action ...........................................................................2

              2.     There Is No "Close Nexus" to the PlusFunds Bankruptcy .........................4

              3.     There Can Be No Reasonable Argument over Ownership of the
                     Causes of Action ...........................................................................5

       B.     Plaintiffs' Complaint Is Not Related to the SPhinX Chapter 15 ............................6

       C.     Plaintiffs' Complaint Is Not Related to the Refco Bankruptcy .............................7

II.    IF THE COURT FINDS THAT JURISDICTION EXISTS, THE CASE
       SHOULD BE REMANDED UNDER ABSTENTION OR EQUITABLE
       REMAND PRINCIPLES ...................................................................................8

III.   PLAINTIFFS' CLAIMS AGAINST BAWAG DO NOT CONSTITUTE A
       CORE PROCEEDING UNDER 28 U.S.C. § 1334(b) .......................................12

       A.     The "Claim Over" Provisions of the BAWAG Settlement Do Not
              Convert Plaintiffs' State Law Claims Into Core Matters.....................................13

              1.     Bankruptcy Court Involvement Is Not Required to Interpret the
                     "Claim Over" Provision...................................................................13

              2.     BAWAG Misconstrues the Reach of the BAWAG Settlement's
                     "Claim Over" Protection..................................................................15

              3.     The "Claim Over" Protection Cannot Apply to PlusFunds' Injury ...........17

              4.     The BAWAG Settlement's Retention of Jurisdiction Provision
                     Does Not Bind Plaintiffs or Create Bankruptcy Core Jurisdiction...........17

IV.    PLAINTIFFS' CLAIMS AGAINST BAWAG ARE NOT PROPERTY OF THE
       REFCO ESTATES ............................................................................................18

       A.     Plaintiffs' Claims Are Distinct from the Creditors' Committee Claims ..............18

       B.     Plaintiffs Have Not Asserted Alter Ego Claims ...............................................19

V.     CONCLUSION..............................................................................................20

## **TABLE OF AUTHORITIES**

**Page**

**Cases**

*19 Court St. Assocs. LLC v. Resolution Trust Corp. (In re 19 Court St. Assoc. LLC)*,
190 B.R. 983 (Bankr. S.D.N.Y. 1996) ...................................................... 7

*176-60 Union Turnpike v. Howard Beach Fitness Ctr., Inc.*, 209 B.R. 307
(S.D.N.Y. 1997) ........................................................................................ 8

*In re Altchek*, 119 B.R. 31 (Bankr. S.D.N.Y 1990) ......................................... 12

*Binder v. Price Waterhouse & Co. LLP. (Binder v. Price Waterhouse & Co. LLP, (In re
Resorts Int'l, Inc.)*, 372 F.3d 154 (3d Cir. 2004) ................................. 2, 4

*In re Bd. of Dirs of Hopewell Int'l Ins. Ltd.*, 238 B.R. 25 (Bankr. S.D.N.Y. 1999) ............... 7

*Bogdan & Faist, P.C. v. CAI Wireless Sys.* 295 A.D.2d 849, 745 N.Y.S.2d 92 (3d Dep't
2002)........................................................................................................ 15

*Buechner v. Avery*, 2005 WL 3789110 (S.D.N.Y. July 8, 2005) ........................ 10

*In re Cuyahoga Equip. Corp.*, 980 F.2d 110 (2d Cir. 1992) .................. 6

*Digital Satellite Lenders, LLC v. Ferchill*, 2004 WL 1794502
(S.D.N.Y. Aug. 10, 2004).................................................................... 9, 10

*Drexel Burnham Lambert Group v. Vigilant Ins. Co.*, 130 B.R. 405
(S.D.N.Y. 1991) ...................................................................................... 10

*Enron Corp. v. Citigroup, Inc. (In re Enron Corp.)*, 353 B.R. 51 (Bankr. S.D.N.Y.
2006).......................................................................................................... 7

*Fallick v. Kehr*, 369 F.2d 899 (2d Cir. 1966) .......................................... 15

*In re Federal-Mogul Global, Inc.*, 300 F.3d 368 (3d Cir. 2002) ................ 8

*Gassman v. Gassman, Griper & Golodny*, 97 Civ. 0093, 1997 U.S. Dist. LEXIS 14850
(S.D.N.Y. Sept. 25, 1997) ...................................................................... 12

*Gen. Elec. Capital Corp. v. Por-Fac Coop., Inc.*, 2002 WL 1300054 (S.D.N.Y. June 11,
2002)........................................................................................................7-8

*Gulf States Exploration Co. v. Manville Forest Prods. Corp. (In re Manville Forest
Prods. Corp.)*, 896 F.2d 1384 (2d Cir. 1990) .................................... 13

*In re Holland Indus. Inc.*, 103 B.R. 461 (Bankr. S.D.N.Y. 1989).................. 8

*ICCO Design/Build, Inc. v. Sunbrite Cleaners, Inc. (In re Sunbrite Cleaners, Inc.)*, 284
B.R. 336 (N.D.N.Y. 2002) ...................................................................... 15

*IIG Capital LLC v. Wollmuth Maher & Deutsch, LLC (In re Amanat)*, 338 B.R. 574
(Bankr. S.D.N.Y. 2005)....................................................................... 1, 13

*Interconnect Tel. Servs., Inc. v. Farren*, 59 B.R. 397 (S.D.N.Y. 1986) ........................... 12, 13

*Jamaica Shipping Co. v. Orient Shipping Rotterdam, B.V. (In re Millenium Seacarriers,
Inc.)*, 2005 U.S. Dist. LEXIS 21553 (S.D.N.Y. Sept. 28, 2005)...................... 17

*JMB Capital Partners, L.P. v. CRT Capital Group LLC (In re NTL, Inc.)*, 295 B.R. 706 (Bankr. S.D.N.Y. 2003)..................................................................................... 15

*Kalb, Voorhis & Co. v. Am. Fin. Corp.*, 8 F.3d 130 (2d Cir. 1993) ....................................... 19

*Kassover v. Prism Venture Partners LLC (In re Kassover)*, 336 B.R. 74 (Bankr. S.D.N.Y. 2006)....................................................................................................... 2

*Kirschner ex rel. Refco Private Actions Trust v. Bennett*, 2008 WL 1990669 (S.D.N.Y. May 7, 2008) ................................................................................... 1, 2, 4, 5, 9

*Kirschner v. Grant Thornton, LLP,* 2008 WL 1827644 (S.D.N.Y. Apr. 21, 2008) ................ 1, 2, 4, 5, 9

*LFD Operating, Inc. v. Gen. Elec. Capital Corp. (In re Ames Dep't Stores, Inc.)*, 2006 WL 1288586 (Bankr. S.D.N.Y. Apr. 19, 2006) ................................................ 13

*Liberty Mut. Ins. Co. v. Lone Star Indus,* 313 B.R. 9 (D. Conn. 2004).................................. 15

*Luan Inv. S.E. v. Franklin 145 Corp. (In re Petrie Retail, Inc.)*, 304 F.3d 223 (2d Cir. 2002)....................................................................................... 9, 17

*In re Luis Elec. Contracting Corp.*, 100 B.R. 155 (E.D.N.Y. 1989) ....................................... 12

*Mt. McKinley Ins. Co. v. Corning, Inc.*, 399 F.3d 436 (2d Cir. 2005)..................................... 14

*Nat'l Am. Ins. Co. v. Ruppert Landscaping Co.*, 187 F.3d 439 (4th Cir. 1999) ...................... 14

*Norkin v. DLA Piper Rudnick Gray Cary LLP*, 2006 WL 839079 (S.D.N.Y. Mar. 31, 2006)........................................................................................................... 11

*Osanitsch v. Marconi PLC (In re Marconi PLC)*, 363 B.R. 361 (S.D.N.Y. 2007) .............. 6, 12

*Pacor, Inc. v. Higgins*, 743 F.2d 984 (3d Cir. 1984) ........................................................... 6, 12

