UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------x
                                            :

KENNETH M. KRYS et al.,             :

                                            :

                         Plaintiffs,      :

     -against-                :          08 Civ. 3065 (GEL)

                                            :          08 Civ. 3086 (GEL)

                                            :

CHRISTOPHER SUGRUE et al.,      :

                                            :

                         Defendants.     :

                                            :

-------------------------------------------------------------x      **OPINION AND ORDER**

                                            :

KENNETH M. KRYS et al.,             :

                                            :

                         Plaintiffs,      :

     -against-                :          08 Civ. 7416 (GEL)

                                            :

ROBERT AARON et al.,               :

                                            :

                         Defendants.     :

                                            :

-------------------------------------------------------------x

David Molton and Andrew Dash, Brown Rudnick
Berlack Israels LLP, New York, New York, and
Leo R. Beus and Dennis K. Blackhurst, Beus
Gilbert PLLC, Scottsdale, Arizona, for the SPhinX
Plaintiffs.

Andrew J. Levander, Nicolle L. Jacoby, Joel H.
Levitin, Brian H. Brick, Juliet Sarkessian, Dechert
LLP, New York, New York, for Defendant
Bank für Arbeit und Wirtschaft und Österreichische
Postsparkasse Aktiengesellschaft.

Philip D. Anker, Robert B. McCaw, Lori A. Martin,
John V.H. Pierce, James Millar, Jeremy S. Winer,
Ross E. Firsenbaum, Wilmer Cutler Pickering Hale
and Dorr LLP, New York, New York, for
Defendants JP Morgan Chase & Co., Credit Suisse
Securities (USA) LLC (formerly Credit Suisse First

Boston LLC), and Banc of America Securities LLC.

David E. Mollón, Bradley E. Lerman, Catherine W. Joyce, Linda T. Coberly, Winston & Strawn LLP, New York, New York, and Chicago, Illinois, for Defendants Grant Thornton LLP and Mark Ramler.

Thomas G. Ward, John K. Villa, Michael S. Sundermeyer, Craig D. Singer, William T. Burke, Williams & Connolly LLP, New York, New York, and Washington, D.C., for Defendant Mayer Brown LLP.

Joel M. Cohen, Anthony M. Candido, Clifford Chance US LLP, New York, New York, for Defendants UK Limited Liability Partnership and Mayer Brown International LLP.

Greg A. Danilow, Michael F. Walsh, Weil, Gotshal & Manges LLP, New York, New York, and Richard A. Rosen, Paul, Weiss, Rifkind, Wharton & Garrison LLP, New York, New York, for Defendants Thomas H. Lee Partners L.P., Leo R. Breitman, Nathan Gantcher, David V. Harkins, Scott L. Jaeckel, Thomas H. Lee, Ronald L. O'Kelley, and Scott A. Schoen.

James J. Capra, Jr., James P. Cusick, Matthew L. Craner, Orrick, Herrington & Sutcliffe LLP, New York, New York, for Defendants PricewaterhouseCoopers LLP and Mari Ferris.

Stephanie J. Cohen, B. John Pendleton, McCarter & English, LLP, New York, New York, for Defendants Guy Castranova, Derivative Portfolio Management LLC, Derivative Portfolio Management LTD., DPM-Mellon, LLC, DPM-Mellon, LTD., Bank of New York Mellon Corporation F/K/A Mellon Financial Corp.

Donald A. Corbett, Dickstein Shapiro, New York, New York, for Defendant Robert Aaron.

GERARD E. LYNCH, <u>District Judge</u>:

Plaintiffs (collectively, the "SPhinX Plaintiffs")[1] initially brought these actions for fraud, breach of contract, and breach of fiduciary duty, among similar claims, in the state courts of New York and New Jersey. While naming different defendants, both actions contain substantially similar allegations, namely that certain agents, fiduciaries, and insiders of Refco, PlusFunds and/or the SphinX Funds aided and abetted Refco's improper co-mingling of SPhinX Funds assets in unprotected, non-regulated accounts at Refco Capital Markets, Ltd. ("RCM"), and that those co-mingled funds were then used to facilitate the fraudulent business operations of other Refco affiliates – to the tune of $263 million in lost SPhinX Funds assets. The SPhinX Plaintiffs now seek remand to the original state courts, or in the alternative, abstention. In addition, Bank für Arbeit und Wirtschaft und Österreichische Postsparkasse Aktiengesellschaft ("BAWAG") seeks to remove solely the claims asserted against it to the Bankruptcy Court on the basis that those claims are core claims "arising under" or "arising in" the Refco Chapter 11 bankruptcy case that is currently pending in this district, <u>see</u> <u>In re Refco, Inc.</u>, No. 05-60006 (RDD) (Bankr. S.D.N.Y.). For the reasons set forth below, the motions will be denied.

## BACKGROUND

The facts set forth below are those alleged in the complaints in the New York and New

---

[1] These actions are brought by the same three groups of plaintiffs (the "SPhinX Plaintiffs"): (1) Kenneth Krys and Christopher Stride, the Joint Official Liquidators ("JOLs") of the SPhinX Funds, which are a family of Cayman Island hedge funds created by PlusFunds Group, Inc.; (2) Krys and Stride, as assignees of claims from a number of investors in the SPhinX Funds; and (3) James Sinclair, the Trustee of the SPhinX Trust ("SPhinX Trustee"), who was assigned, on behalf of the SPhinX Trust, claims formerly belonging to the estate of PlusFunds Group.

Jersey actions. The allegations are assumed to be true for purposes of this motion. See Merritt v. Shuttle, Inc., 245 F.3d 182, 186 (2d Cir. 2001).

## I. Events Leading up to the Bankruptcy of PlusFunds and the Liquidation of the SPhinX Funds

The SPhinX Funds ("SPhinX") debuted in 2001 as a platform of funds designed to track the performance of the Standard & Poor's Hedge Fund Index.[2] (NY Compl. ¶ 2; NJ Compl. ¶ 2.[3]) The funds, which were chartered in the Cayman Islands, were the product of an exclusive license contract between the PlusFunds Group, Inc. ("PlusFunds") and Standard & Poor's. (Id.) The funds were specifically structured into segregated portfolio companies ("SPCs") for the purpose of preserving and protecting assets for the benefit of SPhinX and its investors in the event of the insolvency of other segregated portfolios or of the custodian or prime broker. (NY Compl. ¶ 3; NJ Compl. ¶ 3.)