*Penthouse Media Group v. Guccione (In re General Media, Inc.)*, 335 B.R.66 (Bankr. S.D.N.Y. 2005).................................................................................... 1-2

*Sobchak v. Am. Nat'l Bank & Trust Co. (In re Ionosphere Clubs)*, 17 F.3d 600 (2d Cir. 1994)............................................................................................................. 19

*St. Paul Fire & Marine Ins. Co. v. Pepsico, Inc.*, 884 F.2d 688 (2d Cir. 1989).............. 19, 20

*Steel Workers Pension Trust v. Citigroup, Inc.*, 295 B.R. 747 (E.D.Pa. 2003)....................... 8

*Stoe v. Flaherty*, 436 F.3d 209 (3d Cir. 2006)................................................................. 10, 14

*Steyr-Daimler-Puch of Am. Corp. v. Pappas*, 852 F.2d 132 (4th Cir. 1988) ........................ 19

*Wechsler v. Squadron, Ellenoff, Plesent & Sheinfeld LLP*, 201 B.R. 635 (S.D.N.Y. 1996).................................................................................................................. 12

*Winstar Holdings, LLC v. Blackstone Group L.P.*, No. 07 Civ. 4634, 2007 WL 4323003 (S.D.N.Y. Dec. 10, 2007) ...........................................................................12-13, 17

## Statutes

28 U.S.C. § 157(b)(2)(B) .......................................................................................................... 13

28 U.S.C. § 1334(b) ............................................................................................................ 6, 12

28 U.S.C. § 1334(c)(2) ............................................................................................................... 9

Plaintiffs respectfully submit their Reply Memorandum of Law (the "Reply") in Further Support of their Motion for Remand and/or Abstention (the "Motion").[1]

## I.    THE COURT DOES NOT HAVE SUBJECT MATTER JURISDICTION OVER PLAINTIFFS' COMPLAINT.

Plaintiffs recognize that there are certain underlying factual and procedural commonalities between this case and two recent decisions by the Court involving cases in the Refco Securities MDL.[2] But, Defendants, buoyed by success in these two recent remand challenges, overstate these commonalities and mischaracterize Plaintiffs' Complaint as "identical" with those two Refco matters. In doing so, Defendants ignore critical factual and legal distinctions that compel a different result here. This case is distinguishable from *Kirschner I* and *II*, and there is no basis for "related to" jurisdiction.

The Removing Defendants' Notice was based solely upon "related to" jurisdiction.  In this Circuit, "related to" actions are those which "involve claims whose 'outcomes could conceivably have any effect on the estate being administered in bankruptcy.'"  *IIG Capital LLC v. Wollmuth Maher & Deutsch, LLP (In re Amanat)*, 338 B.R. 574, 579 (Bankr. S.D.N.Y. 2005) (citations omitted).  No such effect "on [an] estate being administered in bankruptcy" is present here.  Moreover, many cases hold that once confirmation occurs, the bankruptcy court's jurisdiction "shrinks."  *See, e.g., Penthouse Media Group v. Guccione (In re General Media, Inc.)*, 335 B.R. 66, 73 (Bankr. S.D.N.Y. 2005).  This Court, citing First Circuit authority it found persuasive, and noting the absence of Second Circuit authority on this point, indicated in *Kirschner II* that the diminished jurisdiction applies in post-confirmation reorganization case, but not in post-confirmation liquidation proceedings (such as the PlusFunds case).  *See* 2008 WL 1990669, at *5.  If the bankruptcy court's jurisdiction has been

---

[1]  On May 27, 2008, Defendant BAWAG filed its Opposition to Plaintiffs' Motion ("BAWAG Opp.") and the other Removing Defendants filed a separate Opposition ("Removing Def. Opp.").  With leave of the Court, Plaintiffs submit one consolidated Reply.  Defendant BAWAG alleges "arising in" and "arising under" jurisdiction, while joining in the other Removing Defendants' arguments.  Accordingly, Sections I and II below address arguments raised by Removing Defendants and BAWAG, while Sections III and IV below address arguments unique to BAWAG.

[2]  *Kirschner v. Grant Thornton, LLP*, 2008 WL 1827644 (S.D.N.Y. Apr. 21 2008) ("*Kirschner I*"); *Kirschner ex rel. Refco Private Actions Trust v. Bennett*, 2008 WL 1990669 (S.D.N.Y. May 7, 2008) ("*Kirschner II*").

reduced post-confirmation, a party invoking bankruptcy court post-confirmation jurisdiction must satisfy two requirements: first, the matter must have a "close nexus" to the bankruptcy, and second, the plan must provide for "retention of jurisdiction" over the dispute. *Kassover v. Prism Venture Partners, LLC (In re Kassover)*, 336 B.R. 74, 79 (Bankr. S.D.N.Y. 2006. Under either the "close nexus" or "any conceivable effect" standard, no "related to" jurisdiction is present here.

### A.    Plaintiffs' Complaint Is Not Related To The PlusFunds' Bankruptcy.

The PlusFunds bankruptcy does not support "related to" jurisdiction. Defendants argue that the same facts and circumstances exist here as in *Kirschner I* and *II* because both involve state law actions where estate claims were transferred to a litigation trust after confirmation of a liquidating Chapter 11 Plan. However, Defendants fail to appreciate - or even address - critical differences here.

### 1.    The PlusFunds Plan Did Not Retain Jurisdiction Over Plaintiffs' Causes of Action.

In *Kirschner I* and *Kirschner II*, the Court noted that the Refco Plan had expressly reserved jurisdiction. *See Kirschner I*, 2008 WL 1827644, at *9; *Kirschner II*, 2008 WL 1990669, at *4. The PlusFunds Plan contains no such reservation.[3]

Defendants rely on a tortured interpretation of a catch-all jurisdictional section in the PlusFunds Plan, arguing that Article XI § V provides for retention of jurisdiction over Plaintiffs' action: "the Bankruptcy Court shall have jurisdiction of matters arising out of, and related, to the Chapter 11 case and the Plan . . . among other things, to . . . (V) hear and act on any other matter not inconsistent with the Bankruptcy Code." *See* Removing Def. Opp. at 12. The cited text does not mean what Defendants assert. The catch-all simply means that the Bankruptcy Court is to have jurisdiction over matters consistent with the Bankruptcy Code and to which an intent to retain jurisdiction is expressed. *See Binder v. Price Waterhouse & Co., LLP (In re Resorts Int'l, Inc.)*, 372 F.3d 154, 161 (3d Cir. 2004). For example, Article XI expressly provides for retention of jurisdiction to "hear and determine the

Avoidance Actions and Preference Claims by the SPhinX Trustee on behalf of the SPhinX Trust."  No such reservation is made with respect to the "Causes of Action," even though the Plan refers to them throughout.  If the Plan intended to reserve jurisdiction over Causes of Action, it would have done so.  Moreover, under Defendants' interpretation of the catch-all, any other reservation of jurisdiction in the Plan would be redundant.

Moreover, Defendants' interpretation clashes with the rest of the PlusFunds Plan, which provides that "[u]pon completion of the transfer of the Causes of Action into the SPhinX Trust, the Debtor and the General Trust will have no interest in, or with respect to, such assets or the SPhinX Trust . . . ."  Art. VI, § F.2 (emphasis added).  The Plan further provides:  "[t]he powers of the SPhinX Trustee to administer the SPhinX Trust shall, without any further Bankruptcy Court approval in each of the following cases, including *inter alia* . . . (c) the power to prosecute, compromise, or settle objections to Causes of Action . . . .."  Art. VI, § F.5.  That section goes on to provide that "[t]he SPhinX Trustee, on behalf of the SPhinX Trust, shall have the absolute discretion to investigate, pursue or not to pursue, or to settle" all Causes of Action vested in the Trust, and "The SPhinX Trustee need not obtain an order or approval of the Bankruptcy Court, or account to the Bankruptcy Court, concerning the taking of any action or exercise of any power, rights or discretion conferred hereunder . . . ."  *Id.*  Given that the Plan goes to great lengths to ensure the SPhinX Trust's independence, it is wholly inconsistent to argue that the Bankruptcy Court intended to retain jurisdiction to review and judge the exercise of the Trust's powers.