Initially, the SPhinX Funds flourished. (NY Compl. ¶ 4; NJ Compl. ¶ 4.) Unfortunately, however, Refco LLC was the prime broker for many of the SPhinX Funds, including the SPhinX Managed Futures Fund ("SMFF").[4] (NY Compl. ¶¶ 144-48; NJ Compl. ¶¶ 77, 94-95.) Through

---

[2] PlusFunds derived the name "SPhinX" from the "S&P Hedge Fund Index." The SPhinX Funds were designed to achieve returns consistent with the performance of that index. (NY Compl. ¶ 105.)

[3] References to the New York Complaint are to the Amended Complaint filed in this Court on October 10, 2008. References to the New Jersey Complaint are to the Amended Complaint filed in the Superior Court of New Jersey on April 15, 2008. The New York complaint contains the bulk of the allegations, including allegations as to professional parties – lawyers, accountants, and investment banks – alleged to be responsible for committing, facilitating, or failing to detect the fraudulent scheme, as well as allegations as to certain other PlusFunds principals alleged to be responsible for the same.

[4] Refco's fraudulent scheme to deceive investors and others about the true financial circumstances of its brokerage firm and its affiliated companies is described in detail in the

certain Refco, PlusFunds, and SPhinX agents and fiduciaries, hundreds of millions of dollars in cash belonging to SMFF was diverted from the customer-segregated accounts to the accounts of an unregulated offshore Refco affiliate, Refco Capital Markets, Ltd. ("RCM"), where the assets were co-mingled for use in fraudulent activities designed to conceal Refco's losses, bolster Refco's financial statements, and enrich individuals.  (NY Compl. ¶ 5-7; NJ Compl. ¶ 5-7.) SPhinX and PlusFunds agents, including Robert Aaron, director of the SPhinX Funds and part owner of Derivative Portfolio Management ("DPM") (NY Compl. ¶ 82; NJ Compl. ¶38), and Christopher Sugrue, officer and director of PlusFunds and a founder of the SPhinX Funds (NY Compl. ¶ 38; NJ Compl. ¶ 40), allegedly agreed to expose SMFF cash in exchange for, in the case of Aaron, lucrative profits for DPM (NJ Compl. ¶¶ 134, 250-52), and for Sugrue and others, quid pro quo payoffs from Refco that involved "loans" to certain entities which they controlled. (NY Compl. ¶¶ 9-10; NJ Compl. ¶ 9-10.)

When, on October 10, 2005, Refco's schemes were revealed in the announcement that Refco had "discovered" a $430 million receivable owed to it by an entity owned by Refco's CEO Phillip R. Bennett (the "Bennett receivable"), RCM held approximately $312 million of SMFF's cash.  (NY Compl. ¶ 11; NJ Compl. ¶ 11.)  Before RCM and dozens of Refco subsidiaries and affiliates filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code in the Southern District of New York (id.), Sugrue demanded the return of the $312 million dollars from RCM (NY Compl. ¶ 12; NJ Compl. ¶¶ 12, 235).  RCM returned the money, but two

---

Court's prior opinions.  See, e.g., American Fin. Int'l Group-Asia, L.L.C. v. Bennett, No. 05 Civ. 8988, 2007 WL 1732427 (S.D.N.Y. June 14, 2007); In re Refco Capital Markets, Ltd. Brokerage Customer Secs. Litig., No. 06 Civ. 643, 2007 WL 2694469 (S.D.N.Y. Sept. 13, 2007); In re Refco, Inc. Secs. Litig., 503 F. Supp. 2d 611 (S.D.N.Y. 2007); Thomas H. Lee Equity Fund V, L.P. v. Grant Thornton LLP, No. 07 Civ. 8663, 2008 WL 3166536 (S.D.N.Y. Aug. 6, 2008).

months later RCM's Official Committee of Unsecured Creditors commenced an adversary proceeding against SMFF (the "Refco Preference Action"), <u>see</u> Adv. Pro. No. 05-03331 (RDD), to recover the $312 million as a preferential transfer from RCM's estate. (NY Compl. ¶12; NJ Compl. ¶¶ 12, 240.) SPhinX subsequently settled the action by relinquishing $263 million of the $312 million and releasing certain claims against the Refco estate with respect to those funds. (NY Compl. ¶ 14; NJ Compl. ¶¶ 14, 241; <u>see also</u> Molton Decl., Ex. A, Stipulation and Order of Settlement, <u>Official Comm. of Unsecured Creditors v. SPhinX Managed Futures Fund SPC (In re Refco)</u>, Case No. 05-60006, Adv. Proc. No. 05-3331, Doc. # 66 (Bankr. S.D.N.Y. June 9, 2006).) Certain SPhinX Plaintiffs objected to and appealed from the Bankruptcy Court's approval of the settlement, arguing – unsuccessfully – that it was a sweetheart deal that was the product of insider collusion and fraud. <u>See</u> <u>In re Refco Inc.</u>, 06 Civ. 5435 et al., 2006 WL 3409088, at *1 (S.D.N.Y. Nov. 16, 2006), <u>aff'd</u> 505 F.3d 109, 113 (2d Cir. 2007) (upholding the settlement).