Defendants also argue that because the Trustee sought pre-litigation discovery under Bankruptcy Rule 2004, he has implicitly admitted that the bankruptcy court retained jurisdiction over these Causes of Action.  That is nonsense.  The PlusFunds Plan expressly provides for jurisdiction over the SPhinX Trustee's use of Bankruptcy Rule 2004 exams.  *See, e.g.*, Art. VI, § F.5.  This express

---

[3]  All citations to the PlusFunds Plan refer to the Fifth Amended Plan of Liquidation of PlusFunds Group, Inc. under Chapter 11 of the United States Bankruptcy Code, dated June 28, 2007.

reservation proves Plaintiffs' point:  when the Plan reserved jurisdiction over Rule 2004 examinations, it did so specifically -- in contrast to its silence with respect to jurisdiction over the claims substantively.

### 2.    There Is No "Close Nexus" to the PlusFunds Bankruptcy.

As illustrated above and as demonstrated in Plaintiffs' opening memorandum, there is no nexus between Plaintiffs' Causes of Action and the PlusFunds bankruptcy, let alone a "close nexus."

First, PlusFunds relinquished all rights to the Causes of Action vested in the SPhinX Trust.  In *Kirschner I*, the court found it compelling that the Refco Plan provided that "the Litigation Trustee shall be a representative of the [e]states . . . with respect to the [c]ontributed [c]laims" and that the Litigation Trustee "shall be deemed the successor-in-interest to each of the [c]ontributing [d]ebtors." 2008 WL 1827644, at *8 (citations omitted).  In contrast, the PlusFunds Plan provides that the estate has "relinquished any and all rights in and to the Assets . . . vested . . . in the SPhinX Trust."  The Plan further states that "[n]either the General Trust nor the SPhinX Trust shall be deemed a successor-in-interest of the Debtor for any purpose" (except for certain purposes irrelevant here).  Art. VI, § C.

Further, the Court in *Kirschner I* found that a sufficient nexus existed, in part, because funds recovered by the trustee were to be distributed to Refco's unsecured creditors.  2008 WL 1827644, at *9.  Similarly, in *Kirschner II*, the Refco litigation trust beneficiaries simply "contributed" their claims to the Private Actions Trust in exchange for interests in that Trust.  2008 WL 1990669, at *2.  Here, the PlusFunds estate sold the Causes of Action to the SPhinX Trust for valuable consideration, and the SPhinX Trust beneficiaries are not simply the former holders of claims against the PlusFunds estate. PlusFunds' beneficiaries benefited from the $5 million paid, as they would benefit from any other sold asset, but they have no continuing interest in the sold Causes of Action.  *See Resorts Int'l*, 372 F.3d at 169 ("deliberate act" of disposing of litigation claims weakens jurisdictional nexus).  Any recoveries here will inure solely to the SPhinX Trust -- and not to PlusFunds' creditors.

The Court also found it important in *Kirschner II* that the Private Actions Trust was funded by

loans from the Refco Litigation Trust, and that its ability to repay its loan obligation could affect the assets of the litigation trust and, consequently, creditor recoveries through the litigation trust. Accordingly, a causal chain linked the resolution of the trust claims with the Refco estate. *See* 2008 WL 1990669, at *6. In this case, there are no outstanding loans implicating the PlusFunds estate and therefore no causal link (the SPhinX Trust is not funded by the PlusFunds estate). Any recovery by the SPhinX Trust will accrue solely to the JOLs.[4]

### 3.    There Can Be No Reasonable Argument over Ownership of the Causes of Action.

Notwithstanding Defendants' arguments, there can be no reasonable dispute over ownership of Plaintiffs' Causes of Action. This is not a case where the SPhinX Trust was established simply to alleviate the debtor from bankruptcy oversight without waiting for the resolution of litigation claims. *Cf. Kirschner I*, 2008 WL 1827644, at *10. SPhinX paid over $5 million for the PlusFunds Causes of Action, and no one in the PlusFunds bankruptcy objected to that purchase. The PlusFunds Plan defines the "Causes of Action" as "all of the Debtor's legal and equitable interest in any claim" and the "right to recover anything of value" which are "to be assigned to and vested in the SPhinX Trust pursuant to the Plan."[5] *See* Art. I, § B.18. The Plan goes on to state that "[t]he JOLs on behalf of the SPhinX Funds shall be the exclusive beneficiaries of the SPhinX Trust which shall be vested with the Causes of Action." Art. III, § B.3.B. Finally, the Plan provides that the "causes of action shall be transferred to, and vest in, the SPhinX Trust free and clear of any Claim, Lien and Equity Interest" and that the PlusFunds Debtor will "have no interest in, or with respect to, such assets or the SPhinX Trust . . ." *See* Art. VI, § F.2. These Causes of Action belong solely to the SPhinX Trust, and the prosecution of the Causes of Action, regardless of outcome, will have no effect on the PlusFunds bankruptcy.

---

[4] The "any conceivable effect" requirement is the bedrock prerequisite of "related to" jurisdiction, regardless of whether the claims arise pre- or post-confirmation. The fact that the PlusFunds Plan created the SPhinX Trust or that the Causes of Action originally belonged to the PlusFunds estate is not dispositive. The critical inquiry is this: Might the prosecution of those Causes of Action have an effect on the PlusFunds Plan or bankruptcy? To the extent the Court employs the "any conceivable effect" approach, and not the "close nexus" analysis, the factors discussed above compels the conclusion that Plaintiffs' Causes of Action can have no "conceivable effect" on the PlusFunds bankruptcy.

**B.**    **Plaintiffs' Complaint Is Not Related to the SPhinX Chapter 15.**

Defendants continue to assert that Plaintiffs' action is also related to the SPhinX "bankruptcy," arguing that it is "happenstance" that the proceeding in the U.S. is under Chapter 15 rather than Chapter 11.   Defendants misapprehend the limited nature of Chapter 15 proceedings.   SPhinX's Cayman Islands proceeding is a voluntary liquidation, not a "bankruptcy" as that term is used in the United States.   The Chapter 15 is ancillary and does not "implicate[] the full range of procedural and substantive provisions applicable to domestic bankruptcies."   *Osanitsch v. Marconi PLC (In re Marconi PLC*, 363 B.R. 361, 365 (S.D.N.Y. 2007) (Lynch, J.).   There is no "estate" in such proceedings.   *Id.*   Because the critical inquiry in determining "related to" jurisdiction is whether the "outcome might have any 'conceivable effect' on the bankruptcy estate," *In re Cuyahoga Equipment Corp.*, 980 F.2d 110, 114 (2d Cir. 1992), "related to" jurisdiction fails.

This Court's *Marconi* decision is significant in that it unequivocally instructs that the "related to" analysis in Section 304 (now Chapter 15) cases must be focused on whether the action in question is "related to [a] case[] under title 11 [*i.e.*, the Chapter 15 case]," 28 U.S.C. § 1334(b), and not on the foreign bankruptcy/insolvency proceeding.   363 B.R. at 365-66.   Accordingly, this Court held that the bankruptcy court was correct in holding that it lacked jurisdiction over plaintiff's complaint to the extent that it sought damages against the debtor (which damages claim no doubt would have an effect on debtor's United Kingdom bankruptcy proceeding).   However, this Court vacated that part of the bankruptcy court's order that dismissed plaintiff's other claim seeking modification of an order granted in the Section 304 proceeding that stayed/enjoined prosecution of such damage actions against the debtor in the United States.   The Court held that, because this claim related to (*i.e.*, affected) the enforcement, amendment or modification of an order issued under Section 304 (now Chapter 15), bankruptcy court jurisdiction existed for this claim.   Defendants have failed to show how Plaintiffs' claims have an effect on the Chapter 15 case or any order issued therein.