## II.     The PlusFunds Bankruptcy and the Liquidation of the SPhinX Funds

The Refco Preference Action triggered a flood of redemptions by SPhinX investors and, in turn, a sharp decline in PlusFunds' revenues. (NY Compl. ¶ 13; NJ Compl. ¶¶ 12-13.) On March 6, 2006, PlusFunds filed a Chapter 11 bankruptcy petition in the Southern District of New York. (NY Compl. ¶¶ 13; NJ Compl. ¶ 13.) The PlusFunds Chapter 11 plan ("the PlusFunds Plan" or "the Plan"), which was approved by the Bankruptcy Court on August 7, 2007, provided for the establishment of two different post-confirmation trusts, each with its own Trustee and governing trust agreement: (1) the General Trust, which was vested with the Retained Assets for the benefit of Holders of Allowed General Unsecured Claims other than the SPhinX Funds; and

(2) the SPhinX Trust, administered by "SPhinX Trustee" James Sinclair, which provided that, in exchange for $4 million, certain claims of the PlusFunds Debtors' bankruptcy estate would be assigned to the SPhinX Trust (NY Compl. ¶ 37; NJ Compl. ¶ 32; <u>see also</u> Firsenbaum Decl., Ex. D. Art. VI § F-1), "for the purpose of collecting, distributing, and liquidating the [Causes of Action held by the Estate[5]] for the benefit of the Beneficiaries" (Firsenbaum Decl., Ex. E at § 2.2). The beneficiaries of the SPhinX Trust are the SPhinX Funds, which deposited monies with RCM and are PlusFunds' largest creditors.

Meanwhile, on June 30, 2006, SPhinX entered into liquidation proceedings in the Cayman Islands. (NY Compl. ¶ 35; NJ Compl. ¶ 15.) The Grand Court of the Cayman Islands appointed Kenneth Krys and Christopher Stride the Joint Official Liquidators ("JOLs") of the SPhinX Funds (the "SPhinX JOLs"). Under Cayman law, the JOLs stepped into the shoes of SPhinX and assumed the power "to bring or defend any action, suit, prosecution or other legal proceedings, whether civil or criminal, in the name and on behalf of the company." Cayman Companies Law § 109(a). Accordingly, the SPhinX JOLs are the beneficiaries of the SPhinX Trust established by the PlusFunds Plan. (<u>See</u> Firsenbaum Decl., Ex. D. Art. VI § F-1 ("The SPhinX Trust shall be established for the primary purpose of liquidating the Causes of Action for or on behalf of the JOLs in their capacity as JOLs for the SPhinX Funds." )) On July 31, 2006, the SPhinX JOLs also filed a Petition for Recognition of a Foreign Proceeding under Chapter 15 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of New York. <u>See</u> Case No. 06-11760 (RDD). The Bankruptcy Court subsequently entered an order

---

[5] The PlusFunds Plan defines "Causes of Action" as "except for the Retained Assets, *all* of the Debtor's legal and equitable interests in any claim . . . against any Entity." (Firsenbaum Decl., Ex. D. Art. I § B-18 (emphasis added).)

7

granting recognition and relief in aid of the foreign proceedings pursuant to 11 U.S.C. §§ 1515, 1517, and 1521(a)(4). See In re SPhinX Ltd., 351 B.R. 103 (Bankr. S.D.N.Y. 2006).

## III.   Procedural History of the Instant Actions

The SPhinX Plaintiffs commenced the above-captioned actions by filing a Summons and Complaint in New York State Court against defendants Christopher Sugrue et al., and by filing a Summons and Complaint in New Jersey State Court against Robert Aaron, et al.[6]  The defendants in each action filed removal petitions.  On March 26, 2008, the New York defendants filed two different removal petitions.  Specifically, BAWAG removed only the claims asserted against it on the basis that those claims are "related to" Refco's Chapter 11 bankruptcy, 28 U.S.C. § 1334(b), which is currently pending in this district, see In re Refco, Inc., No. 05-60006 (RDD) (Bankr. S.D.N.Y.).  Separately, a number of other defendants (the "New York Removing Defendants"[7]) removed the remainder of the action on the basis that it is "related to" three different bankruptcy proceedings, all of which are pending in this district: the PlusFunds Chapter 11 case; the SPhinX Chapter 15 proceedings; and the Refco Chapter 11 case.  On April 16, 2008,

_____

[6] The SPhinX Plaintiffs have filed at least one additional Summons and Complaint in New York State Court against defendant Richard Butt.  The allegations in that complaint are substantially similar to the allegations discussed herein.  The defendant recently removed that case, and on October 1, 2008, this Court accepted that action as related to In re Refco, Inc. Securities Litigation, 07 MDL No. 1902 ("Refco MDL"), thus initiating the action Krys, et al. v. Butt, No. 08 Civ. 8267 (GEL).

[7] The "New York Removing Defendants" are JP Morgan Chase & Co., Credit Suisse Securities (USA) LLC, Banc of America Securities LLC, Grant Thornton LLP, Mark Ramler, Mayer Brown LLP, Mayer Brown International LLP, Thomas H. Lee Partners, L.P., Thomas H. Lee Advisors, LLC, THL Managers V, LLC, THL Equity Advisors V, L.P., Thomas H. Lee Equity Fund V, L.P., Thomas H. Lee Parallel Fund V, L.P., Thomas H. Lee (Cayman) Fund V, L.P., Thomas H. Lee Investors Limited Partnership, 1997 Thomas H. Lee Nominee Trust, Thomas H. Lee, David V. Harkins, Scott L. Jaeckel, Scott A. Schoen, PricewaterhouseCoopers LLP, and Mari Ferris.  (D. Mem. 1.)

both matters were assigned to this Court as related to the complex cluster of cases growing out of the collapse of Refco.[8] On April 17, 2008, the New Jersey defendants (the "New Jersey Removing Defendants"[9]) removed the New Jersey action to the United States District Court of New Jersey, citing the same reasons advanced by the New York Removing Defendants. The SPhinX Plaintiffs moved to remand or, in the alternative, for abstention. Upon application by the defendants, however, the New Jersey District Court stayed the proceedings pending a decision by the Judicial Panel on Multidistrict Litigation ("MDL Panel") on whether to transfer the case to this Court as related to the Refco litigation. The MDL Panel subsequently transferred the action for coordinated pretrial proceedings with the other, already pending, Refco-related cases.[10]

Now, in both the New Jersey and New York actions, the SPhinX Plaintiffs move to remand to the New Jersey and New York state courts for lack of subject matter jurisdiction. See 28 U.S.C. § 1447(c). In the alternative, the SPhinX Plaintiffs contend that even if the Court has subject matter jurisdiction in these actions, abstention is both mandatory and warranted in the exercise of discretion under 28 U.S.C. § 1334(c). In addition, BAWAG, which otherwise joins the Removing Defendants in opposing the SPhinX Plaintiffs' motion (see BAWAG Opp. Mem.), moves to refer the counts against it in the New York action to the United States Bankruptcy

---

[8] BAWAG's removal initiated Case No. 08 Civ. 3065 (GEL); the New York Removing Defendants' removal initiated Case No. 08 Civ. 3086 (GEL).