---

[5]  This assignment excluded preference and avoidance actions, which are not at issue here.

Moreover, Defendants' argument is at odds with the fundamental purpose of a Chapter 15, to "lend a 'helping hand' to the foreign court. . . . by enabling the foreign representative to take action in the United States 'to prevent the piecemeal distribution of assets by means of legal proceedings initiated in domestic courts by local creditors.'"  *In re Bd. of Dirs. of Hopewell Int'l Ins. Ltd.*, 238 B.R. 25, 54 (Bankr. S.D.N.Y. 1999) *aff'd,* 275 B.R. 699 (S.D.N.Y. 2002) (citations omitted).  Plaintiffs' action is not an action by a creditor to distribute estate assets.  To the contrary, Plaintiffs bring common law tort claims against non-debtor defendants which, although they might ultimately benefit the SPhinX Liquidation in the Cayman Islands, can have no conceivable effect on the Chapter 15 in the United States.

### C.     Plaintiffs' Complaint Is Not Related to the Refco Bankruptcy.

Defendants continue to argue that Plaintiffs' action is "inextricably intertwined" with the Refco Securities MDL cases and that such "strong interconnections" give rise to "related to" jurisdiction. Defendants disingenuously muddle the issue of relatedness to the MDL -- which is irrelevant for jurisdictional purposes -- with the issue of relatedness to the Refco bankruptcies.  "[T]he mere fact that there may be common issues of fact between a civil proceeding and controversy involving the bankruptcy estate does not" give rise to "related to" jurisdiction.  *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3d Cir. 1984).  "Judicial economy itself does not justify federal jurisdiction."  *Id.*; *see 19 Court St. Assocs. LLC v. Resolution Trust Corp. (In re 19 Court St. Assocs. LLC)*, 190 B.R. 983, 996 (Bankr. S.D.N.Y. 1996) (same).

Defendants ignore the discussion in Plaintiffs' moving papers that potential claims for indemnity or contribution, by themselves, are insufficient to give rise to "related to" jurisdiction.  For example, Defendants ignore the line of cases cited by Plaintiffs that litigation must have a "significant connection" with the bankruptcy so that there is a "reasonable basis" to find "related to" jurisdiction. *See, e.g.*, *Enron Corp. v. Citigroup, Inc. (In re Enron Corp.)*, 353 B.R. 51, 60-61 (Bankr. S.D.N.Y. 2006); *Gen. Elec. Capital Corp. v. Por-Fac Coop., Inc.*, 2002 WL 1300054, at *2 (S.D.N.Y. June 11,

2002); *176-60 Union Turnpike v. Howard Beach Fitness Ctr.*, 209 B.R. 307, 313 (S.D.N.Y. 1997).

Defendants also fail to address cases that provide that not all indemnity claims give rise to "related to"

jurisdiction.  *See In re Federal-Mogul Global, Inc.*, 300 F.3d 368, 382 (3d Cir. 2002); *Steel Workers*

*Pension Trust v. Citigroup, Inc.*, 295 B.R. 747, 750 (E.D. Pa. 2003) (holding an "indemnification

agreement between a defendant and a non-party bankrupt debtor does not automatically supply the

nexus necessary for the exercise of 'related to' jurisdiction")  Only when the right to indemnity is

"clearly established" and "accrues upon the filing of the civil action" can the proceeding be related to

the bankruptcy.  *Id*.  That such indemnity claims are not ripe is amply evidenced by Defendants' own

language -- "Grant Thornton <u>could</u> seek contribution"; "certain individual Defendants <u>may</u> also pursue

claim for contribution."   (Emphasis added.)   Defendants should not be allowed to leverage such

hypothetical claims into federal jurisdiction.

Finally, Defendants mischaracterize the nature of the injuries suffered by Plaintiffs as damages

incurred solely as creditors of Refco.  *See* Removing Def. Opp. at 16.  The JOLs seek, among other

things, $263 million lost because it was moved from segregated accounts and deposited with non-

defendant RCM; the SPhinX Trustee seeks to recover lost business enterprise damages suffered by

PlusFunds whose business collapsed as a result of Defendants' wrongdoing.  As discussed above and

in Plaintiffs' opening memorandum, the outcome of this lawsuit will have no impact on the Refco

bankruptcy, including distributions to creditors.[6]

## II.   IF THE COURT FINDS THAT JURISDICTION EXISTS, THE CASE SHOULD BE REMANDED UNDER ABSTENTION OR EQUITABLE REMAND PRINCIPLES.

If the Court concludes that it has related to jurisdiction over Plaintiffs' claims, this matter still

should be remanded.  Abstention is required from "related to" actions removed to federal court "<u>if an</u>

<u>action is commenced, and can be timely adjudicated, in a State forum</u>" of appropriate jurisdiction.  28

---

[6]  Moreover, a proceeding involving non-debtors "will not be found to be related solely on the ground that it will affect a distribution to creditors unless the proceeding also involves property in which the debtor has a legal cognizable interest." *In re Holland Indus. Inc.*, 103 B.R. 461, 469 (Bankr. S.D.N.Y. 1989).  That is not the case here.

U.S.C. § 1334(c)(2) (emphasis added).  If the statute applies, abstention is mandatory.  *See Mt. McKinley Ins. Co. v. Corning, Inc.*, 399 F.3d 436, 448 (2d Cir. 2005); *Digital Satellite Lenders, LLC v. Ferchill*, 2004 WL 1794502, at *4 (S.D.N.Y. Aug. 10, 2004) (quoting *Luan Inv. S.E. v. Franklin 145 Corp.* (*In re Petrie Retail, Inc.*), 304 F.3d 223, 232 (2d Cir. 2002)).

Here, the Removing Defendants concede all of the requirements of Section 1334(c)(2) except the requirement that the removed action "can be timely adjudicated" in the Commercial Division. Plaintiffs have submitted evidence that the Commercial Division can and will timely adjudicate this action.  Defendants have not disputed this evidence; therefore, under the explicit terms of the statute, abstention is <u>mandatory</u> because this action "can be timely adjudicated" in the Commercial Division.

Plaintiffs recognize that the Court denied the Refco Trustees' request for mandatory abstention because the Refco Trustees' claims are "one piece of a much larger, extremely complex litigation puzzle."  *Kirschner I*, 2008 WL 1827644, at *12; *See Kirschner II*, 2008 WL 1990669, at *7.  The Court observed that general "time to trial" statistics for state court actions are not necessarily predictive of the procedural course of a complex case inextricably intertwined with equally complex cases in the MDL.  However, in the instant case, even assuming that "related to" jurisdiction is found to be present, Plaintiffs' claims are not so complex, nor so inextricably intertwined with the cases in the Refco Securities MDL, that remand would slow adjudication of either Plaintiffs' claims or the cases in the Refco Securities MDL.

Moreover, any concern about potential disruption or delay, can be alleviated without denying Plaintiffs their preferred forum.  The discovery order and Deposition Protocol governing the Refco Securities MDL contemplate the participation of state court parties in the MDL discovery process.  The Court's Deposition Protocol Order "govern[s] all oral depositions of fact witnesses" in enumerated cases and "other actions whose parties voluntarily participate in the oral depositions of fact witnesses provided for in this Order."  Deposition Protocol Order at 1.  The term "Plaintiffs," as used throughout the Deposition Protocol Order, is defined to include:

[a]ny plaintiffs who have commenced litigation in any state court who have not been consolidated into or coordinated with the Refco-Related Actions and who either agree or are otherwise compelled to conduct their deposition discovery in concert with the Refco-Related Actions.