[9] The "New Jersey Removing Defendants" are Robert Aaron, Guy Castranova, Derivative Portfolio Management LLC, Derivative Portfolio Management LTD., DPM-Mellon, LLC, DPM-Mellon, LTD., Bank of New York Mellon Corporation F/K/A Mellon Financial Corp.

[10] The MDL panel denied the SPhinX Plaintiffs' motion to vacate the Conditional Transfer Order on August 21, 2008.

Court for the Southern District of New York as core matters "arising under" title 11 or "arising in" a case under title 11. See 28 U.S.C. § 1334(b).

With the exception of BAWAG's motion, the jurisdictional issues raised in these motions – whether the plaintiffs' claims, which arise solely under state law, are sufficiently "related to" a bankruptcy proceeding to establish federal jurisdiction – are substantially similar to those raised by the parties in In re Refco, Inc. Secs. Litig., No. 07 Civ. 11604, 2008 WL 1827644 (S.D.N.Y. April 21, 2008) and Kirschner v. Bennett, No. 07 Civ. 8165, 2008 WL 1990669 (S.D.N.Y. May 7, 2008). In those cases, this Court denied the motions, holding that the actions at issue were sufficiently "related to" the Refco bankruptcy proceeding to support jurisdiction and that neither mandatory nor discretionary abstention was warranted. See In re Refco, 2008 WL 1827644, at *13; Kirschner, 2008 WL 1990669, at *9. For similar reasons, the motions of the SPhinX Plaintiffs in these actions to remand, or in the alternative, to abstain, will likewise be denied. For separate reasons, set forth below, BAWAG's motion will also be denied

## DISCUSSION

### I.     Removal and Jurisdiction in Bankruptcy Cases

The party seeking to remove an action from state to federal court bears the burden of establishing federal jurisdiction. See In re WorldCom, Inc. Secs. Litig., 293 B.R. 308, 316 (S.D.N.Y. 2003), citing Linardos v. Fortuna, 157 F.3d 945, 947 (2d Cir. 1998). With regard to bankruptcy-related claims, 28 U.S.C. § 1452(a) provides that "[a] party may remove any claim or cause of action in a civil action . . . to the district court for the district where such civil action is pending, if such district court has jurisdiction of such claim or cause of action under section 1334 of this title." 28 U.S.C. § 1452(a); see Things Remembered, Inc. v. Petrarca, 516 U.S. 124,

131-32 (1995) (Ginsburg, J., concurring) (finding that § 1452 was "meant to enlarge, not to rein in, federal trial court removal/remand authority for claims related to bankruptcy cases").

The propriety of removal under § 1452(a) is predicated on the scope of federal jurisdiction under 28 U.S.C. § 1334, which provides, in relevant part:

> [N]otwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts, the district courts shall have original but not exclusive jurisdiction of all civil proceedings *arising under title 11, or arising in or related to cases under title 11.*

28 U.S.C. § 1334(b) (emphasis added). With the exception of BAWAG, none of the other parties contends that this action is a proceeding "arising under" title 11 or "arising in" a title 11 case. Thus, the only jurisdictional dispute relevant to the Removing Defendants is whether the claims of the SPhinX Plaintiffs, which arise solely under state law, are sufficiently "related to" a bankruptcy proceeding to establish federal jurisdiction.

A.      "Related to" Jurisdiction

The Removing Defendants contend that federal jurisdiction exists in this case because the action is "related to" three different bankruptcy proceedings: the PlusFunds Chapter 11 case, the SPhinX Chapter 15 proceedings, and the Refco Chapter 11 case,[11] all of which are pending in the

---

[11] On December 15, 2006, approximately fourteen months after Refco filed for bankruptcy, the United States Bankruptcy Court for the Southern District of New York confirmed the Modified Joint Chapter 11 Plan of Refco Inc. and Certain of its Direct and Indirect Subsidiaries (the "Refco Plan"). (See Brick Decl., Exs. A-C.) The Plan provided for the establishment of a Private Actions Trust ("PAT") to pursue "non-estate" claims – claims owned by Refco creditors or shareholders – and a Litigation Trust to pursue causes of action belonging to the Refco Debtors and their bankruptcy estates. Both of these trusts have since brought actions that are currently pending in this Court, in addition to the original bankruptcy case that remains pending and active before Judge Robert Drain, see In re Refco, Inc., No. 05-60006 (RDD) (Bankr. S.D.N.Y.).

Southern District of New York Bankruptcy Court. For the reasons explained below, this action is sufficiently "related to" the PlusFunds Chapter 11 case to establish federal jurisdiction.

As this Court noted in its previous rulings, see In re Refco, 2008 WL 1827644, at *3-4, Kirschner, 2008 WL 1990669, at *3-4, the applicable test for "related to" jurisdiction in this circuit is that articulated by the Third Circuit in In re Pacor, Inc.:

> [T]he test for determining whether a civil proceeding is related to bankruptcy is whether the outcome of that proceeding could *conceivably have any effect* on the estate being administered in bankruptcy. Thus, the proceeding need not necessarily be against the debtor or against the debtor's property. An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate.