The Deposition Protocol Order allows parties in state court cases outside the MDL to participate in the coordinated MDL discovery, and Plaintiffs are willing to cooperate in the MDL discovery as state court litigants if necessary, particularly with respect to witnesses with evidence relevant to numerous actions. Plaintiffs' claims therefore would not disrupt the MDL, and Plaintiffs' forum preference and other public policy considerations favoring remand would be respected. *See Stoe v. Flaherty*, 436 F.3d 209, 214 (3d Cir. 2006) ("[O]ut of deference to state courts and concern over the constitutional validity of the broad statutory reach of bankruptcy jurisdiction, Congress sought to give effect to the preferences of litigants who prefer a state forum, when state court adjudication would not unduly interfere with the administration of the bankruptcy estate."); *Digital Satellite*, 2004 WL 1794502, at *6 ("Congress has made it plain that, in respect to noncore proceedings such as this (*i.e.*, cases which assert purely state law causes of action), the federal courts should not rush to usurp the traditional precincts of the state court") (quoting *Drexel Burnham Lambert Group v. Vigilant Ins. Co.*, 130 B.R. 405, 409 (S.D.N.Y. 1991)); *Buechner v. Avery*, 2005 WL 3789110, at *6 (S.D.N.Y. July 8, 2005) ("The plaintiffs have elected to bring their claims in Supreme Court, New York County. If the case is litigated in this Court, then plaintiffs will be denied their choice of forum.").

The relevant considerations justifying permissive abstention and equitable remand are discussed in Plaintiffs' Motion and need not be repeated here, but Removing Defendants distort several details that must be addressed. First, Plaintiffs are willing to participate in the MDL discovery if

absolutely necessary, but to deny the prejudice that Plaintiffs face is disingenuous. Timing issues under the current scheduling order and Deposition Protocol were noted in Plaintiffs' motion.[7] Removing Defendants blithely note that the Refco Trustees are participating in the MDL discovery "without objection and have not suggested that they are experiencing any prejudice." Removing Def. Opp. at 23. Removing Defendants fail to note that the Refco Trustees have been in possession of millions of pages of Refco documents for months, if not years, long enough to have analyzed them and drafted detailed complaints last summer. Plaintiffs have just gained access to the vast universe of Refco documents and do not yet have access to production from Defendants or third parties; yet Removing Defendants suggest Plaintiffs should have appeared and questioned witnesses scheduled for deposition in April and May.

Moreover, Plaintiffs' prejudice is not "self-inflicted" as Removing Defendants suggest. Once the Trustees' complaints were filed in August 2007, Plaintiffs investigated potential claims via Bankruptcy Rule 2004 procedures, an investigation that included attempts to discover Refco's documents. Removing Defendants fail to note that they opposed Plaintiffs' earlier access to Refco's documents, thus prolonging the process. Regardless, Plaintiffs also had to obtain authorization from the Grand Court of the Cayman Islands supervising the SPhinX liquidation before proceeding with litigation, an unavoidable step that was not consummated until late February of this year.

Defendants argue that they would "suffer prejudice if this action were litigated in a separate forum from the rest of the Refco MDL" (Removing Def. Opp. at 23), but such purported prejudice is not a consideration under abstention or equitable remand principles. *See Norkin v. DLA Piper Rudnick Gray Cary, LLP*, 2006 WL 839079, at *5 (S.D.N.Y. Mar. 31, 2006); *Drexel Burnham Lambert Group*, 130 B.R. at 407.

---

[7]   There are additional obstacles Plaintiffs face if forced to participate in the MDL proceedings. Plaintiffs anticipate deposing dozens of witnesses, including former SPhinX and PlusFunds agents and other parties with no connection to the other Refco Securities MDL proceedings. This discovery will be hampered by funneling Plaintiffs' claims into the MDL.

**III.    PLAINTIFFS' CLAIMS AGAINST BAWAG DO NOT CONSTITUTE A CORE PROCEEDING UNDER 28 U.S.C. § 1334(b).**

BAWAG asserts that remand should be denied because the claims against BAWAG supposedly fall within the core jurisdiction of the bankruptcy court.[8]  BAWAG is wrong.  Plaintiffs claims do not implicate either "arising under" or "arising in" jurisdiction under 28 U.S.C. § 1334(b).

"To be a core proceeding, an action must have as its foundation the creation, recognition, or adjudication of rights which would not exist independent of a bankruptcy environment."  *Marconi*, 363 B.R. at 366 (citations omitted).  The adjudication of state law causes of action generally does not constitute a core proceeding.  *See Gassman v. Gassman, Griper & Golodny*, 97 Civ. 0093, 1997 U.S. Dist. LEXIS 14850, at *1, *8-9 (S.D.N.Y. Sept. 25, 1997) (contract, fiduciary duty); *Wechsler v. Squadron, Ellenoff, Plesent & Sheinfeld LLP*, 201 B.R. 635, 639 (S.D.N.Y. 1996) (contract); *In re Altchek*, 119 B.R. 31, 34 (Bankr. S.D.N.Y 1990) (indemnification, collection); *In re Luis Elec. Contracting Corp.*, 100 B.R. 155, 156 (E.D.N.Y. 1989) (negligence); *Interconnect Tel. Servs., Inc. v. Farren*, 59 B.R. 397, 400 (S.D.N.Y. 1986) (unfair competition, misappropriation of trade secrets, other violations of New York corporate law).

Plaintiffs assert three claims against BAWAG in the Complaint: aiding and abetting fraud, conspiracy and interference with contract or prospective contract.  These are precisely the types of state law claims courts find to be non-core.  Plaintiffs' claims do not depend on the construction or application of bankruptcy law and have not been created by, nor are they unique to, bankruptcy law.  Accordingly, Plaintiffs' BAWAG claims are not proceedings "arising under" title 11.  *See Marconi*, 363 B.R. at 366.  These claims are not the sort of claims that could *only* be brought in a bankruptcy environment and obviously have an independent existence outside of bankruptcy; therefore, there is no "arising in" jurisdiction.  *See Winstar Holdings, LLC v. Blackstone Group L.P.*, No. 07 Civ. 4634,

---

[8]  BAWAG's brief parrots the arguments made in its April 2, 2008 Memorandum of Law in Support of its Motion to Refer Counts XXIV, XXV and XXVII of Plaintiffs' Complaint to Bankruptcy Court.  Those arguments are meritless for the reasons stated in Plaintiffs' Memorandum in Opposition to Defendant BAWAG's Motion to Refer Counts XXIV, XXV and XXVII of the Complaint alleged against BAWAG to the Bankruptcy Court, dated April 25, 2008.

2007 WL 4323003, at *2-3 (S.D.N.Y. Dec. 10, 2007). Therefore, Plaintiffs' BAWAG Claims are not core matters. *See Interconnect Tel.*, 59 B.R. at 400; *See also Amanat*, 338 B.R. at 579.

> **A.** **The "Claim Over" Provisions of the BAWAG Settlement Do Not Convert Plaintiffs' State Law Claims Into Core Matters.**
>
> **1.** **Bankruptcy Court Involvement Is Not Required to Interpret the "Claim Over" Provision.**

Asserting that Plaintiffs' right to sue BAWAG was somehow vitiated by the "claim over" provision of BAWAG Settlement, BAWAG argues that the bankruptcy court must interpret its own order. However, that affirmative defense is insufficient to create bankruptcy jurisdiction. *See Winstar*, 2007 WL 4323003, at *2-3 (applying the "well pleaded complaint" rule to § 1334(b) determinations; provisions of sale agreement and bankruptcy court order insufficient to confer "arising under" jurisdiction, and the fact that a cause of action would never have arisen but for the occurrence of a particular bankruptcy case not sufficient to confer "arising in" jurisdiction).