743 F.2d 984, 994 (3d Cir. 1984) (emphasis added) (citations omitted); see In re Cuyahoga Equip. Corp., 980 F.2d 110, 114 (2d Cir. 1992); In re WorldCom, 293 B.R. at 317 (noting that "[t]he dominant standard for 'related to' jurisdiction is that set forth by the Third Circuit in In re Pacor"). Although the "any conceivable effect" test in Pacor is broad, numerous courts both in this and other circuits have held that "the scope of bankruptcy court jurisdiction diminishes with plan confirmation." In re Resorts Int'l, Inc., 372 F.3d 154, 165 (3d Cir. 2004); accord In re Pegasus Gold Corp., 394 F.3d 1189, 1194 (9th Cir. 2005); Guccione v. Bell, No. 06 Civ. 492, 2006 WL 2032641, at *4 (S.D.N.Y. July 20, 2006); In re General Media, Inc., 335 B.R. 66, 73 (S.D.N.Y. 2005). As in the cases previously before this Court, however, any such diminution does not interfere with this Court's jurisdiction to hear the claims of the SPhinX Trustee because even if federal jurisdiction is diminished post-confirmation, the Trustee's claims are sufficiently

"related to" the PlusFunds bankruptcy to support jurisdiction.[12]

According to the line of decisions holding that federal jurisdiction shrinks post-confirmation,

> a party invoking the bankruptcy court's post-confirmation jurisdiction must satisfy two requirements. First, the matter must have a close nexus to the bankruptcy plan or proceeding, as when a matter affects the interpretation, implementation, consummation, execution or administration of the confirmed plan and second, the plan must provide for the retention of jurisdiction over the dispute.

In re Kassover, 336 B.R. 74, 79 (S.D.N.Y. 2006); see Guccione, 2006 WL 2032641, at *4; In re General Media, Inc., 335 B.R. at 73; see also In re Resorts, 372 F.3d at 168-69. Here, both requirements for post-confirmation jurisdiction are satisfied with respect to the PlusFunds bankruptcy. First, with regard to the "retention of jurisdiction" requirement, the PlusFunds Plan contains a broad retention of jurisdiction provision:

> [T]he Bankruptcy Court shall have jurisdiction of matters arising out of, and related to, the Chapter 11 Case and the Plan . . . for, among other things, to . . . (V) hear and act on any other matter not inconsistent with the Bankruptcy Code.

(Firsenbaum Decl., Ex. D. Art XI § V.) The plain text of the provision thus expressly confers broad post-confirmation jurisdiction on the Bankruptcy Court.

Further, these actions, brought by the SPhinX Trustee, clearly share a "close nexus" to the PlusFunds bankruptcy because the SPhinX Trust itself is a creation of the PlusFunds Plan. The claims being asserted do not "belong[] to the litigation trust personally," In re Premium

---

[12] Accordingly, as in those cases previously before this Court, it is not necessary to adopt the First Circuit's distinction between reorganization and liquidation plans in the pursuit of concluding that "the compass of related to jurisdiction persists undiminished after plan confirmation." See In re Refco, 2008 WL 1827644, at *7-8, quoting In re Boston Reg'l Med. Ctr., Inc., 410 F.3d 100, 107 (1st Cir. 2005).

Escrow Servs., Inc., 342 B.R. 390, 399 (Bankr. D. Colo. 2006), but rather, are precisely those causes of action that were transferred by the PlusFunds Debtors to the SPhinX Trust pursuant to the PlusFunds Plan. Accordingly, the "implementation" and "execution" of the confirmed Plan is directly at issue, as the very claims being prosecuted by the Trustee "arise under the Plan." In re General Media, 335 B.R. at 73, 75; see In re Agway, Inc., Adv. Pro. No. 04-80269, slip op. at 9 (Bankr. N.D.N.Y. Mar. 6, 2006) (finding "sufficient nexus" for "related to" jurisdiction where, inter alia, "the Liquidating Trust was given the power to prosecute the action under the terms of the Debtor's Plan"). Moreover, any funds recovered by the SPhinX Trust in this case will go directly to PlusFunds' largest creditors – the SPhinX JOLs (Pendleton Decl., Ex. 19, Art. VI. § F-1) – thus further evidencing the "close nexus" between the Trustee's claims and the bankruptcy proceeding. See In re Railworks Corp., 325 B.R. 709, 723 (Bankr. D. Md. 2005) (finding that "the implementation of the payment of unsecured creditors through claims prosecuted by the Litigation Trustee is precisely at issue, and falls squarely in the realm of limited jurisdiction that a bankruptcy court may hear"); see also In re Tyson, No. 03-41900, 2007 WL 2379624, at *3 (Bankr. S.D.N.Y. Aug. 17, 2007); In re Boston Reg'l Med. Ctr., 410 F.3d at 107; In re AstroPower Liquidating Trust, 335 B.R. 309, 325 (Bankr. Del. 2005).

The SPhinX Plaintiffs nevertheless contend that there is not a "close nexus" with the PlusFunds Plan because – unlike the claims brought by the litigation trusts in In re Refco or Kirschner – these claims were *purchased* from the PlusFunds estate for material consideration. Thus, they argue, pursuit of those claims does not implicate the "interpretation, implementation, consummation, execution, or administration" of the PlusFunds Plan. (NJ Pl. Mem. 13; NY Pl. Mem. 5.) This argument flies wide of the mark. Indeed, it is a mere variation of the argument

14

that was rejected by this Court in In Re Refco and Kirschner. In those cases, the trustee-plaintiffs argued that, because the causes of action had been distributed to a litigation trust and recovery of funds would be distributed directly to the trust beneficiaries, adjudication of those claims could not, by definition, "affect" the Refco Debtors' estate. See In Re Refco, 2008 WL 1827644, at *9-10, Kirschner 2008 WL 1990669, at *6. As this Court explained, however, notwithstanding the creation of a separate litigation trust,

> the [t]rustee's claims in this case are precisely those that were transferred to the [trust] by the [estate]. The [t]rustee's claims thus "arise under the Plan" and prosecution of this action directly implicates the "implementation" and "execution" of the "confirmed plan [and] incorporated litigation trust agreement."

Kirschner 2008 WL 1990669, at *6, quoting In re General Media, 335 B.R. at 73, 75.