In its opposition, BAWAG distorts the substance of Plaintiffs' state law claims by characterizing its tenuous bankruptcy-related affirmative defense as the very foundation of Plaintiff's claims. *See BAWAG Opp. at 9-10.* Moreover, the cases cited by BAWAG actually serve to illustrate why Plaintiffs' claims are non-core. Two of these cases involved claims of *post-petition* breaches of duty; thus, although the claims sounded in state law, they bore a close nexus to the administration of the estate and/or determination of the debtor's property. *See Winstar*, 2007 WL 4323003; *LFD Operating, Inc. v. Gen. Elec. Capital Corp. (In re Ames Dep't Stores, Inc.)*, 2006 WL 1288586 (Bankr. S.D.N.Y. Apr. 19, 2006). Plaintiffs' claims here involve *pre-petition* breaches of duty. A third case cited by BAWAG, *Gulf States Exploration Co. v. Manville Forest Prods. Corp. (In re Manville Forest Prods. Corp.)*, 896 F.2d 1384 (2d Cir. 1990), involved an objection to a bankruptcy claim by the trustee, plainly a core bankruptcy matter, *see* 28 U.S.C. § 157(b)(2)(B), even where the objection requires interpretation of state law, 28 U.S.C. § 157(b)(3). Here, the validity of claims against the Refco estate is not an issue. Another case relied upon by BAWAG, *Nat'l Am. Ins. Co. v. Ruppert*

- 13 -

*Landscaping Co.*, 187 F.3d 439 (4th Cir. 1999), involved a fraudulent transfer claim by a creditor, which the court held only a bankruptcy trustee may bring, and the creditor therefore lacked standing. By contrast, the claims here are not for fraudulent transfer or any other claim belonging to the Refco estate.  (*See infra.*)

*Mt. McKinley Ins. Co. v. Corning Inc.*, 399 F.3d 436 (2d Cir. 2005), is instructive.  There, the Court of Appeals held that an action by insurance companies, seeking a declaration of no coverage for asbestos claims against a bankrupt entity, was not core.  Several factors militated against a finding of core jurisdiction: the duties arose pre-petition; the debtor was not a party to the action; the action would determine the rights only of non-debtors; and the action would have at most a "tangential and speculative effect" on the debtor's assets.  *Id.* at 448-50.  Each of these factors also applies here.

A case following *Mt. McKinley*, *Stoe v. Flaherty*, 436 F.3d 209 (3d Cir. 2006), is precisely on point.  In *Stoe*, the non-debtor plaintiff brought claims against other non-debtors under state law.  The defendants in that case, like BAWAG here, urged that bankruptcy law barred the claims because the defendants had been absolved through a bankruptcy workout.  The court nevertheless held that there was no "arising under" bankruptcy jurisdiction:  "The fact that federal bankruptcy law is implicated as a defense to Stoe's claim, does not change the fact that Stoe's claim itself does not 'arise under' title 11.  The Bankruptcy Code did not create Stoe's cause of action."  *Id.* at 217.  The court further rejected the argument that "arising in" bankruptcy jurisdiction existed because the claims would not have arisen but for the debtor's bankruptcy.  "[C]laims that 'arise in' a bankruptcy case are claims that by their nature, not their particular factual circumstance, could only arise in the context of a bankruptcy case. Claims under the [applicable state law] can clearly exist outside the context of bankruptcy cases."  *Id.* at 218 (citations omitted).  Plaintiffs' claims do not arise out of the BAWAG Settlement and Release or the related Bankruptcy Court Order; therefore, those do not provide a basis for core bankruptcy jurisdiction.

Significantly, any court -- including the Commercial Division -- can review the BAWAG

Settlement and determine whether BAWAG's "claim over" affirmative defense has merit: "State courts are fully capable of interpreting a confirmed plan to determine whether a particular claim has been discharged." *ICCO Design/Build, Inc. v. Sunbrite Cleaners, Inc.* (*In re Sunbrite Cleaners, Inc.*), 284 B.R. 336, 342 (N.D.N.Y. 2002). "'Under the Bankruptcy Code, a confirmed plan of reorganization acts like a contract that is binding on all of the parties, debtor and creditors alike.' Because contract interpretation is an issue of state law the state courts are perfectly well-suited to interpret the . . . Plan." *Id.* (citations omitted); *see also Fallick v. Kehr*, 369 F.2d 899, 902 (2d Cir. 1966) (state courts routinely determine whether discharge extends to claim); *Liberty Mut. Ins. Co. v. Lone Star Indus.,* 313 B.R. 9, 20 (D. Conn. 2004) (rejecting assertion that "federal jurisdiction exists simply by virtue of the necessity of interpreting the Settlement Agreement and/or Plan of Reorganization"); *JMB Capital Partners, L.P. v. CRT Capital Group LLC (In re NTL, Inc.)*, 295 B.R. 706, 717 (Bankr. S.D.N.Y. 2003) ("Confirmed plans of reorganization are judgments of Federal court, but they are construed in accordance with State law."); *Bogdan & Faist, P.C. v. CAI Wireless Sys.,* 295 A.D.2d 849, 852, 745 N.Y.S.2d 92, 95 (3d Dep't 2002) (New York court determines that bankruptcy plan did not discharge claim).

### 2. BAWAG Misconstrues the Reach of the BAWAG Settlement's "Claim Over" Protection.

In any event, BAWAG's reliance on the "claim over" provision of the BAWAG Settlement fails on the merits. BAWAG attempts to remold the BAWAG Settlement into a blanket bar of all suits that might be deemed actions for contribution, indemnification or reimbursement against BAWAG, even by parties who were strangers to the BAWAG Settlement (an "Unnamed Party" or the "Unnamed Parties"). Significantly, Plaintiffs' Complaint makes no claim against BAWAG for contribution, indemnification or reimbursement. *See* Complaint ¶¶ 794-846, 1169-84, 1195-1219.

As BAWAG would have it, the alleged bar would apply even if the Unnamed Party received no benefit from the BAWAG Settlement. However, the actual terms of the BAWAG Settlement carefully

limit the scope and effect of BAWAG's "claim over" protection. *See* BAWAG Settlement ¶ 6(b)(i) (as modified pursuant to the Order Approving and Clarifying Stipulation and Order of Settlement and Resolving Certain Objections, dated July 6, 2006, ¶ 4). Thus, the BAWAG Settlement conditioned the prospective "claim over" protection afforded to BAWAG on a benefit that would be provided to any Unnamed Parties should they be stripped of their right to seek contribution from BAWAG: any liability of such Unnamed Parties to Refco for damages would be reduced according to BAWAG's share of responsibility for such damages. *See id.*

Here, the SPhinX funds settled with Refco prior to the BAWAG Settlement. *See* Molton Referral Opp. Decl. Ex. A. Therefore, Plaintiffs were not parties to the BAWAG Settlement, did not elect to release BAWAG, and did not receive any benefit from the settlement. Accordingly, the BAWAG Settlement did not -- and lawfully could not -- strip Plaintiffs of their rights.

Further, BAWAG ignores the specific terms of the settlement's Electing Creditor Release. *See* BAWAG Settlement ¶ 3. Under this governing provision of the BAWAG Settlement, creditors granted BAWAG a release <u>only</u> if they elected to accept plan distributions based on payments from BAWAG. Plaintiffs, who did not receive any Refco plan distributions from BAWAG, did not provide the "Electing Creditor Release." *See* Molton Referral Opp. Decl. Ex. B. The releases in favor of BAWAG in the BAWAG Settlement accordingly do not apply to Plaintiffs' claims.

The Refco plan also does not provide a release that would bar Plaintiffs' claims against BAWAG. *See* Refco Plan ¶ 10.2(e). Under this provision, *only* creditors that received proceeds from the BAWAG Settlement are deemed to have provided a release to BAWAG. Because Plaintiffs elected not to receive -- and did not receive -- proceeds from the BAWAG Settlement, they have not released BAWAG, *see* Molton Referral Opp. Decl. Ex. B, and any court can so interpret this provision. BAWAG's self-serving assertions regarding the provisions of the release are meritless and do not support its assertion of bankruptcy core jurisdiction over Plaintiffs' claims.

Nor does the Refco Plan Confirmation Order enjoin Plaintiffs' BAWAG Claims. That order

only enjoins actions by creditors that are inconsistent with the Refco plan. *See* Brick Aff., Exh. D, at ¶ 15. Because the BAWAG releases in the Refco Plan do not reach Plaintiffs' BAWAG claims, the Refco Plan Confirmation Order also does not bar Plaintiffs' BAWAG claims.