Such are the circumstances here, notwithstanding that some of the PlusFunds' creditors chose to be bought out by the SPhinX Trust for a pro rata share of a fixed amount rather than take their chances in future litigation. Indeed, as with the Refco Litigation Trust addressed in In Re Refco, 2008 WL 1827644, at *10, the SPhinX Trustee is pursuing causes of action that were transferred to the trust by the estate. While recoveries on those claims will go, not to all of PlusFunds' creditors, but rather only to a subset – i.e., the SPhinX Funds and its creditors and interest holders – such an arrangement bears a striking resemblance to the Refco PAT, where this Court found jurisdiction even though recoveries were destined only for that subset of creditors who had contributed their claims to the PAT. See Kirschner, 2008 WL 1990669, at *6. That here, valuable consideration was exchanged in the process does not, as the SPhinX Plaintiffs claim, mean that these causes of action are not brought on behalf of a "PlusFunds litigation trust" (NJ Pl. Mem. 13, n.6), or that pursuant to the PlusFunds Plan, the beneficiaries are no longer

15

creditors of the PlusFunds estate.[13]  To the contrary, "related to" jurisdiction is not contingent on

whether a subset of creditors benefits from the litigation trust, but rather on whether the claims

being pursued "arise under the Plan" and therefore whether prosecution of the action directly

implicates the "implementation" and "execution" of the "confirmed plan [and] incorporated

litigation trust agreement."  Id.

Accordingly, under the governing legal standard, the facts here are sufficient to establish

post-confirmation "related to" jurisdiction.  See id.; In Re Refco 2008 WL 1827644, at *10.

Adoption of the SPhinX Plaintiffs' position here would effectively allow federal subject matter

jurisdiction to be manipulated by parties' contractual arrangements within the formation of a

post-confirmation trust.  Such a holding – which would render federal jurisdiction contingent on

the distribution scheme of the particular trust – would be without precedent, and without merit.

The SPhinX Plaintiffs also allege that the PlusFunds Plan did not retain jurisdiction over

their causes of action because "[t]he catch-all [provision] simply means that the Bankruptcy

Court is to have jurisdiction over matters consistent with the Bankruptcy Code and *to which an*

*intent to retain jurisdiction is expressed*."  (NY Pl. Reply Mem. 2 (emphasis added).)  Plaintiffs

do not, however, cite any caselaw requiring that the retention of jurisdiction provision include an

---

[13] Plaintiffs allege that the SPhinX Funds are no longer creditors of the PlusFunds estate because the Plan states that "[a]s of the Effective Date, the Debtor and the SPhinX Funds shall be deemed to have generally released each other from any and all claims."  (NY Pl. Mem. 9, citing Firsenbaum Decl., Ex. D Art. V § H.)  However, the provision of the PlusFunds Plan from which plaintiffs quote goes on to state:  " . . . provided, however, that the foregoing release shall not apply to the rights of the parties to enforce the Plan. . . ."  (Firsenbaum Decl., Ex. D Art. V § H.)  Under the express terms of the PlusFunds Plan, the SPhinX Funds have an allowed claim of $250 million.  (Id. Art. III § B-3.)  Thus, SPhinX Funds are plainly creditors of the PlusFunds Estate.  Indeed, they are by far the largest of PlusFunds' creditors as the other allowed general unsecured claims "rang[e] from approximately $5 million to approximately $19 million."  (Id. Art. III § B-4.)

express reference to the particular cause of action being asserted, and the broad language in the catch-all provision clearly evidences the parties' intent to preserve post-confirmation federal jurisdiction to the maximum extent permissible under the statute. See In re Ionosphere Clubs Inc., No. 98 Civ. 9112A et al., 1999 WL 717291, at *3 (S.D.N.Y. Sept. 15, 1999) ("[W]here the confirmed plan includes broad jurisdictional retention provisions, 'the Bankruptcy Court's post-confirmation jurisdiction is as broad as the statutory grant – that is, it extends to all proceedings related to the bankruptcy,'" quoting In re Chateaugay Corp., 213 B.R. 633, 638-39 (S.D.N.Y. 1997) (internal quotation marks omitted)).

Nor is this conclusion altered by the fact that the PlusFunds Plan provides that "[u]pon completion of the transfer of the Causes of Action into the SPhinX Trust, the Debtor and the General Trust will have no interest in, or with respect to, such assets or the SPhinX Trust . . . ." (P. Reply Mem. 3, quoting Firsenbaum Decl., Ex. D Art. VI § F.2; see also id. at 4.) Although plaintiffs contend that this language demonstrates that the Plan did not intend to retain jurisdiction over the trust, as in In re Refco, the mere fact that "PlusFunds relinquished all rights to the Causes of Action vested in the Spinx Trust" (id. at 4) is not dispositive of the jurisdictional inquiry. See 2008 WL 1827644, at *10. Indeed, the Refco Plan similarly provided that "[u]pon transfer of the Contributed Claims to the Litigation Trust, the Debtors, RCM and the plan Administration shall have no interest in or with respect to the Contributed Claims or the Litigation Trust." Id. at *2. In Kirschner the claims assigned to the Refco PAT were not even estate claims to begin with. See 2008 WL 1990669, at *6; see Celotex, 514 U.S. at 308 (observing that "related to" jurisdiction encompasses "more than simple proceedings involving the property of the debtor or the estate"). That the Causes of Action "belong" to the SPhinX

Trust, or that the SPhinX Trust may prosecute actions without prior bankruptcy court authorization or approval (P. Reply Mem. 3), does not alter the fact that the bankruptcy court retained post-confirmation "related to" jurisdiction.

Accordingly, these actions are sufficiently "related to" a bankruptcy proceeding to be maintained in this Court.

## II.    Abstention

The SPhinX Plaintiffs assert that even if subject matter jurisdiction exists abstention is both required and warranted in the exercise of discretion.  For reasons similar to those discussed in In Re Refco and Kirschner, however, neither mandatory or discretionary abstention is appropriate.

### A.    Mandatory Abstention

Section 1334(c)(2) provides, in relevant part:

> [u]pon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court *shall abstain* from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction.

28 U.S.C. § 1334(c)(2) (emphasis added).  A party seeking mandatory abstention under § 1334(c)(2) thus must demonstrate that:

> (1) the motion to abstain was timely; (2) the action is based on a state law claim; (3) the action is "related to" but not "arising in" a bankruptcy case or "arising under" the Bankruptcy Code; (4) Section 1334 provides the sole basis for federal jurisdiction; (5) an action is commenced in state court; [and] (6) that action can be "timely adjudicated" in state court.