### 3.    The "Claim Over" Protection Cannot Apply to PlusFunds' Injury.

BAWAG characterizes Plaintiffs' claims as solely seeking damages from BAWAG for the $263 million preference settlement payment made by SPhinX to the Refco estates. However, the Complaint also seeks damages sought for harm to PlusFunds caused by BAWAG's misconduct. *See, e.g.*, Compl. ¶¶ 1182-84, 1200, 1207, 1209, 1211, 1213-19. Such damages flow from the destruction of the enterprise value of PlusFunds when the SPhinX funds, which PlusFunds managed, collapsed as a consequence of the Refco fraud aided and facilitated by BAWAG.

These damages are unrelated to any judgment "obtained by Refco . . . against an Unnamed Party [*e.g.*, PlusFunds] that awards damages or other monetary relief for which the BAWAG Parties may also bear responsibility in whole or in part." BAWAG Settlement ¶ 6(b)(1). They do not arise from any "amounts that an Unnamed Party [*e.g.*, PlusFunds] paid or owes to Refco". *Id.* ¶ 6(a). Accordingly, PlusFunds could bring no contribution, indemnification or reimbursement claim against BAWAG, making "claim over" protection inapplicable.

### 4.    The BAWAG Settlement's Retention of Jurisdiction Provision Does Not Bind Plaintiffs or Create Bankruptcy Core Jurisdiction.

BAWAG cites a number of cases generally for the proposition that a bankruptcy court retains post-confirmation jurisdiction to interpret and enforce its own orders. However, in each of those cases, the authority of the bankruptcy court was challenged, thus requiring more than mere interpretation of release provisions in a settlement or plan. *See Winstar*, 2007 WL 4323003, at *4-5; *Luan Inv. S.E. v. Franklin 145 Corp. (In re Petrie Retail, Inc.)*, 304 F.3d 223, 230 (2d Cir. 2002); *Jamaica Shipping Co. v. Orient Shipping Rotterdam, B.V. (In re Millenium Seacarriers, Inc.)*, 2005 U.S. Dist. LEXIS 21553, at *20-22 (S.D.N.Y. Sept 28, 2005).

## IV.    PLAINTIFFS' CLAIMS AGAINST BAWAG ARE NOT PROPERTY OF THE REFCO ESTATES.

### A.    Plaintiffs' Claims Are Distinct from the Creditors' Committee Claims.

BAWAG assumes, without meaningful analysis or support, that all claims against BAWAG based on BAWAG's participation in the Refco fraud, even if brought by third parties, are property of the Refco estates.  However, if all claims based on BAWAG's participation in the Refco fraud had been property of the Refco estates, it would not have been necessary to provide BAWAG prospectively with "claim over" protection against contribution claims.  Likewise, if suits between non-debtor third parties had been property of the estates, the releases of BAWAG on behalf of the Refco estates would have been sufficient to immunize BAWAG from further suit.

Still more, the heavily negotiated releases of BAWAG in the BAWAG Settlement and the Refco plan recognize that the rights of non-consenting, uncompensated third parties against BAWAG belong to such creditors and not the estate.  These two documents carefully maintain the rights of action of third parties without consent or compensation.  The "Electing Creditor Release" applied only to creditors accepting distributions from BAWAG's payments to Refco.  *See* BAWAG Settlement ¶ 3.  Similarly, the release in favor of BAWAG pursuant to the Refco plan applied *only* to creditors choosing to accept a pro rata share of the settlement consideration paid by BAWAG.  *See, e.g.*, Refco plan ¶ 10.2(e).  Plaintiffs made no such election and provided BAWAG with no such release.  *See* Molton Referral Opp. Decl. Exhibit B.[9]

The cases cited by BAWAG are inapposite.  They stand for the proposition that, in the context of claims that are indubitably property of the estate (such as alter ego claims or derivative claims against directors and officers), a creditor may only assert claims against third parties that are direct and

_____

[9]  Indeed, Plaintiffs' right to assert claims against third parties was specifically preserved in the stipulation and order of settlement resolving the preference action brought by Refco's creditors committee against SPhinX, which was so-ordered by the Bankruptcy Court on June 9, 2006.  As set forth therein:  "For the further avoidance of doubt, SPhinX does not release any claims or actions against any party other than Refco."  Stipulation and Order of Settlement, Molton Referral Opp. Decl. Ex. A.  Although this stipulation provides for bankruptcy court jurisdiction to "enforce" its terms, *see id.* ¶ 9, BAWAG was not a party to that stipulation and its enforcement or interpretation is not an issue here.

may not assert claims that are derivative of the debtor's estates. *See Sobchak v. Am. Nat'l Bank & Trust Co. (In re Ionosphere Clubs)*, 17 F.3d 600, 605-07 (2d Cir. 1994) (shareholders could not bring derivative claims against debtor's directors and officers); *Kalb, Voorhis & Co. v. Am. Fin. Corp.*, 8 F.3d 130, 132 (2d Cir. 1993); *St. Paul Fire & Marine Ins. Co. v. Pepsico, Inc.*, 884 F. 2d 688, 701 (2d Cir. 1989) (creditor seeks to hold debtor's principal liable for claim). Because Plaintiffs' BAWAG claims are not alter ego or derivative claims, and BAWAG has only assumed, but not established, that Plaintiffs' BAWAG claims are property of the estate, these cases are simply inapposite.

In any event, Plaintiffs' injuries are distinct. BAWAG asserts that Plaintiffs' claims are similar in object and purpose to claims Refco's creditors committee brought against BAWAG and that this similarity somehow converts Plaintiffs' BAWAG claims into property of the Refco estates. That is absurd. The only claim brought by the Refco creditors' committee that is even remotely similar to Plaintiffs' BAWAG claims is a count for aiding and abetting breach of fiduciary duty. The gravamen of the count is that certain defendants, with the assistance of BAWAG, committed improper acts, including fraud, that hid Refco's insolvency, thereby allowing a leveraged recapitalization to proceed and causing <u>Refco</u> to lose $1.4 billion. *See* Brick Aff. Exh. G ¶¶ 135-40. In contrast, the gravamen of Plaintiffs' BAWAG claims is that, owing to BAWAG's material assistance and participation in fraudulently disguising Refco's insolvency, the <u>SPhinX</u> entities <u>and</u> <u>PlusFunds</u> entrusted investor funds to Refco's custody and, as a result, lost $263 million in investor funds. *See* Compl. ¶¶ 1169-84, 1195-1219. These damages are unique to Plaintiffs.

### B.    Plaintiffs Have Not Asserted Alter Ego Claims

Plaintiffs bring no alter ego claims against BAWAG. The case relied on by BAWAG, *Steyr-Daimler-Puch of Am. Corp. v. Pappas*, 852 F.2d 132 (4th Cir. 1988), is inapposite. In *Pappas*, a creditor specifically brought an alter ego claim, seeking to have the principals "answer for [the debtor's] debt". *Id.* at 134. Here, Plaintiffs do not seek to have BAWAG answer for any debt of Refco. Rather, Plaintiffs allege that BAWAG is accountable for its *own* misconduct under theories of

aiding and abetting fraud, conspiracy and interference with contract.  In alleging domination, Plaintiffs do not seek to pierce Refco's corporate veil; indeed, such relief is requested nowhere in Plaintiffs' Complaint.  *Cf. St. Paul Fire*, 884 F.2d at 702-03 (although domination is an element of an alter ego claim, the crux of the action is the elimination of the separateness of the corporation and its alter ego). BAWAG's self-serving characterization of Plaintiffs' BAWAG Claims as "alter ego" claims cannot transform them into property of the Refco estates.

## V.  CONCLUSION

For all these reasons, and for the reasons set forth in their opening brief, Plaintiffs' Motion should be granted.