In re Worldcom, 293 B.R. at 331.  "A party is not entitled to mandatory abstention if it fails to prove any one of the statutory requirements."  Id.; see Mt. McKinley Ins. Co. v. Corning Inc., 399 F.3d 436, 446-47 (2d Cir. 2005) (holding that mandatory abstention can be applied in a case that has already been removed from state court).

In this case, mandatory abstention is not warranted because the SPhinX Plaintiffs have not demonstrated that their claims can be "timely adjudicated" in either the New York or New Jersey state courts.  28 U.S.C. § 1334(c)(2).  Plaintiffs rely on "generally accepted case processing time standards" (NJ Pl. Mem. 20) and broad declarations about the "average length of time from an action's commencement to its disposition" (NY Pl. Mem 18-19).  As this Court noted in Kirschner, however, whatever might be common in the general run of cases, the Refco-related actions are distinguishable because they constitute "but one piece of a much larger, extremely complex litigation puzzle."  Bondi, 322 B.R. at 50.  As this Court has repeatedly explained:

> [Section] 1334(c)(2) is intended to require federal courts to defer to the state courts to handle lawsuits which, although "related to" a bankruptcy, can be promptly resolved in state court without interfering with the proceedings pending in the federal courts. That intention simply has no application to litigation of this sort, in which a case properly removed to federal court is intertwined both with complex bankruptcy proceedings and equally complex securities class actions pending in federal court.

2008 WL 1827644, at *12, quoting In re Global Crossing, Ltd. Sec. Litig., 311 B.R. 345, 349 (S.D.N.Y. 2003); see Bondi, 322 B.R. at 50; In re WorldCom, 293 B.R. at 331.  The SPhinX Plaintiffs' contention that their "claims are not so complex, nor so inextricably intertwined with the cases in the Refco Securities MDL" as to prevent remand (NY Pl. Mem. 9), are unavailing. Indeed, plaintiffs' claims, which in the New York litigation required a nearly 300-page

complaint to address, are far from elementary and involve precisely the web of deceit at issue in the Refco Securities MDL.  As such, remanding these actions, which have a common factual core, to two different state courts "would simply complicate and slow down the resolution of those claims, as well as of the matters already pending before this Court."  In re Global Crossing, 311 B.R. at 349.  For these reasons, mandatory abstention pursuant to § 1334(c)(2) is unwarranted.

      B.     Discretionary Abstention/Equitable Remand

Discretionary abstention and/or equitable remand is also inappropriate.  Section 1334(c)(1) provides that "[n]othing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding . . . related to a case under title 11."  28 U.S.C. § 1334(c)(1).  Federal courts, however, must be "sparing" in their exercise of discretionary abstention, Winstar Holdings, LLC v. Blackstone Group L.P., No. 07 Civ. 4634, 2007 WL 4323003, at *5 (S.D.N.Y. Dec. 10, 2007), because they possess a "virtually unflagging obligation . . . to exercise the jurisdiction given them," Colorado River Water Conservation Dist. v. United States, 424 U.S. 800, 817 (1976); see id. at 813 (observing that federal courts may abstain only for a few "extraordinary and narrow exception[s]").  Relevant considerations in determining whether to abstain pursuant to § 1334(c)(1) include "comity and federalism, judicial economy, and efficiency."  In re Worldcom, 293 B.R. at 332.[14]

As was true in Kirschner, "there is little basis to invoke comity to the state courts, and

---

[14] "The equitable remand analysis . . . is essentially the same as the Section 1334(c)(1) abstention analysis."  Id. at 334.

every reason to invoke . . . federal jurisdiction." 2008 WL 1827644, at *12, quoting Winstar,

2008 WL 1990669, at *8. Although the SPhinX Plaintiffs' claims are based entirely on New

York and New Jersey state law, the claims are straightforward common-law claims that do not

involve arcane or idiosyncratic provisions of state law that would "warrant abstention based on

comity concerns." In re Worldcom, 293 B.R. at 332; see Rahl v. Bande, 316 B.R. 127, 135

(S.D.N.Y. 2004). Further, because in each action the case was promptly removed, the state

courts have invested little or no time in the matters. See Winstar, 2007 WL 4323003, at *5. In

sum, as in In Re Refco and Kirschner, the plaintiffs have advanced no persuasive reason why

discretionary abstention should be granted.

## III.    BAWAG Motion

BAWAG has filed a separate motion to refer the counts against it to the United States

Bankruptcy Court for the Southern District of New York because it alleges that those counts –

XXIII (aiding and abetting fraud), and XXIV (aiding and abetting breach of fiduciary duty)[15] –

implicate core matters of bankruptcy jurisdiction relating to the enforcement and interpretation

of the Bankruptcy Court's orders entered in connection with the Refco Bankruptcy case.

BAWAG asserts that its own settlement with the Refco Estate (the "BAWAG Settlement"), in

which BAWAG paid the Official Committee of Unsecured Creditors of Refco ("the Committee")

---

[15] These counts are those contained in the Amended Complaint filed in this Court on October 10, 2008. The original Complaint filed in the New York State Supreme Court contained counts against BAWAG for conspiracy, aiding and abetting fraud, and interference with contract or prospective contract. (See Brick Aff., Ex. F.) The differences in the allegations do not affect this Court's resolution of BAWAG's instant motion.

in excess of $400 million and waived its claim for €350 million (approximately $470 million),[16]

provided it with a global release of all claims that included so-called "Claim Over" protection for

"contribution, indemnification or reimbursement by any third party not party to [the

Settlement]." (BAWAG Mem. 6, quoting Brick Aff., Ex. A ¶ 6(a)).  Accordingly, BAWAG

alleges that claims brought by the SPhinX Plaintiffs either implicate the BAWAG Settlement's

"Claim Over" protection and/or are alter ego claims that are property of the Refco Estates, and

therefore the claims against them are "core" bankruptcy proceedings that "arise under" the

bankruptcy code or "arise in" a bankruptcy case.  See 28 U.S.C. § 1334(b).  In either event, the

basis for BAWAG's position is the claim that the SPhinX Plaintiffs are, in fact, surreptitiously

seeking the recovery of the $263 million that SPhinX paid to the Refco Estates in 2006 to settle

the Refco Preference Action.  (BAWAG Mem. 3.)  That basis is flawed.