Dated: New York, New York
      June 10, 2008

BROWN RUDNICK LLP

By:/s/ David Molton
    David Molton (DM 1106)
    Andrew Dash (AD 7913)

7 Times Square
New York, New York 10036
Tel.: (212) 209-4800
Fax: (212) 209-4801
dmolton@brownrudnick.com
adash@brownrudnick.com
        and
BEUS GILBERT PLLC
Leo R. Beus, Esq. *pro hac vice*
Dennis K. Blackhurst, Esq. *pro hac vice*
4800 North Scottsdale Road
Suite 6000

Scottsdale, AZ  85251
Telephone: (480) 429-3000
Facsimile: (480) 429-3100
lbeus@beusgilbert.com
dblackhurst@beusgilbert.com

Co-counsel for Plaintiffs

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 10, 2008, Plaintiffs' Reply Memorandum of Law in Further Support of Motion for Remand and/or Abstention was served on the follow parties to this action via email and first class mail, as listed below:

Robert B. McCaw, Esq.
Phillip D. Anker, Esq.
James Millar, Esq.
John V.H. Pierce, Esq.
Ross E. Firsenbaum, Esq.
Wilmer Cutler Pickering Hale and Dorr LLP
399 Park Avenue
New York, New York 10022
Counsel to Defendants JP Morgan Chase & Co.,
Credit Suisse Securities (USA) LLC (formerly
Credit Suisse First Boston LLC), and
Banc of America Securities LLC

David Mollon, Esq.
Winston & Strawn LLP
200 Park Avenue
New York, New York 10166
Counsel to Defendants Grant Thornton LLP
and Mark Ramler

William T. Burke, Esq.
John K. Villa, Esq.
Michael S. Sundermeyer, Esq.
Thomas G. Ward, Esq.
Craig D. Singer, Esq.
Williams & Connolly LLP
725 12th Street, N.W.
Washington, D.C. 20005
Counsel to Defendants Mayer Brown LLP and
Edward S. Best

Anthony M. Candido, Esq.
Joel M. Cohen, Esq.
Clifford Chance US LLP
31 West 52nd Street
New York, New York 10019
Counsel to the UK Limited Liability Partnership
Mayer Brown International LLP

Greg Danilow, Esq.
Michael F. Walsh, Esq.
Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, New York 10153-0119
Counsel to Defendants Thomas H. Lee Partners L.P.,
Thomas H. Lee Advisors LLC, THL Managers V, LLC,
THL Equity Advisors V., L.P., Thomas H. Lee Equity
Fund V, L.P., Thomas H. Lee Parallel Fund V., L.P.,
Thomas H. Lee Equity (Cayman) Fund V., L.P.,
Thomas H. Lee Investors Limited Partnership,
1997 Thomas H. Lee Nominee Trust, Thomas H. Lee,
David V. Harkins, Scott A. Schoen, and Scott L. Jaeckel

James J. Capra, Esq.
Orrick, Herrington & Sutcliffe LLP
666 Fifth Avenue
New York, New York 10103-0001
Counsel to Defendants
PricewaterhouseCoopers LLP and
Mari Ferris

Nicolle L. Jacoby, Esq.
Brian H. Brick, Esq.
Andrew J. Levander, Esq.
Dechert LLP
1095 Avenue of the Americas
New York, New York 10036
Counsel to Defendant BAWAG

David W. Wiltenburg, Esq.
Hughes Hubbard & Reed LLP
One Battery Park Plaza
New York, New York 10004
Counsel to Defendant PricewaterhouseCoopers
Cayman Islands

Gregory P. Joseph
Peter R. Jerdee
Gregory P. Joseph Law Offices LLC
485 Lexington Ave, 30th Floor
New York, New York 10017
Counsel to Defendant Gibson, Dunn & Crutcher LLP

Christopher R. Harris, Esq.
Latham & Watkins LLP
885 Third Avenue
New York, New York 10022
Counsel to Defendant Ernst & Young U.S., LLP

Jonathan Paul Bach, Esq.
Daniel Mark Hibshoosh, Esq.
Timothy Marden Kerr, Esq.
William J. Schwartz, Esq.
Cooley Godward Kronish LLP
1114 Avenue of the Americas
New York, New York 10036
Counsel to Defendant Joseph Collins

Charles E. Clayman, Esq.
Clayman & Rosenberg
305 Madison Avenue, Suite 1301
New York, New York 10165
Counsel to Defendant Paul Koury

Jeffrey T. Golenbock, Esq.
Golenbock Eiseman Assor Bell &
Peskie LLP
437 Madison Avenue
New York, New York 10022-7302
Counsel to Defendants Phillip R. Bennett
and Refco Group Holdings Inc.

Barbara Moses, Esq.
Morvillo, Abramowitz, Grand, Iason,
Anello, & Bohrer, P.C.
565 Fifth Avenue
New York, New York 10017
Counsel to Defendant Robert C. Trosten

Laura Neish, Esq.
Zuckerman Spaeder LLP
1540 Broadway, Suite 1604
New York, New York 10036
Counsel to Defendant Tone Grant

3

Scott E. Hershman, Esq.
Hunton & Williams LLP
200 Park Avenue
New York, New York 10166-0091
Counsel to Defendant Santo C. Maggio

Helen B. Kim, Esq.
Katten Muchin Rosenman LLP
2029 Century Park East
Suite 2600
Los Angeles, California 90067-3012
Counsel to Defendant Dennis Klejna

John D. Tortorella, Esq.
Marino Tortorella PC
437 Southern Boulevard
Chatham, New Jersey 07928
Counsel to Defendants Liberty Corner
Capital Strategies, LLC and William T. Pigott

Veronica E. Rendon, Esq.
Arnold & Porter LLP
399 Park Avenue
New York, New York 10022-4690
Counsel to Defendants Eric M. Flanagan,
EMF Financial Products, LLC
and Delta Flyer Fund, LLC

Robert F. Wise, Jr.
Davis Polk & Wardell
450 Lexington Avenue
New York, New York  10017
Counsel to Defendants Ingram Micro Inc.
and CIM Ventures, Inc.

Aaron E. Albert, Esq..
Fischer Porter Thomas & Reinfeld, P.C.
180 Sylvan Avenue, 2nd Floor
Englewood Cliffs, NJ 07632
Counsel to Defendants Beckenham Trading Co. Inc.
and Andrew Krieger

4

Brian Woo Hyon Song, Esq.
Kirkland & Ellis LLP
Citigroup Center 153 East 53rd Street
New York, New York 10022
Counsel to Defendants Coast Asset Management LLC
f/k/a Coast Asset Management LP
and CS Land Management, LLC

Ronald M. Lepinskas, Esq.
DLA Piper
203 North LaSalle Street, Suite 1900
Chicago, Illinois 60601-1293
Counsel to Defendant Christopher Petitt

Jared R. Clark, Esq.
Bingham McCutchen LLP
399 Park Avenue
New York, New York  10022-4689
Counsel to Defendants Refco Associates, Inc.
and Refco Alternative Investments LLC

I hereby also certify that on June 10, 2008 Plaintiffs' Reply Memorandum of Law in Further Support of Motion for Remand and/or Abstention was served on the follow parties to this action via first class mail, as listed below:

Christopher Sugrue
Av. Amilar Cabral No 110-2
Ed. Sonangol Distribuidora
Luanda
Angola

Mark Kavanagh
Ballyorney House
Waterfall Road
Enniskerry
County Wicklow, Ireland

Brian Owens
2 Beresford Green
Griffith Avenue
Dublin 9, Ireland

Thomas Hackl
Acies Asset Management S.A.
118 Rue du Rhône
1204 Geneve Switzerland

5

EMF Core Fund Ltd.
c/o Maples & Calder
PO Box 309, Ugland House
South Church Street, George Town
Grand Cayman KY1-1104
Cayman Islands

Executed on June 10, 2008

                                                 /s/David J. Molton
                                                 David J. Molton

6