For an action to be a core proceeding, it "must have as its foundation the creation,

recognition, or adjudication of rights which would not exist independent of a bankruptcy

environment."  In re Marconi PLC, 363 B.R. 361, 366 (S.D.N.Y. 2007) (internal citation and

quotation marks omitted); see also In Re Riverside Nursing Home, 144 B.R. 951, 955 (S.D.N.Y.

1992) (an action "arises under" if the relief sought is based on a right specifically created by title

---

[16] On November 16, 2005, BAWAG commenced an adversary proceeding against Refco and other parties, see BAWAG v. Refco Inc., et al., Adv. Pro. No. 05-03161 (RDD) (Bankr. S.D.N.Y.), alleging that Refco and Bennett had fraudulently procured a loan from BAWAG for €350 million on the eve of Refco's collapse.  On April 17, 2006, the Committee intervened in the adversary proceeding and asserted counter-claims against BAWAG on behalf of the Refco Estates seeking to recover allegedly fraudulent transfers totaling $1.325 billion that had been transferred to BAWAG from various Refco entities as well as damages arising out of BAWAG's alleged aiding and abetting of breaches of fiduciary duty by Bennett.  The Committee and BAWAG subsequently entered into a comprehensive settlement, which was approved by the Bankruptcy Court on July 6, 2006, and its terms were incorporated into the Refco Plan confirmed by the Bankruptcy Court on December 15, 2006.

11 and "arises in" if, by its very nature, the claim could only be brought in a bankruptcy action because it has no existence outside of bankruptcy). The claims of the SPhinX Plaintiffs, however, cannot fairly be read to have such a foundation.

The claims lodged against BAWAG are all common law causes of action premised on allegations that BAWAG participated in loans to Refco that were designed to conceal both the existence and enormity of the so-called "Bennett receivable" which, upon discovery, precipitated Refco's – and by extension – PlusFunds' collapse. Contrary to BAWAG's assertions, the fact of this harm is not transformed by the fact that SPhinX would have been made whole but for the Refco Preference Action. The losses alleged by the SPhinX Plaintiffs are not a function of the preference action; therefore, they cannot be distinguished from the losses of any other creditor on the happenstance that Refco endeavored to reimburse SPhinX for its losses but failed to do so because it was already insolvent. The SPhinX Plaintiffs assert two claims against BAWAG: aiding and abetting fraud, and aiding and abetting breach of fiduciary duty. These claims sound solely in common law and their thrust is plain: the SPhinX Plaintiffs are seeking to hold BAWAG liable for harm to them. Accordingly, these are not alter-ego claims that are property of the Refco Estate.[17] Rather, plaintiffs claims sound, essentially, in fraud. The claims do not "arise in" bankruptcy because they are not claims that "*by [their] very nature . . . can only be brought in a bankruptcy action.*" In Re Riverside Nursing Home, 144 B.R. at 955 (emphasis added). They are garden-variety common-law claims that are usually brought outside of bankruptcy. See Winstar, 2007 WL 4323003, at *3-4 (explaining that while "arising in"

---

[17] For this reason, BAWAG's contention that the SPhinX Plaintiffs' claims are claims that "were brought, or that could have been brought, by representatives of the Refco Estates in connection with the fraud at Refco" (BAWAG Mem. 15) is likewise without merit.

jurisdiction is under-defined, examples of "arising in" jurisdiction are closely tied to the administration of the estate, such as orders to turn over property of the estate and determinations of the validity, extent, or priority of liens). The mere fact that the cause of action would never have arisen absent a particular bankruptcy, here the Refco bankruptcy, is insufficient to establish the claims as a core bankruptcy matter. Id. at *4.

Nor does the harm caused by BAWAG's alleged activity fairly "arise under" title 11. The plaintiffs are not seeking relief based on a right specifically created by title 11 because no proposition of bankruptcy law must be established for plaintiffs to prevail, and no provision of the bankruptcy code is implicated in their allegations. Id. The causes of action asserted in the complaint are in no sense "created by" title 11 of the United States Code. See In re Leco Enterprises, Inc., 144 B.R. 244, 248 (S.D.N.Y. 1992) (citing cases).

That BAWAG's *defense* to those claims is that the BAWAG Settlement bars any recovery and that as a result the SPhinX Plaintiffs' claims against BAWAG require the interpretation and enforcement of the BAWAG Settlement and corresponding Bankruptcy Court" (BAWAG Mem. 14) does not alter this conclusion. The assertion of the "Claim Over" provision of the settlement as a defense to the SPhinX Plaintiffs' allegations is insufficient to create core bankruptcy jurisdiction. See Winstar, 2007 WL 4323003, at *3 (relying on the plaintiff's own statement of his cause of action to determine whether there is core jurisdiction). Although interpretation of the "Claim Over" provisions as well as other provisions of the Refco Plan may well occur in the course of the litigation, this fact is not sufficient to cause the action to "arise under" title 11. See id., quoting Louisville & Nashville R.R. Co. v. Mottley, 211 U.S. 149, 153 (1908). It is well-settled that "[w]hether a claim has been discharged is a defense that

can be raised in post-bankruptcy litigation, whether before a federal district court or a state court." In re Sunbrite Cleaners, Inc., 284 B.R. 336, 342 (N.D.N.Y. 2002) (citations omitted).

Whatever the ultimate merits of BAWAG's defense – an issue this Court need not reach or resolve here – the claims against BAWAG do not constitute a core bankruptcy matter arising in or under title 11 of the Bankruptcy Code. Rather, like the other claims brought by the SPhinX Plaintiffs in these related actions, the claims against BAWAG are sufficiently "related to" the PlusFunds Chapter 11 case to establish federal jurisdiction. They will remain in this Court.

## CONCLUSION

For the foregoing reasons, the SPhinX Plaintiffs' motions to remand, or in the alternative to abstain, are denied, as is BAWAG's motion to refer the counts against it to the United States Bankruptcy Court for the Southern District of New York.

SO ORDERED.

Dated: New York, New York
      October 23, 2008

                                       GERARD E. LYNCH
                              United States District Judge